# EXHIBIT  A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MISS UNIVERSE L.P., LLLP, and           :
DONALD J. TRUMP, both individually and derivatively       Index No.
on behalf of MISS UNIVERSE L.P., LLLP,        :

               Plaintiffs,       :        **SUMMONS**

      - against -             :

UNIVISION NETWORKS & STUDIOS, INC. and     :
ALBERTO CIURANA, individually,

               :

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**TO THE ABOVE NAMED DEFENDANTS:**

      **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and

to serve a copy of your answer on Plaintiffs' attorneys within twenty (20) days fter the service of

this summons, exclusive of the date of service, or within thirty (30) days after service is complete

and if this summons is not personally served to you within the State of New York; and in case of

your failure to appear or answer, judgment will be taken against you by default for the relief

demanded herein.

Dated: New York, New York
      June 30, 2015

                    BELKIN BURDEN WENIG & GOLDMAN, LLP
                    Attorneys for Plaintiffs
                    270 Madison Avenue
                    New York, New York 10016
                    (212) 867-4466

                    By: _____
                         Jeffrey L. Goldman

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------x

MISS UNIVERSE L.P., LLLP and DONALD J. TRUMP,:
both individually and derivatively on behalf of  MISS            Index No.
UNIVERSE L.P., LLLP,
                                                        :

                         Plaintiffs,            :            **VERIFIED COMPLAINT**

           - against -            :

UNIVISION NETWORKS & STUDIOS, INC. and            :
ALBERTO CIURANA, individually,
                                                        :
                    Defendants.

------------------------------------x

Plaintiffs Miss Universe L.P., LLLP and Donald J. Trump, derivatively on behalf of Miss

Universe L.P., LLLP ("MUO"), and Donald J. Trump, individually ("Mr. Trump"), by and

through their attorneys, Belkin Burden Wenig & Goldman, LLP, as and for their Complaint

against defendants Univision Networks & Studios, Inc. ("Univision") and Alberto Ciurana,

individually ("Mr. Ciurana") allege, as follows:

## NATURE OF THE CASE

1.    At issue in this action are claims for breach of contract, breach of the covenant of

good faith and fair dealing, intentional interference with contractual relationship, defamation,

punitive damages and attorneys' fees arising from the recent decision by Univision, the largest

Spanish language television network in the United States, to suddenly terminate its contractual

relationship with MUO and not broadcast the upcoming Miss USA pageant scheduled to take

place in Baton Rouge, Louisiana on July 12, 2015.

2.    While Univision has claimed in the media that its decision to cut ties with MUO

came in response to certain comments by Mr. Trump during a June 16, 2015 campaign speech

2

announcing his candidacy for President of the United States, the decision was, in reality, a thinly

veiled attempt by Univision, a privately held company principally owned by longtime Clinton

Foundation donor and current Hillary Clinton fundraiser, Haim Saban, to suppress Mr. Trump's

freedom of speech under the First Amendment as he begins to campaign for the nation's

presidency and, in recent weeks, has dramatically risen in the polls while expressing critical

views of Mrs. Clinton.  Little else can explain Univision's decision to not only abandon its

contractual relationship with MUO, but also, upon information and belief, pressure NBC to

follow suit and cut longstanding ties with Plaintiffs nearly two weeks after the statements were

made.[1]

    3.    Simply stated, Univision has no right to terminate its relationship with MUO and

refuse to broadcast the upcoming Miss USA pageant.  As demonstrated below, the agreement

between Univision and MUO, which requires that Univision broadcast the Miss USA pageant

"live via the Univision or UniMas Networks … at least one (1) time", is clear and unequivocal

and does not give Univision the right to terminate simply because it does not agree with Mr.

Trump's longstanding views or statements, all of which are protected by the First Amendment

and have been echoed by many in this country.

## THE PARTIES

    4.    At all relevant times set forth herein, MUO was and is a Delaware limited liability

limited partnership with a principal place of business at 1370 Avenue of the Americas, New

York, New York.

---

[1] According to a May 11, 2015 article in the National Review, between 2009 and 2013, while Mrs. Clinton served as Secretary of State, the Saban Family Foundation committed $30.5 million in grants and contributions to the Clinton Foundation.

5.     At all relevant times set forth herein, Mr. Trump was and is an individual with an address at 721 Fifth Avenue, New York, New York and a Limited Partner with a 49% interest in MUO.

6.     Though not named in the instant action, NBC Pageants, Inc. ("NBC Pageants"), a Delaware Corporation, which upon information and belief is authorized to do business in the State of New York, is both a General Partner and Limited Partner of MUO.

7.     Upon information and belief, at all relevant times set forth herein, Univision was and is a privately held California corporation with a principal place of business at 9405 N.W. 41st Street, Miami, Florida.

8.     Upon information and belief, at all relevant times set forth herein, Mr. Ciurana was and is an individual with an address at 9405 N.W. 41st Street, Miami, Florida and the President of Programing and Content for Univision.

### FACTS COMMON TO ALL CAUSES OF ACTION

**The Miss Universe Organization**

9.     Founded in 1952, MUO is a joint venture between Mr. Trump and NBCUniversal which is in the business of organizing, staging and producing some of the world's most successful, well known and respected beauty pageant competitions, including Miss USA, Miss Teen USA and The Miss Universe Pageants.

10.    Indeed, in 2014 alone, the Miss USA competition was seen by more than 100 million viewers in over 70 countries while, in 2015, the Miss Universe pageant was broadcast to a worldwide audience of approximately 1 billion viewers in more than 190 countries.

**The Univision Agreement**

11.     On or about January 14, 2015, following a bidding war between rival Spanish language television networks Telemundo and Univision, MUO and Univision (together, the "Parties") entered into a license agreement pursuant to which Univision acquired from MUO the sole and exclusive right to broadcast, in Spanish, live and on demand, via television and any digital media, the Miss USA, Miss Teen USA and Miss Universe competitions (together, the "Final Events") for five (5) straight years – from 2015 through 2019 – in the United States (including Puerto Rico) and Canada (the "Agreement" or "Univision Agreement").

12.     Pursuant to Section 1(a) of the Univision Agreement, MUO agreed that it would "organize, stage and produce" the Final Events, all of which would "feature contestants from around the world or the United States (as applicable) consistent with the production values, performances and other elements of past Miss Universe, Miss USA and Miss Teen USA (as webast) Pageants."

13.     Pursuant to Section 1(b), MUO and Univision agreed that, to maximize viewership, both the Miss USA and Miss Universe competitions "will be staged during primetime (U.S. Eastern Time) on dates to be mutually agreed upon by the parties" and that MUO will "use reasonable efforts" to hold each such competition "on a Sunday night" when the potential international audience is largest.

14.     Pursuant to Section 2(a)(vi) and (b), MUO agreed that each Final Event would be "organized, staged and promoted in [a] manner such that it will be a first-class network-quality production", would "have a duration of two (2) or three (3) hours" and that MUO would produce and deliver such Final Events "in accordance with the first class quality production standards for United States broadcast networks' prime-time programs."

15.     Pursuant to Section 3(a), Univision, in turn, agreed that it would broadcast each of the Final Events, i.e., the Miss USA and Miss Universe competitions "live … at least one time." Section 3(a) states, quite clearly, as follows:

> "Univision will exhibit each Program live via the Univision or UniMas Networks or as otherwise mutually agreed by the parties at least one (1) time, provided that Univision will not be obligated to broadcast the Teen Final Event."

16.     In consideration of these rights, Univision agreed that it would pay MUO a license fee in the sum of $2.5 million per year for 2015, 2016 and 2017 and in the sum of $3 million per year for 2018 and 2019, for a total of $13.5 million over the five (5) year term.

17.     Section 5(b) identifies certain limited bases upon which the Parties may terminate the Univision Agreement. Specifically, (i) Section 5(b)(i) gives the Parties the right to terminate in the event either party files for bankruptcy, (ii) Section 5(b)(ii) gives MUO the right to terminate if Univision either fails to pay the License Fee or otherwise breaches and fails to timely cure any material obligation; and (iii) Section 5(b)(iii) gives Univision the right to terminate if MUO grants the same rights granted to Univision to another party or otherwise breaches and fails to timely cure any material obligation. In other words, under the facts at issue herein, Univision has no right to terminate the Agreement.

18.     Notwithstanding these termination rights, Section 5(b)(iv) states that the "[t]ermination of this Agreement for any reason provided herein will not relieve the breaching party of its obligation to perform up to the effective date of such termination …"

19.     Pursuant to Section 25(b), the Parties agreed that the "prevailing party" in "any action for the breach of this Agreement" will "be entitled to seek reasonable costs and expenses incurred in connection with such action, including attorneys' fees and expert witness fees incurred in connection with such action."

20.     Pursuant to Section 25(c) and (d), the Parties agreed that the Univision Agreement "will be governed by, and construed in accordance with, the laws of the State of New York" and that the Parties each "irrevocably submits to the jurisdiction of any New York State or United States Federal court sitting in New York County, New York in any action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby, and irrevocably agrees that any such action or proceeding may be heard and determined only in such New York State or Federal court."

**Univision Announces Its Plan to Terminate the Agreement After
Mr. Trump Repeats His Longstanding Position on Immigration Reform**

21.     On June 16, 2015, Mr. Trump, at a nationally televised event held in Trump Tower, formally announced his candidacy for President of the United States.  During his 45 minute speech, Mr. Trump addressed a multitude of political issues, many of which, over the last decade, have consistently served as the focal point of his political views, including, among other things, the economy and his plans for improved job growth, Mexico and other nations consistently outmaneuvering the United States on trade, illegal immigration and need for a more effective boarder between the United States and Mexico, currency manipulation by the Chinese government, the recent decline in U.S.-Israeli relations and the ongoing threat from Al Qaeda, ISIS and other international terrorist groups.

22.     On June 25, 2015, just 8 days after Mr. Trump's announcement and a mere 5 months after executing the Univision Agreement, Mr. Trump, suddenly and without warning, received a telephone call from a high ranking executive at Univision stating that, in response to Mr. Trump's June 16 comments on illegal immigration, Univision had been inundated with calls demanding that Univision immediately terminate its relationship with MUO and Mr. Trump.  As

a result, the executive claimed that Univision could "no longer sell" the upcoming Miss USA pageant to its sponsors or viewers.

23.     Clearly nervous and unable to get the words out, the Univision executive then proceeded to profusely apologize for what he was about to say: that despite recognizing its clear and unambiguous contractual obligation under the Agreement to broadcast both the upcoming Miss USA pageant and future Miss Universe pageants live, the decision had been made by the highest ranking executives at Univision to terminate its relationship with MUO effective immediately and simply pay MUO the $13.5 million in License Fees it owes.  Unfortunately, that amount pales in comparison to the total amount Univision will ultimately have to pay.

24.     In reality, however, Mr. Trump's calls for immigration reform, particularly with respect to the U.S.-Mexican border, were nothing new.  Indeed, for over a decade, Mr. Trump had, in numerous television and news interviews, consistently voiced his concerns regarding the influx of illegal immigrants pouring into the United States across the Mexican border and the crime that has resulted therefrom, views which were widely reported by every major media outlet, including, both Univision and NBC.

25.     As Mr. Trump explained in an interview with Fox News' Bill O'Reilly on March 30, 2011, "[t]hey're coming over, and they're climbing over a fence, and there's nobody within 10 miles — and they're selling drugs all over the place, they're killing people all over the place — and we're not doing anything about it."  However, Mr. Trump cautioned that it was difficult to generalize the experience of all immigrants who had entered the United States illegally. "You're going to have to look at the individual people, see how they've done, see how productive they've been, see what they're references are -- and then make a decision," he said.

"You have some great, productive people -- and then you have some total disasters that probably should be in prison."

26.     Indeed, Mr. Trump was not the only one bringing the need for immigration reform to the forefront of the political landscape. In a September 10, 2014 article, Fusion, a joint venture between Disney/ABC and none other than Univision, following an investigation into illegal immigration, reported that "[a] staggering 80 percent of Central American girls and women crossing Mexico en route to the United States are raped along the way" – typically by "other migrants, bandits, or even government authorities." In other words, Univision, like the rest of the world, was well aware of Mr. Trump's stance on illegal immigration and the possibility that he might declare himself a candidate for the presidency well before January 2015 when it entered into the Agreement with MUO.

27.     Notwithstanding the foregoing, literally within minutes of Mr. Trump receiving the call, Univision, in a pre-orchestrated move, released a statement to all of its radio and television outlets and on its website (the "Univision Statement") announcing that, in response to Mr. Trump's June 16 comments, which were virtually identical to the comments he had made previously, not only would Univision "not be airing the Miss USA pageant" on July 12, but was terminating its relationship with MUO in its entirety. The Univision Statement reads, as follows:

> "Today, the entertainment division of Univision Communications
> Inc. announced that it is ending the Company's business
> relationship with the Miss Universe Organization, which is part-
> owned by Donald J. Trump, based on his recent, insulting remarks
> about Mexican immigrants. At Univision, we see first-hand the
> work ethic, love for family, strong religious values and the
> important role Mexican immigrants and Mexican-Americans have
> had and will continue to have in building the future of our country.
> **We will not be airing the Miss USA pageant on July 12th or
> working on any other projects tied to the Trump Organization**.

> Univision News and the local news division will continue to
> provide comprehensive coverage of all candidates, including Mr.
> Trump, to ensure our audience continues to have access to all
> points of view (emphasis added)."

(*See* http://corporate.univision.com/2015/06/statement-from-the-entertainment-division-of-univision-communications-inc-on-june-25-2015/)

28.     Simply stated, there is nothing in the Agreement which gives Univision the right to terminate its relationship with MUO based on Mr. Trump's comments. Even if there were, Univision would have been required to serve formal notice on MUO. Univision has failed to do so. Instead, Univision, in an obvious attempt to politicize the situation and suppress Mr. Trump's right to free speech, including his views on both trade and illegal immigration along the U.S.-Mexican border, has made a concerted effort, upon information and belief, in collusion with others, to wage war against Plaintiffs in the media.

29.     In a move which can only be described as both tasteless and defamatory, on June 25, 2015, Mr. Ciurana, Univision's President of Programing and Content, then posted a photo on his official Univision Instagram account comparing Mr. Trump to Dylann Roof, the 21 year old who was recently arrested in the murder of nine (9) African-Americans attending bible study at a church in Charleston, South Carolina, one of the worst hate crimes to ever take place on U.S. soil. While Mr. Cuirana would later remove the defamatory post, the damage was already done: almost immediately, Mr. Ciurana's post was picked up by the media and became the subject of hundreds, if not thousands, of press articles, yet another example of Univision's dubious efforts to create a false narrative in an attempt to upset Mr. Trump's longstanding personal and business relationship with the Hispanic community.

30.     However, Univision's attempt to suppress Mr. Trump's First Amendment rights and defame his image did not end there. Upon information and belief, shortly after terminating

10

its relationship with Plaintiffs, and only hours after Mr. Trump had risen to second place among

2016 Republican candidates for president in the New Hampshire polls, executives at Univision,

many of whom, including, but not limited to, Univision's President and CEO, Randy Falco, who

had previously worked at NBC for more than 30 years and were, thus, well aware of Plaintiffs'

contractual relationships with NBC, began engaging in behind the scenes lobbying of their

former colleagues and, upon information and belief, colluded with executives at NBC to

permanently sever its contractual and business relationship with Plaintiffs by, among other

things, refusing to broadcast the Miss USA, Miss Teen USA and Miss Universe pageants in

express violation of NBC's contractual obligations.

31.     Despite being contractually obligated to, at a minimum, "broadcast the first run of

the MISS UNIVERSE Pageant during primetime hours on the NBC television network" through

2016, NBC capitulated to Univision's demands to terminate its relationship with Plaintiffs and,

on June 29, 2015, issued the following statement on its website:

> "At NBC, respect and dignity for all people are cornerstones of our
> values. Due to the recent derogatory statements by Donald Trump
> regarding immigrants, NBCUniversal is ending its business
> relationship with Mr. Trump. **To that end, the annual Miss USA
> and Miss Universe Pageants, which are part of a joint venture
> between NBC and Trump, will no longer air on NBC**. In
> addition, as Mr. Trump has already indicated, he will not be
> participating in "The Apprentice" on NBC. "Celebrity Apprentice"
> is licensed from Mark Burnett's United Artists Media Group and
> that relationship will continue" (emphasis added).

32.     The announcement by NBC was shocking, not simply because it was and still is

contractually obligated to broadcast the Miss Universe pageant, but also because it represented a

dramatic turnaround from the statement NBC had issued on June 26, 2015 when it explained,

quite simply, that "Donald Trump's opinions do not represent those of NBC, and we do not agree

with his positions on a number of issues, including his recent comments on immigration."  As a

result, any effort by Mr. Trump to direct the principals of NBC Universal (which, upon
information and belief, are the same and/or exercise dominion and control over NBC Pageants)
to direct NBC Pageants to authorize this action would have been futile.

**The Substantial Damages**

33.     As a result of Defendants' egregious, brazen and unjustifiable acts and conduct,
including, without limitation, their intentional breach of the Univision Agreement and
interference with Plaintiffs' contractual relations with NBC, Plaintiffs have already suffered and
will continue to suffer tens if not hundreds of millions of dollars in damages.

34.     Not surprisingly, reaching the largest Spanish-speaking audience possible is
absolutely critical to the success and future of MUO.  Univision's own investor presentations, for
example, tout the recent growth in the Hispanic population as well as their overall spending
power, predicting an 85% increase in Hispanic consumer spending in the next 10 years.  Beauty
pageants enjoy wide popularity in Hispanic culture.  For instance, Venezuela has produced more
Miss Universe winners than any other country, and Colombia holds about 400 beauty pageants
each year.

35.     Univision has long been recognized as the leading Spanish language network in
the United States and Canada with tens of millions of viewers, at times, even beating out
prominent English language networks such as ABC, CBS, FOX and, of course, NBC.  In 2014,
more than 80 million people tuned in to Univision just to watch the broadcast of the FIFA World
Cup.

36.     In an attempt to not only capture this viewership but also establish a lucrative
market for related MUO advertising, in-telecast promotions, joint selling possibilities, licensing
and merchandising, in or about January 2015, MUO made the decision to pass over lucrative

offers from competing Spanish language networks, such as Telemundo (an NBC owned company

that had the right to broadcast the pageants in the past), and enter into the Agreement granting

Univision the exclusive right to broadcast the pageants, live, in Spanish for five (5) years, from

2015 through 2019.

37.     Announcing the signing of the Agreement in a joint press release with Univision,

the President of MUO, Paula Shugart, stated as follows:

> Our new partnership will bring the MISS UNIVERSE and MISS
> USA pageants, among the most watched forms of television
> entertainment in the world to Univision, the number one media
> brand for U.S. Hispanics … Our collaboration will bring
> unmatched entertainment to the most passionate, loyal audience
> that Univision offers to one of the fastest growing and important
> demographic communities in the U.S.

38.     As a result of Univision's last minute decision on June 25, 2015 to terminate the

Agreement and not broadcast the upcoming Miss USA pageant two weeks later on July 12

(Univision has, to date, not even bothered to send MUO a purported notice of termination), MUO

will, in all likelihood, be unable to arrange for a Spanish language broadcaster replacement.

Indeed, with the pageant less than two weeks away, preparations are well underway in Baton

Rouge, Louisiana and contestants from all 50 states and the District of Columbia have already

arrived to begin the rigorous process of preparing and rehearsing for the show.  For most of the

contestants, appearing in the Miss USA pageant is the culmination of a life-long dream for which

they have dedicated years of hard work competing in local and regional pageants from an early

age.

39.     With no Spanish language broadcast, MUO will now, in all likelihood, lose much

of its Spanish-speaking audience and, with it, tens if not hundreds of millions of dollars in lost

advertising sales, production costs, venue fees, telecast promotions, sponsorships, joint selling

possibilities, licensing, merchandising revenue, franchise fees, brand value and the like, both in the immediate future and for many years to come.  In short, the potential fallout from Univision's brazen decision to simply walk away from its contractual obligations is catastrophic.

40.     However, the damage to Plaintiffs as a result of Univision's decision to simply terminate its relationship with MUO without any conceivable legal justification, though substantial in its own right, does not end there.  Instead, Univision, upon information and belief, decided to take its dispute with Mr. Trump even further, engaging in a concerted and purposeful effort to collude and conspire with NBC executives to breach their contractual obligations with MUO as well.

41.     As a result, not only is there presently no Spanish language network to broadcast the upcoming Miss USA and Miss Universe pageants, but there is also no English language network to broadcast the pageants either – even though NBC's agreement with MUO expressly provides that NBC must broadcast the Miss Universe pageant live next year.  As a result, Plaintiffs' damages have and will continue to multiply exponentially.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

42.     MUO repeats and realleges each and every allegation as if fully set forth at length herein.

43.     Pursuant to the terms of the Agreement, in exchange for MUO granting Univision the exclusive right to exhibit the Miss USA, Miss Teen USA and Miss Universe pageants from 2015 through 2019, Univision agreed to (i) pay MUO certain License Fees totaling $13.5 million and (ii) broadcast the Miss USA and Miss Universe pageants "live via the Univision or UniMas Networks ... at least one (1) time."

14

44.     In breach of the Agreement, on June 25, 2015, Univision issued the Statement that it was unilaterally "ending the Company's business relationship with the Miss Universe Organization" and would "not be airing the Miss USA pageant on July 12th."

45.     By reason of Univision's actions, MUO has suffered and will continue to suffer damages in an amount to be determined at trial, but believed to be in excess of $500 million.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Breach of Covenant of Good Faith and Fair Dealing)**

46.     MUO repeats and realleges each and every allegation as if fully set forth at length herein.

47.     Implied by law into the terms of the Agreement is a covenant of good faith and fair dealing.

48.     Here, Univision breached the implied covenant of good faith and fair dealing by not only intentionally failing and refusing to perform its obligations under the Agreement, but by also interfering with the rights of Plaintiffs under the Agreement.

49.     Specifically, on June 25, 2015, Univision issued the Statement that it intended to intentionally and purposely breach its contractual obligations to Plaintiffs for reasons not in any way supported by or justified under the Univision Agreement.

50.     By reason of the foregoing, Univision has breached the covenant of good faith and fair dealing and MUO has suffered and will continue to suffer damages in an amount to be determined at trial, but believed to be in excess of $500 million.

### AS AND FOR A THIRD CAUSE OF ACTION
**(Intentional Interference with Contractual Relationship)**

51.     MUO repeats and realleges each and every allegation as if fully set forth at length herein.

15

52.     MUO, NBC and their respective affiliates are parties to numerous valid and enforceable agreements relating to the licensing, distribution and production of the Miss USA, Miss Teen USA and Miss Universe pageants (the "NBC Agreements").

53.     At all times relevant herein, Univision was and is aware of the existence of the NBC Agreements.

54.     Upon information and belief, Univision lobbied and pressured NBC to terminate its contractual and other business relationships with MUO knowing full well of the existence of the NBC Agreements.

55.     Univision's interference with MUO's contractual relations has caused and will continue to cause MUO to suffer damages in an amount to be determined at trial, but believed to be in excess of $500 million.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Defamation)

56.     Mr. Trump repeats and realleges each and every allegation as if fully set forth at length herein.

57.     The statements that Defendants made concerning Mr. Trump, as detailed above, are false.

58.     The false statements that Defendants made concerning Mr. Trump were published to various third parties.

59.     In making these false statements, Defendants acted with wanton dishonesty such that punitive damages are warranted.  Defendants have also acted with malice.

60.     The statements about Mr. Trump have injured, and were made with an intent to injure, Mr. Trump's reputation in his business as a media figure and well-known businessman.

As a result, Defendants' conduct rises to the level of defamation per *se,* and no proof of special harm or damages is necessary.

61.     To the extent proof of special harm or damages is necessary, as a proximate cause of Defendants' defamatory statements, Mr. Trump has suffered special damages to his reputation, and to his existing and potential business relationships in an amount to be determined at trial, but believed to be in excess of $500 million.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Attorneys' Fees)

62.     MUO repeats and realleges each and every allegation as if fully set forth at length herein.

63.     Section 25(b) of the Agreement, entitled "Attorneys' Fees", provides as follows:

> "In the event of any action for the breach of this Agreement or misrepresentation by any party, the prevailing party will be entitled to seek reasonable costs and expenses incurred in connection with such action, including attorneys' and expert witness fees incurred in connection with such action."

64.     In the event that MUO is found to be the "prevailing party", it is "entitled to seek reasonable costs and expenses incurred in connection with such action, including attorneys' and expert witness fees incurred in connection with such action."

65.     MUO has incurred, and will continue to incur, costs and expenses, including attorneys' fees and disbursements, in connection with this action.

66.     Accordingly, MUO seeks a monetary judgment for its "reasonable costs and expenses incurred" in this action.

WHEREFORE, Plaintiffs respectfully request judgment against Defendants, as follows:

(i)      with respect to the first cause of action, an order awarding damages in favor of MUO for breach of the Agreement against Defendants, jointly and severally, in an amount to be determined at trial, but believed to be in excess of $500 million, together with interest;

(ii)     with respect to the second cause of action, an order awarding damages in favor of MUO for breach of the covenant of good faith and fair dealing against Defendants, jointly and severally, in an amount to be determined at trial, but believed to be in excess of $500 million for an amount to be determined at trial, together with interest;

(iii)    with respect to the third cause of action, an order awarding damages in favor of MUO for intentional interference with contractual relationship against Defendants, jointly and severally, in an amount to be determined at trial, but believed to be in excess of $500 million, together with interest;

(iv)    with respect to the fourth cause of action, an order awarding damages in favor of Mr. Trump for defamation against Defendants, jointly and severally, in an amount to be determined at trial, but believed to be in excess of $500 million, together with interest;

(v)     with respect to the fifth cause of action, an order awarding MUO its reasonable costs and expenses, including attorneys' and expert witness fees incurred in this action;

(vi)    an order awarding Plaintiffs punitive damages in an amount to be determined at trial; and

(vii)    granting Plaintiffs such other and further relief as the Court deems just and proper.

Dated: New York, New York
      June 30, 2015

                                    BELKIN BURDEN WENIG & GOLDMAN, LLP
                                    *Attorneys for Plaintiffs*

                                    By: _____

                                        Jeffrey L. Goldman
                                    270 Madison Avenue
                                    New York, New York 10016
                                    (212) 867-4466

JGOLDMAN/2453.4145/1624740

VERIFICATION

STATE OF NEW YORK    )
                     : ss.:
COUNTY OF NEW YORK   )

DONALD J. TRUMP, being duly sworn, deposes and says:

I am a limited partner in plaintiff Miss Universe L.P., LLLP, a plaintiff in the within

action.  I am also a plaintiff individually.  I have read the Verified Complaint.  The contents of

the Verified Complaint are true to my own knowledge except as to those matters which are

alleged on information and belief.  As to those matters, I believe them to be true.

_____
DONALD J. TRUMP

Sworn to before me this
30th day of June, 2015

_____
NOTARY PUBLIC


ALAN GARTEN
Notary Public, State of New York
No. 02GA6021578
Qualified in Nassau County
Commission Expires on March 15, 20__

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MISS UNIVERSE L.P., LLLP, and DONALD J. TRUMP,
both individually and derivatively on behalf of MISS
UNIVERSE L.P., LLLP,

                           Plaintiffs,

- against -

UNIVISION NETWORKS & STUDIOS, INC. and
ALBERTO CIURANA, individually,

                           Defendants.

Index No. 652332/15

**AFFIDAVIT OF SERVICE
BY FEDERAL EXPRESS**

STATE OF NEW YORK    )
                        : ss.:
COUNTY OF NEW YORK  )

    **TIMOTHY SANABRIA**, being duly sworn, deposes and says:

    The deponent is not a party to this action, is over 18 years of age and is employed at 270 Madison Avenue, New York, New York.

    That on July 1, 2015 deponent served a true copy of the **SUMMONS AND VERIFIED COMPLAINT** herein pursuant to Sections 24 and 25 of the Univision License Agreement which provides for service of the Summons and Complaint by commercial courier upon:

                 UNIVISION NETWORKS & STUDIOS, INC.
                 9405 N.W. 41ST Street
                 Miami, Florida 33178
                 Attn: President, Programmig & Content

                 UNIVISION COMMUNICATIONS INC.
                 5999 Center Drive
                 Los Angeles, California 90045
                 Attn: SVP Associate General Counsel/General

by Federal Express, by depositing the papers in properly addressed wrappers into the custody of a Federal Express employee for overnight delivery, prior to the latest time designated by Federal Express for overnight delivery.

                                            TIMOTHY SANABRIA

Sworn to before me this
1ST day of July 2015

                                KIM AUTUORI
    NOTARY PUBLIC            Notary Public, State of New York
                                No. 01AU4777866
J GOLDMAN 2453.4145/1625624      Qualified In Queens County
                          Commission Expires August 31, 2018

From: (212) 867-4456
Jeffrey L. Goldman, Esq.
Belkin Burden Wenig & Goldman
270 Madison Avenue, 5th Floor
New York, NY 10016

Origin ID: JRAA

**FedEx** Express

Ship Date: 01JUL15
ActWgt: 1.0 LB
CAD: 105958921/INET3610

J15126022303uv

SHIP TO: (000) 000-0000     BILL SENDER
**President, Programming & Content**
**Univision Networks & Studios, Inc.**
9405 N.W. 41st Street

MIAMI, FL 33178

Delivery Address Bar Code

Ref # 2453.4145 - JLG/ka
Invoice #
PO # 2453.4145 - JLG/ka
Dept #

TRK# 7739 5928 1880
0201

**THU - 02 JUL 10:30A**
PRIORITY OVERNIGHT

33178
FL-US



# XH RTDA

MIA

597.0/IA15/EE4B

After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

From: (212) 867-4486
Jeffrey L. Goldman, Esq.
Belkin Burden Wenig & Goldman
270 Madison Avenue, 5th Floor

New York, NY 10016

Origin ID: JRAA



Ship Date: 01JUL15
ActWgt: 1.0 LB
CAD: 105958921/NET3610

Delivery Address Bar Code

Ref # 2453.4145 - JLG/ka
Invoice #
PO # 2453.4145 - JLG/ka
Dept #

**SHIP TO: (909) 000-0000** BILL SENDER
**SVP Associate General Counsel/Gen.**
**Univision Communications Inc.**
**5999 Center Drive**

**LOS ANGELES, CA 90045**

THU - 02 JUL 10:30A
PRIORITY OVERNIGHT

TRK# 7739 5934 0070
0281



# XH AVXA

90045
CA-US
LAX



After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

T 305 — Request for preliminary conference, 22 NYCRR 202.12 (a), 9-00

© 1998 BY Blumberg Excelsior, Inc., PUBLISHER, NYC 10013
www.blumberg.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 652332/15
Calendar No.

MISS UNIVERSE L.P., LLLP, and DONALD J. TRUMP, both individually
and derivatively on behalf of MISS UNIVERSE L.P., LLLP,

_Plaintiff(s)._

_—against—_

UNIVISION NETWORKS & STUDIOS, INC. and ALBERTO CIURANA,
individually,

_Defendant(s)._

.......................................................
Name of assigned judge.

**REQUEST FOR**

**PRELIMINARY CONFERENCE**

The undersigned requests a preliminary conference.

The nature of the action is damages for breach of contract, tortious interference of contract, breach of covenant of good faith and fair dealing and defamation

The names, addresses and telephone numbers of all attorneys appearing in the action are as follows:

BELKIN BURDEN WENIG & GOLDMAN, LLP
Attorney(s) for  Plaintiffs
Post Office Address & Tel. No.
270 Madison Avenue
New York, New York 10016
(212) 867-4466

ALBERTO CIURANA, Defendant
Attorney(s) for
Post Office Address & Tel. No.
5959 Collins Avenue, Apt. 1101 & 704
Miami Dade, Florida  33140-2291

UNIVISION NETWORKS & STUDIOS, INC., Defendant
Attorney(s) for
Post Office Address & Tel. No.
9405 N.W. 41st Street
Miami, Florida  33178
Attn:  President of Programming

UNIVISION COMMUNICATIONS INC.
Attorney(s) for
Post Office Address & Tel. No.
5999 Center Drive
Los Angeles, California  90045-8901

Dated:  July 8, 2015

BELKIN BURDEN WENIG & GOLDMAN, LLP

Attorney(s) for Plaintiffs

270 Madison Avenue
New York, New York 10016
(212) 867-4466

BY:

SUPREME COURT OF THE STATE OF NEW YORK: COUNTY OF NEW YORK          Index No. 652332/15

# Request for Preliminary Conference

MISS UNIVERSE L.P., LLLP, and DONALD J. TRUMP, both individually and derivatively on behalf of MISS UNIVERSE L.P., LLLP,

*Plaintiff(s)*

vs.

UNIVISION NETWORKS & STUDIOS, INC. and ALBERTO CIURANA, individually,

*Defendant(s)*

BELKIN BURDEN WENIG & GOLDMAN, LLP
Attorney(s) for Plaintiffs
Post Office Address & Tel. No.
270 Madison Avenue
New York, New York 10016
(212) 867-4466

Service of a copy of the within

                                    is hereby admitted

Dated,

...........................................................................

*Attorney(s) for*

STATE OF NEW YORK, COUNTY OF                          ss.:

I,                                                    being sworn, say; I am not a party to the action, am over 18 years
of age and reside at
On                                  I served the within

Check Applicable Box

☐ Service
By Mail
by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the following person at the last known address set forth after the name:

☐ Personal
Service on
Individual
by delivering a true copy thereof personally to the person named below at the address indicated. I know the person served to be the person mentioned and described in said papers as a party therein:

☐ Leaving
at
residence
by leaving a true copy thereof at the residence within this State of the person named below at the address indicated with                              a person of suitable age and discretion.

Sworn to before me on

_____
The name signed must be printed beneath

JGOLDMAN/2453.4145.1629939

# REQUEST FOR JUDICIAL INTERVENTION

UCS-840 (7/2012)

| | For Court Clerk Use Only: |
|---|---|
| | IAS Entry Date |

**Supreme** _____ **COURT, COUNTY OF** _____ **New York**

| | Judge Assigned |
|---|---|

**Index No:** _____ 652332/2015 _____ **Date Index Issued:** _____ June 30, 2015

| | RJI Date |
|---|---|

**CAPTION:** Enter the complete case caption. Do not use et al or et ano. If more space is required, attach a caption rider sheet.

MISS UNIVERSE L.P. LLLP AND DONALD J. TRUMP, BOTH INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF MISS UNIVERSE L.P., LLLP

**Plaintiff(s)/Petitioner(s)**

-against-

UNIVISION NETWORKS & STUDIOS, INC. AND ALBERTO CIURANA, INDIVIDUALLY

**Defendant(s)/Respondent(s)**

## NATURE OF ACTION OR PROCEEDING: Check ONE box only and specify where indicated.

| MATRIMONIAL | COMMERCIAL |
|---|---|
| ○ Contested | ○ Business Entity (including corporations, partnerships, LLCs, etc.) |
| **NOTE:** For all Matrimonial actions where the parties have children under the age of 18, complete and attach the **MATRIMONIAL RJI Addendum.** For Uncontested Matrimonial actions, use RJI form UD-13. | ◉ Contract |
| | ○ Insurance (where insurer is a party, except arbitration) |
| | ○ UCC (including sales, negotiable instruments) |
| **TORTS** | ○ Other Commercial:_____ |
| ○ Asbestos | (specify) |
| ○ Breast Implant | **NOTE:** For Commercial Division assignment requests [22 NYCRR § 202.70(d)], complete and attach the **COMMERCIAL DIV RJI Addendum.** |
| ○ Environmental:_____ | |
| (specify) | **REAL PROPERTY:** How many properties does the application include? |
| ○ Medical, Dental, or Podiatric Malpractice | ○ Condemnation |
| ○ Motor Vehicle | ○ Mortgage Foreclosure (specify): ○ Residential ○ Commercial |
| ○ Products Liability:_____ | Property Address:_____ |
| (specify) | Street Address    City    State    Zip |
| ○ Other Negligence:_____ | **NOTE:** For Mortgage Foreclosure actions involving a one- to four-family, owner-occupied, residential property, or an owner-occupied |
| (specify) | condominium, complete and attach the **FORECLOSURE RJI Addendum.** |
| ○ Other Professional Malpractice:_____ | ○ Tax Certiorari - Section: _____ Block: _____ Lot: _____ |
| (specify) | ○ Tax Foreclosure |
| ○ Other Tort:_____ | ○ Other Real Property:_____ |
| (specify) | (specify) |

| OTHER MATTERS | SPECIAL PROCEEDINGS |
|---|---|
| ○ Certificate of Incorporation/Dissolution   [see **NOTE** under Commercial] | ○ CPLR Article 75 (Arbitration)   [see **NOTE** under Commercial] |
| ○ Emergency Medical Treatment | ○ CPLR Article 78 (Body or Officer) |
| ○ Habeas Corpus | ○ Election Law |
| ○ Local Court Appeal | ○ MHL Article 9.60 (Kendra's Law) |
| ○ Mechanic's Lien | ○ MHL Article 10 (Sex Offender Confinement-Initial) |
| ○ Name Change | ○ MHL Article 10 (Sex Offender Confinement-Review) |
| ○ Pistol Permit Revocation Hearing | ○ MHL Article 81 (Guardianship) |
| ○ Sale or Finance of Religious/Not-for-Profit Property | ○ Other Mental Hygiene:_____ |
| ○ Other:_____ | (specify) |
| (specify) | ○ Other Special Proceeding:_____ |
| | (specify) |

## STATUS OF ACTION OR PROCEEDING: Answer YES or NO for EVERY question AND enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons w/notice been filed? | ◉ | ○ | If yes, date filed: _____ |
| Has a summons and complaint or summons w/notice been served? | ◉ | ○ | If yes, date served: 07/01/2015 ON UNIVISION |
| Is this action/proceeding being filed post-judgment? | ○ | ◉ | If yes, judgment date: _____ |

**NATURE OF JUDICIAL INTERVENTION:**   Check ONE box only AND enter additional information where indicated.

- ○ Infant's Compromise
- ○ Note of Issue and/or Certificate of Readiness
- ○ Notice of Medical, Dental, or Podiatric Malpractice      Date Issue Joined: _____
- ○ Notice of Motion          Relief Sought: _____      Return Date: _____
- ○ Notice of Petition         Relief Sought: _____      Return Date: _____
- ○ Order to Show Cause     Relief Sought: _____      Return Date: _____
- ○ Other Ex Parte Application   Relief Sought: _____
- ○ Poor Person Application
- ◉ Request for Preliminary Conference
- ○ Residential Mortgage Foreclosure Settlement Conference
- ○ Writ of Habeas Corpus
- ○ Other  (specify): _____

**RELATED CASES:**   List any related actions.  For Matrimonial actions, include any related criminal and/or Family Court cases. If additional space is required, complete and attach the **RJI Addendum**.  If none, leave blank.

| Case Title | Index/Case No. | Court | Judge (if assigned) | Relationship to Instant Case |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**PARTIES:**   For parties without an attorney, check "Un-Rep" box AND enter party address, phone number and e-mail address in space provided. If additional space is required, complete and attach the **RJI Addendum**.

| Un-Rep | Parties: List parties in caption order and indicate party role(s) (e.g. defendant; 3rd-party plaintiff). | Attorneys and/or Unrepresented Litigants: Provide attorney name, firm name, business address, phone number and e-mail address of all attorneys that have appeared in the case.  For unrepresented litigants, provide address, phone number and e-mail address. | Issue Joined (Y/N): | Insurance Carrier(s): |
|---|---|---|---|---|
| ☐ | MISS UNIVERSE L.P.LLP (Last Name)  PLAINTIFF (First Name, Primary Role)  Secondary Role (if any): | GOLDMAN (Last Name)   JEFFREY (First Name)  BELKIN BURDEN WENIG & GOLDMAN LP (Firm Name)  270 MADISON AVENUE (Street Address)   NEW YORK (City)   New York (State)   10017 (Zip)  +1 (212) 867-4466 (Phone)   +1 (212) 867-0709 (Fax)   JGOLDMAN@BBWG.COM (e-mail) | ○ YES   ○ NO |  |
| ☐ | DONALD J. TRUMP (Last Name)  PLAINTIFF (First Name, Primary Role)  Secondary Role (if any): | SAME AS ABOVE (Last Name)   (First Name)  (Firm Name)  (Street Address)   (City)   (State)   (Zip)  (Phone)   (Fax)   (e-mail) | ○ YES   ○ NO |  |
| ☐ | UNIVISION NETWORKS & STUDIOS INC (Last Name)  DEFENDANT (First Name, Primary Role)  Secondary Role (if any): | TOWFIGHI (Last Name)   ARYA (First Name)  UNIVISION COMMUNICATIONS, INC (Firm Name)  5999 CENTER DRIVE (Street Address)   LOS ANGELES (City)   California (State)   90045-8901 (Zip)  +1 (310) 348-4878 (Phone)   (Fax)   ATOWFIGHI@UNIVISION.NET (e-mail) | ○ YES   ◉ NO |  |
| ☐ | ALBERTO CIURANA (Last Name)  DEFENDANT (First Name, Primary Role)  Secondary Role (if any): | (Last Name)   (First Name)  (Firm Name)  (Street Address)   (City)   (State)   (Zip)  (Phone)   (Fax)   (e-mail) | ○ YES   ◉ NO |  |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE, THERE ARE AND HAVE BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION PREVIOUSLY BEEN FILED IN THIS ACTION OR PROCEEDING.**

Dated: __7/8/2015__

_____
SIGNATURE

__1897057__
ATTORNEY REGISTRATION NUMBER

JEFFREY L. GOLDMAN OF BELKIN BURDEN WENIG & GOLDMAN
PRINT OR TYPE NAME

Print Form

**SUPREME COURT OF THE STATE OF NEW YORK**

**COUNTY OF** NEW YORK

UCS-840C
3/2011

_____x

MISS UNIVERSE L.P. and DONALD J. TRUMP, both individually

and derivatively on behalf of

Plaintiff(s)/Petitioner(s)

-against-

UNIVISION NETWORKS & STUDIOS, INC. and ALBERTO

CIURANA, individually

Defendant(s)/Respondent(s)
_____x

**Index No.** 652332/2015

**RJI No. (if any)** _____

**COMMERCIAL DIVISION**
**Request for Judicial Intervention Addendum**

**COMPLETE WHERE APPLICABLE** [add additional pages if needed]:

**Plaintiff/Petitioner's cause(s) of action** [check all that apply]:

☒ Breach of contract or fiduciary duty, fraud, misrepresentation, business tort (e.g. unfair competition), or statutory and/or common law violation where the breach or violation is alleged to arise out of business dealings (e.g. sales of assets or securities; corporate restructuring; partnership, shareholder, joint venture, and other business agreements; trade secrets; restrictive covenants; and employment agreements not including claims that principally involve alleged discriminatory practices)

☐ Transactions governed by the Uniform Commercial Code (exclusive of those concerning individual cooperative or condominium units)

☐ Transactions involving commercial real property, including Yellowstone injunctions and excluding actions for the payment of rent only

☐ Shareholder derivative actions — without consideration of the monetary threshold

☐ Commercial class actions — without consideration of the monetary threshold

☐ Business transactions involving or arising out of dealings with commercial banks and other financial institutions

☐ Internal affairs of business organizations

☐ Malpractice by accountants or actuaries, and legal malpractice arising out of representation in commercial matters

☐ Environmental insurance coverage

☐ Commercial insurance coverage (e.g. directors and officers, errors and omissions, and business interruption coverage)

☐ Dissolution of corporations, partnerships, limited liability companies, limited liability partnerships and joint ventures — without consideration of the monetary threshold

☐ Applications to stay or compel arbitration and affirm or disaffirm arbitration awards and related injunctive relief pursuant to CPLR Article 75 involving any of the foregoing enumerated commercial issues — without consideration of the monetary threshold

**Plaintiff/Petitioner's claim for compensatory damages** [exclusive of punitive damages, interest, costs and counsel fees claimed]:

$  500,000,000.00

**Plaintiff/Petitioner's claim for equitable or declaratory relief** [brief description]:

**Defendant/Respondent's counterclaim(s)** [brief description, including claim for monetary relief]:

**I REQUEST THAT THIS CASE BE ASSIGNED TO THE COMMERCIAL DIVISION. I CERTIFY THAT THE CASE MEETS THE JURISDICTIONAL REQUIREMENTS OF THE COMMERCIAL DIVISION SET FORTH IN 22 NYCRR § 202.70(a), (b) AND (c).**

**Dated:** 7 / 8 / 2015

_____
SIGNATURE

Jeffrey L. Goldman of Belkin Burden Wenig & Goldman LLP

**PRINT OR TYPE NAME**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| MISS UNIVERSE L.P., LLLP, and DONALD J. TRUMP, both individually and derivatively on behalf of MISS UNIVERSE L.P., LLLP, | Index No. 652332/15 |
| Plaintiffs, | **AFFIDAVIT OF SERVICE BY FEDERAL EXPRESS** |
| - against - |  |
| UNIVISION NETWORKS & STUDIOS, INC. and ALBERTO CIURANA, individually, |  |
| Defendants. |  |

STATE OF NEW YORK        )
                                              : ss.:
COUNTY OF NEW YORK    )

**TIMOTHY SANABRIA**, being duly sworn, deposes and says:

The deponent is not a party to this action, is over 18 years of age and is employed at 270 Madison Avenue, New York, New York.

That on July 8, 2015 deponent served a true copy of a **REQUEST FOR PRELIMINARY CONFERENCE** herein upon:

> UNIVISION NETWORKS & STUDIOS, INC.
> 9405 N.W. 41ST Street
> Miami, Florida  33178
> Attn:  President, Programmig & Content
>
> UNIVISION COMMUNICATIONS INC.
> 5999 Center Drive
> Los Angeles, California 90045
>
> ALBERTO CIURANA
> 5959 Collins Avenue, Apt. 1101 and Apt. 704
> Miami Dade, Florida  33140

by Federal Express, by depositing the papers in  properly addressed wrappers into the custody of a Federal Express employee for overnight delivery, prior to the latest time designated by Federal Express for overnight delivery.

_____
TIMOTHY SANABRIA

Sworn to before me this
9TH day of July 2015

_____
NOTARY PUBLIC

JGOLDMAN/2453.4145/1630100

KIM AUTUORI
Notary Public, State of New York
No. 01AU4777866
Qualified in Queens County
Commission Expires August 31, 2018