UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| MISS UNIVERSE L.P., LLLP and DONALD J. TRUMP, | Case No. 15 CV 5377 (JGK)(JLC) |
| Plaintiffs, | |
| - against - | **AMENDED COMPLAINT** |
| UNIVISION NETWORKS & STUDIOS, INC. and ALBERTO CIURANA, individually, | **JURY TRIAL DEMANDED** |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiffs Miss Universe L.P., LLLP ("MUO") and Donald J. Trump ("Mr. Trump") (collectively, "Plaintiffs"), by and through their undersigned attorneys, as and for their Amended Complaint against defendants Univision Networks & Studios, Inc. ("Univision") and Alberto Ciurana, individually ("Mr. Ciurana") (collectively, "Defendants") allege, as follows:

## NATURE OF THE CASE

1. At issue in this action are claims for breach of contract, intentional interference with contractual relationships, and defamation arising from the recent decision by Univision, the largest Spanish language television network in the United States, to suddenly terminate its contractual relationship with MUO on the eve of the 2015 Miss USA pageant for no legally justifiably reason and refuse to broadcast the Miss Universe and Miss USA pageants from 2015 through 2019.  In addition to seeking recovery for compensatory and consequential damages, by this action Plaintiffs also seek punitive damages and legal fees from the Defendants.

2. Simply stated, Univision had no right to terminate its relationship with MUO and refuse to broadcast the pageants.  As demonstrated below, the agreement between Univision and

MUO, which requires that Univision broadcast each of the Miss Universe and USA pageants "live via the Univision or UniMas Networks … at least one (1) time" each year, is clear and unequivocal and does not give Univision the right to terminate simply because it does not agree with Mr. Trump's longstanding personal views or statements, all of which are protected by the First Amendment and have been echoed by many in this country.

## THE PARTIES

3. MUO was and is a Delaware limited liability limited partnership with a principal place of business at 725 Fifth Avenue, New York, New York. It is duly authorized to commence this action.

4. Mr. Trump is an individual with an address at 721 Fifth Avenue, New York, New York.

5. Upon information and belief, at all relevant times set forth herein, Univision was and is a privately held California corporation with a principal place of business at 9405 N.W. 41st Street, Miami, Florida.

6. Upon information and belief, at all relevant times set forth herein, Mr. Ciurana was and is an individual with an address at 9405 N.W. 41st Street, Miami, Florida and the President of Programing and Content for Univision.

## FACTS COMMON TO ALL CAUSES OF ACTION

**The Miss Universe Organization**

7. Prior to a sale of its assets on September 10, 2015, MUO was in the business of organizing, staging and producing some of the world's most successful, well known, and respected pageant competitions, including Miss USA, Miss Teen USA and Miss Universe.

Indeed, in 2014 alone, the Miss USA competition was seen by more than 100 million viewers in over 70 countries while, in 2015, the Miss Universe pageant was broadcast to a worldwide audience of approximately 1 billion viewers in more than 190 countries.

**The Univision Agreement**

8. On or about January 14, 2015, following a bidding war between rival Spanish language television networks Telemundo and Univision, MUO and Univision (together, the "Parties") entered into a license agreement pursuant to which Univision acquired from MUO the sole and exclusive right to broadcast, in Spanish, live and on demand, via television and any digital media, the Miss USA, Miss Teen USA and Miss Universe competitions (together, the "Final Events") for five (5) straight years – from 2015 through 2019 – in the United States (including Puerto Rico) and Canada (the "Agreement" or "Univision Agreement").

9. Pursuant to Section 1(a) of the Univision Agreement, MUO agreed that it would "organize, stage and produce" the Final Events, all of which would "feature contestants from around the world or the United States (as applicable) consistent with the production values, performances and other elements of past Miss Universe, Miss USA and Miss Teen USA (as webcast) Pageants."

10. Pursuant to Section 1(b), MUO and Univision agreed that both the Miss USA and Miss Universe competitions "will be staged during primetime (U.S. Eastern Time) on dates to be mutually agreed upon by the parties" and that MUO will "use reasonable efforts" to hold each such competition "on a Sunday night."

11. Pursuant to Section 2(a)(vi) and (b), MUO agreed that each Final Event would be "organized, staged and promoted in [a] manner such that it will be a first-class network-quality production", would "have a duration of two (2) or three (3) hours" and that MUO would produce

and deliver such Final Events "in accordance with the first class quality production standards for United States broadcast networks' prime-time programs."

12. Pursuant to Section 3(a), Univision, in turn, agreed that it would broadcast each of the Final Events, i.e., the Miss USA and Miss Universe competitions "live … at least one time." Section 3(a) states, quite clearly, as follows:

> "Univision will exhibit each Program live via the Univision or UniMas Networks or as otherwise mutually agreed by the parties at least one (1) time, provided that Univision will not be obligated to broadcast the Teen Final Event."

13. In consideration of these rights, Univision agreed that it would pay MUO a license fee in the sum of $2.5 million per year for 2015, 2016 and 2017 and in the sum of $3 million per year for 2018 and 2019, for a total of $13.5 million over the five (5) year term.

14. Section 5(b) identifies certain limited bases upon which the Parties may terminate the Univision Agreement. Specifically: (i) Section 5(b)(i) gives the Parties the right to terminate in the event either party files for bankruptcy, (ii) Section 5(b)(ii) gives MUO the right to terminate if Univision either fails to pay the License Fee or otherwise breaches and fails to timely cure any material obligation; and (iii) Section 5(b)(iii) gives Univision the right to terminate if MUO grants the same rights granted to Univision to another party or otherwise breaches and fails to timely cure any material obligation. In other words, under the facts at issue herein, Univision had no contractual right to terminate the Agreement.

15. Notwithstanding these termination rights, Section 5(b)(iv) states that the "[t]ermination of this Agreement for any reason provided herein will not relieve the breaching party of its obligation to perform up to the effective date of such termination …"

16. Pursuant to Section 25(b), the Parties agreed that the "prevailing party" in "any action for the breach of this Agreement" will "be entitled to seek reasonable costs and expenses

incurred in connection with such action, including attorneys' fees and expert witness fees incurred in connection with such action."

17. Pursuant to Section 25(c) and (d), the Parties agreed that the Univision Agreement "will be governed by, and construed in accordance with, the laws of the State of New York" and that the Parties each "irrevocably submits to the jurisdiction of any New York State or United States Federal court sitting in New York County, New York in any action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby, and irrevocably agrees that any such action or proceeding may be heard and determined only in such New York State or Federal court."

**Univision Announces Its Plan to Terminate the Agreement After
Mr. Trump Repeats His Longstanding Position on Immigration Reform**

18. On June 16, 2015, Mr. Trump, at a nationally televised event held in Trump Tower, formally announced his candidacy for President of the United States. During his 45 minute speech, Mr. Trump addressed a multitude of political issues, many of which, over the last decade, have consistently served as the focal point of his political views, including, among other things, the economy and his plans for improved job growth, that Mexico and other nations consistently outmaneuver the United States on trade, illegal immigration and the need for a more effective border between the United States and Mexico, currency manipulation by the Chinese government, the recent decline in U.S.-Israeli relations, and the ongoing threat from Al Qaeda, ISIS, and other international terrorist groups.

19. On June 25, 2015, just eight days after Mr. Trump's announcement and a mere five months after executing the Univision Agreement, Mr. Trump, suddenly and without warning, received a telephone call from a high ranking executive at Univision stating that, in response to Mr. Trump's June 16 comments on illegal immigration, Univision had been

inundated with calls demanding that Univision immediately terminate its relationship with MUO and Mr. Trump.

20. Clearly nervous and unable to get the words out, the Univision executive then proceeded to profusely apologize for what he was about to say: that despite recognizing its clear and unambiguous contractual obligation under the Agreement to broadcast both the upcoming Miss USA pageant and future Miss Universe pageants live, the decision had been made by the highest ranking executives at Univision to terminate its relationship with MUO effective immediately and simply pay MUO the $13.5 million in License Fees it owes. Unfortunately, that amount pales in comparison to the total amount Univision will ultimately have to pay.

21. In reality, however, Mr. Trump's calls for immigration reform, particularly with respect to the U.S.-Mexican border, were nothing new. Indeed, for over a decade, Mr. Trump had, in numerous television and news interviews, consistently voiced his concerns regarding the influx of illegal immigrants pouring into the United States across the Mexican border and the crime that has resulted therefrom, views which were widely reported by every major media outlet, including, both Univision and NBC.

22. As Mr. Trump explained in an interview with Fox News' Bill O'Reilly on March 30, 2011, "[t]hey're coming over, and they're climbing over a fence, and there's nobody within 10 miles — and they're selling drugs all over the place, they're killing people all over the place — and we're not doing anything about it." However, Mr. Trump cautioned that it was difficult to generalize the experience of all immigrants who had entered the United States illegally. "You're going to have to look at the individual people, see how they've done, see how productive they've been, see what their references are -- and then make a decision," he said. "You have some great, productive people -- and then you have some total disasters that probably

should be in prison."

23. Indeed, Mr. Trump was not the only one bringing the need for immigration reform to the forefront of the political landscape. In a September 10, 2014 article, Fusion, a joint venture between Disney/ABC and none other than Univision, following an investigation into illegal immigration, reported that "[a] staggering 80 percent of Central American girls and women crossing Mexico en route to the United States are raped along the way" – typically by "other migrants, bandits, or even government authorities."

24. Univision was aware of Mr. Trump's stance on illegal immigration and the possibility that he might declare himself a candidate for the presidency well before January 2015 when it entered into the Agreement with MUO.

25. Notwithstanding the foregoing, literally within minutes of Mr. Trump receiving the call, Univision, in a pre-orchestrated move that was designed to punish and embarrass the Plaintiffs, released a statement to all of its radio and television outlets and on its website (the "Univision Statement") announcing that, in response to Mr. Trump's June 16 comments, which were virtually identical to the comments he had made previously, not only would Univision "not be airing the Miss USA pageant" on July 12, but it was also terminating its relationship with MUO in its entirety. The Univision Statement reads, as follows:

> "Today, the entertainment division of Univision Communications Inc. announced that it is ending the Company's business relationship with the Miss Universe Organization, which is part-owned by Donald J. Trump, based on his recent, insulting remarks about Mexican immigrants. At Univision, we see first-hand the work ethic, love for family, strong religious values and the important role Mexican immigrants and Mexican-Americans have had and will continue to have in building the future of our country. **We will not be airing the Miss USA pageant on July 12th or working on any other projects tied to the Trump Organization**.

> Univision News and the local news division will continue to provide comprehensive coverage of all candidates, including Mr. Trump, to ensure our audience continues to have access to all points of view (emphasis added)."

(*See* http://corporate.univision.com/2015/06/statement-from-the-entertainment-division-of-univision-communications-inc-on-june-25-2015/)

26. Simply stated, there is nothing in the Agreement which gives Univision the right to terminate its relationship with MUO based on Mr. Trump's comments. Even if there were, Univision would have been required to serve formal notice on MUO. Univision has failed to do so. Instead, Univision, in an obvious attempt to politicize the situation and suppress Mr. Trump's right to free speech, including his views on both trade and illegal immigration along the U.S.-Mexican border, has made a concerted effort, upon information and belief, in collusion with others, to wage war against Plaintiffs in the media.

27. To make matters worse, on June 25, 2015, Mr. Ciurana, Univision's President of Programing and Content, posted a photo on his official Univision Instagram account showing Mr. Trump side by side with Dylann Roof, the 21 year old who had been recently arrested in the murder of nine (9) African-Americans attending bible study at a church in Charleston, South Carolina, one of the worst hate crimes to ever take place on U.S. soil. Across the top of both photos appeared the words "NO COMMENTS."

28. By posting these pictures side by side, the outrageously false and reckless statements that Mr. Ciurana was conveying to his readers was that Mr. Trump had committed similar heinous acts and/or that he had incited others to commit similar heinous acts.

29. Almost immediately, Mr. Ciurana's false statement was picked up by the media and became the subject of hundreds, if not thousands, of press articles, yet another example of Univision's dubious efforts to create a false narrative in an attempt to upset Mr. Trump's

8

longstanding personal and business relationship with the Hispanic community.

30. However, Univision's attempt to suppress Mr. Trump's First Amendment rights and defame his image did not end there. Upon information and belief, shortly after terminating its relationship with Plaintiffs, and only hours after Mr. Trump had begun what would become his meteoric rise among 2016 Republican candidates for President in the New Hampshire polls, executives at Univision, many of whom, including but not limited to Univision's President and CEO, Randy Falco (who had previously worked at NBC for more than 30 years and were, thus, well aware of Plaintiffs' contractual relationships with NBC), colluded with their former colleagues at NBC and/or otherwise used and/or threatened economic coercion and other improper and illegal tactics and means, to cause NBC to permanently sever its contractual and business relationship with Plaintiffs by, among other things, refusing to broadcast the Miss USA, Miss Teen USA and Miss Universe pageants in express violation of NBC's contractual obligations. Univision undertook these actions, among other reasons, for the malicious, improper, and intentional purpose of punishing MUO for Mr. Trump's comments, and also based upon the mistaken belief that the termination of the NBC agreement would reduce or extinguish Univision's contractual obligations to pay license fees and other damages to MUO under the Agreement.

31. Despite being contractually obligated to, at a minimum, "broadcast the first run of the MISS UNIVERSE Pageant during primetime hours on the NBC television network" through 2016, NBC capitulated to Univision's threatened economic coercion and/or other improper and illegal tactics and means to terminate its relationship with Plaintiffs and, on June 29, 2015, issued the following statement on its website:

> "At NBC, respect and dignity for all people are cornerstones of our values. Due to the recent derogatory statements by Donald Trump

9

regarding immigrants, NBCUniversal is ending its business relationship with Mr. Trump. **To that end, the annual Miss USA and Miss Universe Pageants, which are part of a joint venture between NBC and Trump, will no longer air on NBC**… (emphasis added).

32. The announcement by NBC was shocking, not simply because it was contractually obligated to broadcast the Miss Universe pageant, but also because it represented a dramatic turnaround from the statement NBC had issued just days before on June 26, 2015 when it explained, quite simply, that "Donald Trump's opinions do not represent those of NBC, and we do not agree with his positions on a number of issues, including his recent comments on immigration."

**The Substantial Damages**

33. As a result of Univision's egregious, brazen and unjustifiable acts and conduct, including, without limitation, their intentional breach of the Univision Agreement and interference with MUO's contractual relations with NBC, Plaintiffs have already suffered and will continue to suffer tens, if not hundreds of millions of dollars in damages.

34. Univision's own investor presentations tout the recent growth in the Hispanic population as well as their overall spending power, predicting an 85% increase in Hispanic consumer spending in the next 10 years. Beauty pageants enjoy wide popularity in Hispanic culture. For instance, Venezuela has produced more Miss Universe winners than any other country, and Colombia holds about 400 beauty pageants each year.

35. Univision has long been recognized as the leading Spanish language network in the United States and Canada with tens of millions of viewers, at times, even beating out prominent English language networks such as ABC, CBS, FOX and, of course, NBC. In 2014, more than 80 million people tuned in to Univision just to watch the broadcast of the FIFA World

Cup.

36.     In an attempt to not only capture this viewership but also establish a lucrative market for related MUO advertising, in-telecast promotions, joint selling possibilities, licensing and merchandising, in or about January 2015, MUO made the decision to pass over lucrative offers from competing Spanish language networks, such as Telemundo (an NBC owned company that had the right to broadcast the pageants in the past), and enter into the Agreement granting Univision the exclusive right to broadcast the pageants, live, in Spanish for five (5) years, from 2015 through 2019.

37.     Announcing the signing of the Agreement in a joint press release with Univision, the President of MUO, Paula Shugart, stated as follows:

> Our new partnership will bring the MISS UNIVERSE and MISS USA pageants, among the most watched forms of television entertainment in the world to Univision, the number one media brand for U.S. Hispanics… Our collaboration will bring unmatched entertainment to the most passionate, loyal audience that Univision offers to one of the fastest growing and important demographic communities in the U.S.

38.     As a result of Univision's last minute decision on June 25, 2015 to terminate the Agreement and not broadcast the upcoming Miss USA pageant two weeks later on July 12, 2015, MUO was unable to arrange for a Spanish language broadcaster replacement.

39.     With no Spanish language broadcast, MUO lost much of its Spanish-speaking audience and, with it lost or incurred tens, if not hundreds, of millions of dollars in advertising sales, production costs, venue fees, telecast promotions, sponsorships, joint selling possibilities, licensing, merchandising revenue, franchise fees, brand value and the like, both in the immediate future and for many years to come.  In short, the potential fallout from Univision's brazen decision to simply walk away from its contractual obligations is catastrophic.

40.     However, the damage to Plaintiffs as a result of Univision's decision to simply

terminate its relationship with MUO without any conceivable legal justification, though substantial in its own right, does not end there. Instead, Univision, upon information and belief, decided to take its dispute with Mr. Trump even further, engaging in a wrongful, willful, concerted and purposeful effort to coerce, collude and/or conspire with NBC executives to breach their contractual obligations with MUO.

**Mr. Trump Becomes the Sole Owner of MUO**

41. On September 10, 2015, Mr. Trump and Trump Pageants LLC, an entity which Mr. Trump owns and controls, acquired all of the general and limited partnership interests in MUO that they did not already own from certain entities affiliated with NBCUniversal Media LLC.

42. As a result of this transaction, on September 10, 2015, Mr. Trump became the beneficial owner of 100% of MUO. Subsequently, MUO sold certain of its assets in a private transaction to an affiliate of William Morris Endeavor, but retained all rights to assert the claims and seek the damages set forth in this lawsuit.

## AS AND FOR A FIRST CLAIM FOR RELIEF
### (Breach of Contract)

43. MUO repeats and realleges each and every allegation as if fully set forth at length herein.

44. Pursuant to the terms of the Agreement, in exchange for MUO granting Univision the exclusive right to exhibit the Miss USA, Miss Teen USA and Miss Universe pageants from 2015 through 2019, Univision agreed to (i) pay MUO certain License Fees totaling $13.5 million and (ii) broadcast the Miss USA and Miss Universe pageants "live via the Univision or UniMas Networks … at least one (1) time."

45. Univision further agreed to engage in joint selling efforts for in-telecast sponsorships, on-site sponsors and advertisers, merchandising and licensing opportunities and to share revenue with MUO from these efforts.

46. In breach of the Agreement, on June 25, 2015, Univision issued the Statement that it was unilaterally "ending the Company's business relationship with the Miss Universe Organization" and would "not be airing the Miss USA pageant on July 12th."

47. Implied by law into the terms of the Agreement is a covenant of good faith and fair dealing.

48. Here, Univision breached the implied covenant of good faith and fair dealing by intentionally and purposefully inducing or causing NBC to breach its contract with MUO, all in an effort to prevent MUO from being able to honor a "condition precedent" in the Agreement *to wit*: to secure and maintain an English language broadcaster for each Program under the Agreement.

49. By its conduct, Univision sought to destroy MUO's right to receive from Univision the license payments and other benefits due under the agreement.

50. Under the Agreement, in the event that MUO is found to be the "prevailing party," it is "entitled to seek reasonable costs and expenses incurred in connection with such action, including attorneys' and expert witness fees incurred in connection with such action."

51. MUO has incurred, and will continue to incur, costs and expenses, including attorneys' fees and disbursements, in connection with this action.

52. By reason of Univision's actions, MUO has suffered and will continue to suffer damages in an amount to be determined at trial, but believed to be in excess of $500 million, together with attorneys' fees, reasonable costs and expenses, and interest.

53. MUO has not breached its obligations under the contract.

## AS AND FOR A SECOND CLAIM FOR RELIEF
**(Intentional Interference with Contractual Relationship)**

54. Plaintiffs repeat and reallege each and every allegation as if fully set forth at length herein.

55. Plaintiffs and their respective affiliates are parties to numerous valid and enforceable agreements with various third parties (the "Third Party Agreements").

56. At all times relevant herein, Univision was aware of the existence of certain of the Third Party Agreements.

57. Upon information and belief, Univision without justification engaged in a wrongful, willful, malicious, concerted and purposeful effort to coerce, collude and/or conspire with various parties to terminate their contractual and other business relationships with Plaintiffs knowing full well of the existence of the Third Party Agreements.

58. Univision's interference with Plaintiffs' contractual relations has caused and will continue to cause Plaintiffs to suffer damages in an amount to be determined at trial, but believed to be in excess of $500 million.

## AS AND FOR A THIRD CLAIM FOR RELIEF
**(Defamation)**

59. Mr. Trump repeats and realleges each and every allegation as if fully set forth at length herein.

60. As detailed above, Defendants made false statements concerning Mr. Trump.

61. Among the false statements by Defendants was the June 25, 2015 photograph published by Mr. Ciurana on Instagram as described above and as set forth in Exhibit "A."

62. Given the entire context of the publication, including the surrounding events and its target audience, a reasonable person could understand Mr. Ciurana to be stating that Mr. Trump had committed heinous acts similar to Roof, and/or that Mr. Trump had incited others to commit similar heinous acts.

63. This statement was patently false because as Defendants well knew (or should have known) at the time (and still) Mr. Trump has never committed heinous acts similar to Roof's, and never incited Roof or anyone else to commit such heinous acts.

64. The false statements that Defendants made concerning Mr. Trump were published to various third parties.

65. Defendants made the false statements with actual malice, that is, with knowledge that the statements were false, or with reckless disregard of whether they were false or not.

66. The false statements expose Mr. Trump, both personally and in his business dealings, to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and tend to disparage Mr. Trump in the way of his profession or trade.

67. In making these false statements, Defendants acted with wanton dishonesty such that punitive damages are warranted. Defendants have also acted recklessly and with actual malice, and without any privilege, actual or qualified.

68. The statements about Mr. Trump have injured, and were made with an intent to injure, Mr. Trump's reputation in his business as a media figure and well-known businessman. As a result, Defendants' conduct rises to the level of defamation *per se,* and no proof of special harm or damages is necessary.

WHEREFORE, Plaintiffs respectfully request judgment, as follows:

(i) with respect to the first cause of action, an order awarding damages in favor of MUO for breach of the Agreement against Univision in an amount to be determined at trial, but believed to be in excess of $500 million, together with interest, attorneys' fees, and costs and expenses;

(ii) with respect to the second cause of action, an order awarding damages in favor of Plaintiffs for intentional interference with contractual relationship against Univision in an amount to be determined at trial, but believed to be in excess of $500 million, together with punitive damages in an amount to be determined at trial, but believed to be in excess of $500 million, interest, costs and expenses;

(iii) with respect to the third cause of action, an order awarding damages in favor of Mr. Trump for defamation against Defendants, jointly and severally, in an amount to be determined at trial, but believed to be in excess of $500 million, together with punitive damages in an amount to be determined at trial, but believed to be in excess of $500 million, interest, costs and expenses; and

(iv) granting Plaintiffs such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 6, 2015

LAROCCA HORNIK ROSEN
GREENBERG & BLAHA LLP

By: _____
Lawrence S. Rosen
Patrick McPartland
The Trump Building
40 Wall Street, 32nd Floor
New York, New York 10005
T: (212) 530-4822/4837
E: lrosen@lhrgb.com / pmcpartland@lhrgb.com

Jeffrey L. Goldman
BELKIN BURDEN WENIG & GOLDMAN, LLP
270 Madison Avenue
New York, New York 10016
T: (212) 867-4466
E: jgoldman@bbwg.com

*Attorneys for Plaintiffs*