# EXHIBIT A

<u>**LICENSE AGREEMENT**</u>

<u>**MISS UNIVERSE, MISS USA AND MISS TEEN USA FINAL EVENTS**</u>

This License Agreement ("Agreement"), dated as of January $14$, 2015 and effective as of October 16, 2014 ("Effective Date"), is between Miss Universe L.P., LLLP, having its principal place of business at 1370 Avenue of the Americas, New York, New York 10019 ("Licensor") and Univision Networks & Studios, Inc., having its principal place of business at 9405 N.W. 41st Street, Miami, FL 33178 ("Univision").

**RECITALS**

**A.** Licensor organizes, stages and produces the annual Miss Universe, Miss USA and Miss Teen USA pageants (each, the complete "Pageant") – which involve a series of events in a host city leading up to a final staged show (where the winner is crowned) intended for television (Miss Universe and Miss USA) or web (Miss Teen USA) exhibition.  The final staged show for each year's Miss Universe and Miss USA Pageant shall be referenced herein as a "Universe/USA Finals Event"; the final staged show for each year's Miss Teen USA Pageant shall be referenced as the "Teen Final Event".  For purposes of clarity, the Universe/USA Finals Event and Teen Final Event (and the Program (as defined below) to be delivered by Licensor to Univision pursuant to section 2(b) and to be licensed to Univision pursuant to section 3) do not include any other shows, events or activities that occur during the respective Pageants – such as preliminary competitions or shows; the national costume show at the Miss Universe Pageant; and other interviews or appearances by Pageant contestants; provided that Univision shall have access to such other shows, events and/or activities for purposes of promoting its exploitation of the Programs, and further provided that such other shows, events and/or activities may not be broadcast in the Spanish language in the Territory (as defined below) during the License Period (as defined below) of the Program to which such content relates (other than for customary news coverage).

**B.** On October 16, 2014, Licensor and Univision entered into that certain Term Sheet agreement ("Term Sheet") pursuant to which Univision acquired the exclusive rights to exhibit the Universe/USA Final Events and the Teen Final Event for 2015 through 2019 solely in the Spanish language throughout the Territory, in the Media, during the Term (as such terms are defined below).

**C.** The Term Sheet provides that the parties would negotiate and execute a long form agreement that would include the provisions of the Term Sheet and such other terms and conditions as the parties may agree. The parties now wish to enter into this Agreement, which is the long form agreement contemplated by the Term Sheet.

1. **The Final Events.**

    a.  <u>The Final Events</u>.  Licensor will organize, stage and produce the annual Universe/USA Final Events and the Teen Final Events (each an "Final Event" and collectively, the "Final Events") in each of the following years: 2015, 2016, 2017, 2018 and 2019, all as set forth in more detail in this Section 1 and in Section 2 below.  Each Final Event will feature contestants from around the world or the United States (as applicable) consistent with the production values, performances and other elements of past Miss Universe, Miss USA and Miss Teen USA (as webcast) Pageants.  For the avoidance of doubt, the parties acknowledge that the 2014 Miss Universe Pageant will be held in January of 2015 but is not subject to this Agreement.  The first Final Event covered by this Agreement will be the Final Event of the 2015 Miss USA Pageant, which is anticipated to be staged in June of 2015.  It is anticipated that the 2015 Miss Universe Pageant will take place in December of 2015.  Notwithstanding anything to the contrary

stated in this Agreement, the parties understand and agree that the Teen Final Event currently is produced as a webcast and not for broadcast television.

      b.      <u>Scheduling of the Final Events</u>. Each Universe/USA Final Event will be staged during primetime (U.S. Eastern Time) on dates to be mutually agreed upon by the parties. Licensor will use reasonable efforts to stage each Universe/USA Final Event on a Sunday night; however, Univision acknowledges that the English-language broadcaster (currently anticipated to be NBC) has final discretion as to the live air time and date. Notwithstanding the foregoing, Licensor will use reasonable efforts to cause NBC to meaningfully consult with Univision as to the live air time and date of each Universe/USA Final Event and Teen Final Event.

      c.      <u>Location of the Final Events</u>. Each Universe/USA Final Event will be staged at a location designated by Licensor following meaningful consultation with Univision and NBC, subject to the ultimate discretion of Licensor's owners.

**2.**      <u>**Staging of the Final Events and Production of the Programs.**</u> Except as otherwise specifically mentioned in this Agreement, including without limitation Sections 4 and 7, Licensor will be responsible for all aspects and costs of staging, organizing, producing, promoting and otherwise operating each Final Event and producing and delivering to Univision each Program (as defined below).

      a.      <u>Staging of the Final Events</u>. In staging, organizing and producing each Final Event, Licensor will do each of the following:

      i.      Enter into all contracts with persons or entities rendering services, furnishing facilities, equipment or other material or granting rights in connection with the organization, promotion or staging of each Final Event, in the name of Licensor or its agents, including contracts or arrangements for contestants, hosts, judges, musical performers, the venue, security, permits and licenses;

      ii.      Make or cause to be made when due all payments of compensation or fees which may be required to be remitted to persons or entities rendering services or furnishing equipment, facilities, rights or other material in connection with the organization, staging or promotion of each Final Event (including venue fees, permits and regulatory fees, hosts, judges, venue security), and to otherwise fulfill all such obligations to such persons or entities, and make such deductions and withholdings from and payments on account of such compensation (including all payments of taxes) as are required or permitted to be deducted and withheld from or paid on account of compensation paid to such persons and entities under the provisions of applicable laws, regulations or guild and union agreements (provided that Univision will be solely responsible for payment of any elements added solely for Univision's broadcast of a Program and certain exploitations of the Program as set forth in Section 2.a.vii below and for music performing rights society payments which may be due in connection with Univision's exhibition of the Programs through any permitted Media, including any repeat exhibitions and exhibitions via permitted digital means of distribution);

      iii.      Obtain all necessary licenses and permits, as may be required by, and comply in every respect with, applicable federal, state, municipal and local law in connection with the organization, staging and promoting of each Final Event;

    iv.  Provide and set up a fully-equipped venue, including stage, with specifications normally used in Licensor's past Miss Universe, Miss USA and Miss Teen USA Final Events and pursuant to applicable local regulatory body statutes, rules or regulations;

    v.  Provide and maintain any and all insurance required by any governmental entity, governing body, labor organization or called for under any contractual or statutory obligation for all personnel that participate in each Final Event;

    vi.  Cause each Final Event to be organized, staged and promoted in manner such that it will be a first-class network-quality production (provided each Miss Teen Final Event will be suitable for webcast, consistent with prior Miss Teen Final Events);

    vii.  Obtain all rights from the contestants, hosts, judges, musicians and other third parties necessary for the production of audiovisual coverage of each Final Event and the exploitation by Univision of the Granted Rights (as defined below) free and clear of any payment (other than music performing rights society payments) or other obligation to such contestants, hosts, judges, musicians and other third parties, including without limitation obtaining and paying for all talent releases and third party clearances (e.g., footage and music) for the Minimum Clearances (as defined below). Notwithstanding the foregoing, Univision acknowledges that Licensor may be unable to secure the Minimum Clearances for judges, hosts and/or live performances by musical artists, in which case Licensor will so notify Univision and meaningfully consult with Univision as to the minimum rights to be obtained with respect to such judges, hosts and/or musical performances, as applicable. "Minimum Clearances" means clearances obtained for at least two (2) linear television runs of each Program and not less than twenty-four (24) days of availability on non-linear television and digital platforms. Notwithstanding anything herein to the contrary, Univision will be responsible for paying for any talent and/or other production elements added to each Program by Univision solely to the extent necessary for Univision's exploitation of such Program.

  b.  Production of the Programs. Licensor will produce and deliver to Univision (or cause to be produced and delivered) on a live and taped basis an original-language audiovisual special of each Final Event having a duration of two (2) or three (3) hours (each, a "Program" and collectively, the "Programs"). In connection therewith, as between the parties, except as specified otherwise herein, Licensor will be responsible for all costs of production, including production crew, producers, directors, hosts, judges, cameras and other production equipment and personnel. Licensor will produce and deliver the Programs in accordance with the first class quality production standards for United States broadcast networks' prime-time programs (with the exception of the Teen Final Event, which will be suitable for webcast, consistent with prior Miss Teen USA Final Events).

**3.**  **Granted Rights.** Licensor hereby grants to Univision the exclusive license to exhibit each Program (which shall be the audiovisual special for the Final Event for each associated Pageant), in whole or in part, in the United States and its territories and possessions, including Puerto Rico, and Canada (via Univision Canada only) ("Territory") solely in the Spanish language during the respective Final Event's License Period, via the Media (as defined below), live and on a delayed basis for an unlimited number of runs/plays (all of the foregoing in this Section 3, together with the rights set forth in Section 4 below and elsewhere in this Agreement are collectively referred to herein as the "Granted Rights"); provided that if Univision wishes to air additional runs or exploit any Program in a manner that requires clearances beyond the Minimum Clearances, Univision will be directly responsible for all additional clearances required to be obtained, including without limitation, obtaining and paying for all talent releases and third party clearances (e.g., footage and music licenses and any union fees), in connection with Univision's

further exploitation of such Program. "Media" means (i) all forms of television (including free over-the-air, cable and satellite, and video on demand); and (ii) all forms of digital distribution (including Internet and mobile streaming; MMS, SMS and other text/messaging systems; all forms of video on demand; and social network platforms). For the avoidance of doubt, Univision's rights are only exclusive vis-à-vis the Spanish language in the Territory and nothing herein shall impact or limit the rights that any other party, including NBC, maintains to broadcast the Final Events in English or any language other than Spanish in the Territory. The Granted Rights include, and are subject to, the following:

      a.      Univision will exhibit each Program live via the Univision or UniMas Networks or as otherwise mutually agreed by the parties at least one (1) time, provided that Univision will not be obligated to broadcast the Teen Final Event.

      b.      Univision will have the right to exhibit audiovisual clips of each Program via the Media on a stand-alone basis or as incorporated into Univision programming (for example, as part of a segment on a network or local Univision news program or within *Despierta America* or *El Gordo y la Flaca*). To the extent any additional clearances would otherwise be required for Univision's use of such audiovisual clips (i.e., non-editorial uses), Univision will work with Licensor to obtain such clearances, at no cost to Licensor. Audiovisual clips featuring contestants alone may be used by Univision as authorized herein and will not require additional clearances.

      c.      Subject to Section 2.a.vii., this Section 3 and Section 9, Licensor grants on a non-exclusive basis (except as otherwise expressly set forth herein) to Univision and its licensees the same rights Licensor obtains throughout the Term and Territory and in all media, to use the name, voice, likeness, biography and other personal identification of Licensor, the contestants, hosts, judges, and other persons connected with the Final Events solely for the purpose of promoting and exhibiting the Programs as authorized herein.

      d.      Further, Licensor grants to Univision a non-exclusive, perpetual, royalty-free license to use Licensor's authorized and each Final Event's authorized names, logos and marks in connection with Univision's exhibition and promotion of the Programs as authorized herein.

      e.      Holdback. During the Term, Licensor will not cause, authorize, license or affirmatively permit any exhibition, promotion, advertising, or other exploitation of the Programs, or any part or version thereof, in the Territory in the Spanish language via the Media.

**4.   Additional Rights.**

      a.      Univision will have the right to incorporate one (1) or more additional hosts, other talent and/or other production elements during each Final Event so as to create a Spanish-language version of each Program for exhibition. Univision will bear the costs, including salaries and travel expenses, of providing any such additional talent and other added production elements solely to the extent required for Univision's exploitation of such added production elements. Licensor will arrange for full access to each Final Event for Univision personnel and talent and will use best efforts to accommodate and execute production requests made by Univision. Notwithstanding the foregoing, any additional hosts, talent or other production elements incorporated by Univision to create such Spanish-language version of each Program must not unreasonably interfere with the production of Licensor's English-language Program or Final Event.

      b.      With respect to each Program, Univision will have the right (but not the obligation, unless otherwise stated below) to develop, produce and broadcast, at its sole cost, in any and all media, in

the Territory (and to grant such rights to Televisa S.A. de C.V. in the territory of Mexico) in the Spanish language throughout the respective License Period the following additional programs (the "Additional Univision Programs"):

        i.       a 30 to 60 minute pre-show for each Program (which Univision will be required to produce and exhibit immediately prior to each Miss Universe Program only) (each, a "Univision Pre-Show"); and

        ii.      a 30 to 60 minute post-show for each Program (which Univision will be required to produce and exhibit immediately following each Miss Universe Program only) (each, a "Univision Post-Show"); and/or

        iii.     up to five (5) daily (Monday through Friday) 1-hour shows to be exhibited, if at all, during the calendar week immediately leading up to each Program as and when determined by Univision; and/or

        iv.     a 30 to 60 minute special recapping the best moments of the five (5) daily shows described in Section 4.a.iii. above to be exhibited, if at all, as and when determined by Univision.

        c.      In addition, Univision will have the right, at its sole cost, to produce its own behind the-scenes and/or back stage content (including artist interviews) from the Final Events for inclusion in Univision programming, use on digital platforms and for other uses in connection with Univision's exhibition and promotion of the Programs ("Additional Univision Content"). Univision will reasonably consult with Licensor to coordinate the production of such Additional Univision Content to minimize disruption to each Final Event, including rehearsals for such Final Event.

        d.      For the avoidance of doubt, Univision will be responsible for paying for any talent and/or other production elements added by Univision to each Program (as set forth in Section 4.a above), as well as all music rights, talent and third-party clearances, guild payments, and any other rights due to third-parties as a result of making, exhibiting and otherwise exploiting the Additional Univision Programs or Additional Univision Content by Univision pursuant to this Section, provided that in the event any such guild payments are owed, Univision will pay such amounts to Licensor or its designee, who will in turn pay such amounts to the applicable guild. Additionally, Univision agrees that the Additional Univision Programs and Additional Univision Content will be produced in such a way so as to not disparage or intentionally cause harm to the Miss Universe Organization.

        e.      Licensor will use best efforts to provide Univision with complimentary tickets in an amount to be determined (but in no event less than the amount provided to the English language broadcaster) for each Final Event. Licensor will use best efforts to make such tickets available in a premium location. Univision will have the right to purchase additional tickets to each Final Event from Licensor at face value. Licensor will use good faith efforts to provide Univision with access to a first-class space in the venue for each Final Event suitable to conduct hospitality events before, during and after the Final Event for Univision's clients, affiliates, employees, and other guests at no cost, it being understood that Univision will be responsible for any catering and similar charges arising as a result of Univision's hospitality activities.

5.      **Term, License Period and Termination.**

        a.      <u>Term; License Period</u>. Subject to Section 15 below, the term of this Agreement will commence on the Effective Date and end upon expiration of the License Period for the last Program

licensed hereunder (the "Term"). The license period for each Program will commence on the date such Program is delivered to Univision and end one (1) year thereafter (the "License Period"). For example, if the first Final Event date is December 16, 2015, the License Period for the first Program will commence on December 16, 2015 and end on December 15, 2016.

      b.      Termination.

           i.      Either party may terminate this Agreement, without prejudice to any other legal or equitable rights to which it may be entitled, if the other party makes any assignment for the benefit of creditors or any arrangement pursuant to any bankruptcy law or files or has filed against it any petition under the bankruptcy or insolvency laws of any jurisdiction that is not set aside within thirty (30) calendar days after the filing date, or has or suffers a receiver or trustee to be appointed for its business or property, or is adjudicated bankrupt or insolvent.

           ii.      Licensor will have the right to terminate this Agreement if: (i) Univision fails to make a License Fee payment under Section 6 when due, and such payment default remains uncured fifteen (15) days after Univision's receipt of written notice from Licensor; or (ii) Univision otherwise breaches any material obligation under this Agreement, and such breach, if curable, remains uncured twenty (20) days after Univision receives written notice of such breach from Licensor.

           iii.      Univision will have the right to terminate this Agreement if: (i) so long as this Agreement is in force and effect, Licensor grants any of the Granted Rights to any third party; or (ii) Licensor otherwise breaches any material obligation under this Agreement and such breach, if curable, remains uncured twenty (20) days after Licensor receives written notice of such breach from Univision.

           iv.      Termination of this Agreement for any reason provided herein will not relieve the breaching party from its obligation to perform up to the effective date of such termination, including any indemnification obligations or any obligations that expressly survive the termination or expiration of this Agreement.

**6.**      **Fees and Payment.**

      a.      In full consideration of the Granted Rights and all representations, warranties and covenants made herein, with respect to each Program, Univision will pay to Licensor a license fee in the following amounts (the "License Fee").

           i.      For the 2015 Programs: Two Million Five Hundred Thousand US Dollars (US$2,500,000);

           ii.      For the 2016 Programs: Two Million Five Hundred Thousand US Dollars (US$2,500,000);

           iii.      For the 2017 Programs: Two Million Five Hundred Thousand US Dollars (US$2,500,000);

           iv.      For the 2018 Programs: Three Million US Dollars (US$3,000,000); and

           v.      For the 2019 Programs: Three Million US Dollars (US$3,000,000).

b.      Univision will pay the License Fee in equal quarterly installments on the last day of each calendar quarter upon receipt of an invoice from Licensor. The last quarterly installment shall be made within thirty (30) days of the airing of the last Program of any year, or by December 31 of that year, whichever is sooner. By way of example, if the 2016 Miss Universe Program airs on September 1, 2016, the final payment of the 2016 year shall be made by October 1, 2016.

7.      **Editing.** Univision will have the right to make changes, additions, edits, cuts, variations and modifications and otherwise edit each Program at its sole cost (i) to add Spanish-language production elements as provided in Section 4.a.; (ii) for legal or regulatory compliance; (iii) for standards and practices; (iv) to create commercial or promotional breaks; (v) to otherwise conform to time segment requirements; (vi) to down-convert to standard definition and/or up-convert to high definition; (vii) to make the Program suitable for digital distribution or (viii) for other customary purposes. Notwithstanding the foregoing, Univision shall not have the right to edit any Program in any way that removes Licensor's contractually obligated in-telecast sponsor promotions. Licensor will provide Univision with each script (which clearly identifies all in-telecast sponsorships) within a reasonable time prior to each Final Event in order to allow Univision to plan and produce any necessary Spanish language elements for the relevant Program.

8.      **Overspill and Geo-blocking.**

a.      The incidental overspill outside of the Territory of the broadcast signal of any Univision local affiliate will not be a breach of this Agreement.

b.      Univision will use then current industry-standard geo-blocking technology to prevent reception outside the Territory of its digital exhibitions of the Programs.

9.      **Marketing and Promotion.** Throughout the Term, Univision will have the right to promote its exhibition of the Programs in any and all media, in the Territory, using clips of the Final Events and Programs (including past Miss Universe, Miss USA and Miss Teen USA events and programs) ("Clips"), the Final Events' authorized marks and logos and/or the names, voices, likenesses, biographies and other personal identification of Licensor, the contestants, hosts, judges and other persons connected with the Final Events. In connection therewith, Licensor agrees to license to Univision, at no additional cost to Univision, archival footage and photographs owned, controlled and available for license by Licensor from prior Miss Universe, Miss USA and Miss Teen USA events and programs for use by Univision solely in connection with the telecast of the Programs, Additional Univision Programs and Additional Univision Content and in connection with the promotion thereof as authorized herein. Upon request, Licensor shall deliver to Univision certain marketing materials (e.g., Clips, marks and logos graphics, photographs, biographical information or interviews, etc.) for promotional use by Univision as authorized herein. Notwithstanding the foregoing, Univision acknowledges that Licensor may be unable, after good faith efforts, to secure the foregoing promotional rights from one or more hosts, judges and or musical talent appearing in a Program, in which event, upon request by Univision, Licensor will so notify Univision and will meaningfully consult with Univision as to the minimum rights to be obtained for promotional uses of such hosts, judges or musical talent. For the avoidance of doubt and notwithstanding anything to the contrary herein, Univision will ask Licensor whether such rights have been obtained prior to using them. Licensor will not be obligated to notify Univision as to the particulars of each talent agreement unless asked specifically to do so in each such case. In the event Univision utilizes any materials contemplated by this paragraph absent written authorization (email acceptable) from Licensor to do so, Univision shall be solely responsible for any costs and/or claims that result therefrom.

**10.    Program Feed and Delivery Materials.**

a.    Live Feed. Licensor, at its sole cost and expense, will provide Univision with a live feed of the Miss Universe and Miss USA Programs in high definition in accordance with the specifications set forth on Exhibit X by satellite transmission, fiber optics or such other means as mutually agreed upon by the parties for delivery of the Programs on a live basis at such places and times as Univision will notify Licensor ("Program Feed"). Such feed will be suitable for first-class exhibition by means of the Media. Licensor will be responsible for all costs and expenses in connection with the uplink of any satellite signal.

b.    Delivery Materials. Licensor will deliver to Univision (i) music cue sheets for each Program consistent with formats generally acceptable in the television and film industry, which itemize title, composer, publisher, length and type of use of all music used in the Program, within thirty (30) days following the respective Final Event date; and (ii) upon request by Univision, all third party clearances, licenses, releases and agreements necessary to authorize Univision to exploit the Programs in accordance with the Granted Rights ("Clearances"), except Clearances relating solely to material added to the Programs by Univision, if any.

c.    Technical Acceptance. In addition to any other rights Univision may have, in the event that any Program Feed is not, in Univision's reasonable judgment, of acceptable technical quality for exhibition, Licensor will promptly deliver a substitute Program Feed which meets Univision's technical requirements. Univision acknowledges that if the Program Feed is acceptable for the English language broadcaster (likely NBC), it will be deemed to be acceptable to Univision.

**11.    Advertising and Sponsorship Sales.** Univision will have the right to sell, and retain one hundred percent (100%) of all revenues generated from, Univision's exploitation of the Programs in the Spanish language in the Territory as contemplated herein, including all on-air or digital sponsorships or advertising relating to Univision's exhibitions of the Programs (or excerpts therefrom). Notwithstanding the foregoing or anything to the contrary stated in Section 7, Univision will not have the right to edit any Program in any way that removes Licensor's contractually obligated in-telecast Sponsor promotions. Licensor will notify Univision of any such existing sponsorship commitments within ten (10) days following execution of this Agreement. Subject to such existing sponsorships, if any, Licensor and Univision agree to work together to sell in-telecast sponsorships for each Program. Further, the parties will cooperate in good faith to identify joint selling possibilities and carry out joint selling efforts for on-site sponsors and advertisers, event activation and similar inventory.

**12.    Merchandising.** Licensor will negotiate in good faith with Univision to explore and identify potential merchandise and licensing opportunities relating to the Miss Universe, Miss USA and/or Miss Teen USA brands and/or the Programs and to share revenue therefrom on such terms to be mutually agreed by the parties in writing.

**13.    Exclusive Negotiation Period.** Provided that Licensor (or any affiliated entity of Licensor) continues to produce the Miss Universe pageant after 2019, then commencing on January 1, 2019, Licensor will negotiate exclusively and in good faith with Univision for a period extending through and including February 28, 2019 (the "Exclusive Negotiation Period") to negotiate a new license agreement for future Pageant Final Events for a to-be-determined number of years after the end of the Term. If Licensor and Univision are not able to reach an agreement within such Exclusive Negotiation Period, Licensor will be immediately free to negotiate with third parties for the license of the rights licensed herein.

14. **Ownership.**

    a. <u>Programs, Univision Pre-Shows and Univision Post-Shows</u>. As between the parties, Licensor will be the sole and exclusive owner, in perpetuity and throughout the universe, of all right, title and interest in the Programs, all Univision Pre-Shows and Univision Post-Shows in all media now known or hereafter devised, including all literary, dramatic or other material or elements contained in the Programs, including the Spanish-language version of each Program produced by Univision and the right to exploit all ancillary and subsidiary rights therein (subject to the Granted Rights):

        (i) For the avoidance of doubt, in the event Licensor or its designees elect to exploit any Spanish-language version of the Programs containing the elements created by Univision, Licensor will be solely responsible for all third party clearances and fees relating to such exploitation, provided that Univision will cooperate with Licensor in good faith to facilitate any additional clearances which relate solely to the production elements added by Univision.

        (ii) Provided that Televisa S.A. de C.V. ("Televisa") obtains a license from Licensor (or its designee) for the exploitation of the Programs in Mexico, Licensor agrees to permit Televisa, if requested by Televisa, to broadcast the Spanish-language version of the Program containing the elements added by Univision; provided and solely to the extent that Univision has obtained any additional clearances which may be required for Televisa's exploitation of the such elements on linear television in Mexico during the applicable License Period.

        (iii) Notwithstanding anything to the contrary herein, Licensor and its licensees (including without limitation NBC) may not distribute or exploit any Univision Pre-Show and/or Univision Post-Show at any time without the prior written consent of Univision, it being understood that the terms and conditions relating to such exploitation (if any) must be set forth in a separate written agreement signed by the parties. Any such agreement will include that the Univision Pre-Shows and Univision Post-Shows will be licensed to Televisa S.A. de C.V. for exploitation in Mexico during the License Period at no cost so long as Televisa has also obtained a license to broadcast the corresponding Program and further provided and solely to the extent that Univision has obtained any additional clearances which may be required for Televisa's exploitation of the applicable Univision Pre-Show and Univision Post-Show in Mexico during the applicable License Period. In the event Licensor elects not to distribute the Univision Pre-Show and Univision Post-Show and/or the parties are unable to reach agreement regarding the terms of such distribution, Univision retains the right to distribute the Univision Pre-Shows and Univision Post-Shows to Televisa in accordance with Section 4.b. hereof, provided that Televisa has also obtained a license to broadcast the corresponding Program in Mexico.

        (iv) Licensor agrees that it will not, and it will not authorize or permit any third party to, edit and/or exploit any Univision Pre-Shows, Univision Post-Shows or other production elements created by Univision in connection with this Agreement in a manner which disparages Univision, its talent or programming.

    b. <u>Other Additional Univision Programs</u>. Univision will be the sole and exclusive owner, in perpetuity and throughout the universe, of all right, title and interest in (i) all Additional Univision Programs other than the Univision Pre-Shows and Univision Post-Shows, and (ii) any Additional Univision Content (*i.e.*, behind the scenes and back stage content recorded and produced during each Final Event) in all media now known or hereafter devised, including all literary, dramatic or other material or elements contained in the Additional Univision Content, including the right to exploit all ancillary and subsidiary rights therein; provided, however, that Univision may only exploit such

Additional Univision Programs and Additional Univision Content during the License Period for the applicable Program, throughout the Territory and in Mexico (as authorized in Section 3 hereof), in the Media.

**15.   Condition Precedent.** Univision acknowledges that this Agreement is predicated upon Licensor securing and maintaining an English-language broadcaster for each Program; provided that in the event an acceptable English-language broadcast license is not secured with NBC for any period during the Term, Licensor and Univision will use good faith efforts to identify and secure such license with another acceptable English-language broadcaster, consistent with past agreements. If Licensor is unable to stage the Final Events in any year for any reason, including the inability to secure another English-language broadcaster pursuant to this Section 15, Univision's rights and obligations hereunder will be suspended until such time as Licensor resumes the staging of the Final Events.

**16.   Taxes.** Univision and Licensor will each be separately responsible for any local, federal or other taxes that arise out of their respective performance of this Agreement. Provided, however, that if Univision is required by any governmental authority to withhold and pay to such authority any portion of the License Fee herein agreed to, then any monies so paid will constitute partial satisfaction of Univision's obligation to Licensor hereunder and the License Fee will be reduced by any monies paid for such taxes; provided further that Univision will furnish Licensor with copies of official government receipts of each such payment.

**17.   Compliance with Laws; FCC; Pence Amendment.**

   a.   General. Both parties will comply with all applicable federal, state, municipal and local laws, rules, regulations and requirements, including, but not limited to immigration laws. Licensor will be responsible for obtaining any and all necessary governmental authorizations, licenses, approvals and permits that may be required in connection with the staging, organizing, production and exhibition of the Final Events and Programs as contemplated in this Agreement. Licensor will not do, or authorize or permit to be done, anything in violation of such laws, rules, regulations or requirements. Without limiting the generality of the foregoing, each party will (i) conform to the requirements of Section 507 of the Federal Communications Act concerning broadcast matter and disclosures required thereunder, insofar as that section applies to persons furnishing program material for television broadcasting; and (ii) verify that each employee of it and/or any subcontractor engaged by it that will perform work in connection with the Final Events and Programs is in compliance with all applicable immigration laws.

   b.   Anti-Corruption and Anti-Bribery Laws. Each party represents and warrants that neither it nor its subsidiaries, shareholders or partners, subcontractors, directors, officers, employees or agents (i) either directly or indirectly have made or will make an offer, payment, promise to pay, or authorized or will authorize the payment or giving of money or anything of value to any Public Official or family member or representative of such Public Official for the purpose of obtaining, directing or retaining business or securing an improper advantage for the other party; or (ii) have taken or will take any other action, or permitted or will permit or authorized or will authorize any other action to be taken, including any other action in connection with the conduct of their business and the transactions contemplated under this Agreement, which would cause Licensor or Univision to be in violation of any applicable Anti-Corruption or Anti-Bribery Laws. This includes all local laws in the countries in which business is conducted. "Anti-Corruption and Anti-Bribery Laws" mean the United States Foreign Corrupt Practices Act of 1977, as amended, and the anti-corruption and anti-bribery laws and regulations of any other applicable jurisdiction. "Public Official" means (i) any person who is employed full- or part-time by a government, or by regional subdivisions of governments, including states, provinces, districts, counties, cities, towns and villages or by independent agencies, state-owned businesses, state-controlled businesses

or public academic institutions; (ii) political parties, political party officials and candidates for political office; and (iii) employees of public international organizations, such as the African and Asian Development Banks, the European Union, the International Monetary Fund and the United Nations.

    c.  Licensor represents and warrants that no actual sexually explicit conduct or lascivious exhibition of genitalia, as described in 18 USC §§ 2256 et seq., will be recorded by the production company in connection with any Program, and, with respect to each Program, Licensor will send to Univision a Statement of Compliance to that effect within 7 days prior to the date such Program is recorded."

**18.** **Errors and Omissions Insurance.** Each of Licensor and Univision shall, at its expense, obtain and maintain, with an insurance company with a Best rating of "A-1X" or better, for the Term of the Agreement and for a period of 3 years thereafter, Media Errors and Omissions Insurance having limits of at least $1,000,000/$3,000,000 for each claim. Such policy shall be primary and not contributing coverage. . The foregoing insurance will not limit any party's liability to the other party with respect to this Agreement and the obligations hereunder. Certificates of insurance and certified copies of endorsements naming the Univision Entities and their directors, officers, employees and agents as additional insureds and loss payees and evidence of insurance as required above must be delivered at least ten (10) days after execution of this Agreement, together with a copy to Ronna Schmoker, Director, Risk Management & Radio Compliance Officer, Univision Communications Inc., 2323 Bryan Street, Suite 1900, Dallas, TX 75201. Each such certificate shall be signed by an authorized agent of the insurance company or insurance broker and shall provide that at least thirty (30) days' notice shall be given to Univision prior to any cancellation, non-renewal or modification. Neither party is under any obligation to request the delivery of such certificate(s) or endorsements. If either party fails to deliver said insurance certificate(s) or endorsements, such failure to demand delivery shall not be construed as a waiver of the other party's obligation to provide the insurance coverage specified herein. "Univision Entities" means Univision Communications Inc. and entities in which Univision Communications Inc. has an equity interest now existing or hereafter formed or acquired, including: The Univision Network Limited Partnership, Univision Television Group, Inc., Univision Interactive Media, Inc., UniMás Television Group, Inc., UniMás Network, Galavision, Inc., Univision Management Co., Univision of Puerto Rico, Inc., Univision Radio, Inc., Fusion Media Network, LLC, Made-for-Web, LLC, El Rey Holdings LLC, Uni-Rey Services, LLC, and Flama Media Network, LLC, and Univision Networks & Studios, Inc.

**19.** **Force Majeure.** Except as otherwise expressly provided in this Agreement, and except with respect to any failure to pay any sum due hereunder as a result of bankruptcy, insolvency or refusal or inability to pay, if either party will be delayed or hindered in whole or in part, or prevented from, the performance of any non-monetary covenant or obligation hereunder as a result of acts of God, fire or other casualty, intervention by civil or military authorities of government, insurrection or other civil commotion, labor disputes or work stoppage beyond the reasonable control of either party hereto ("Force Majeure Event"), then the performance of such covenant or obligation, will be excused for the period of such delay, hindrance or prevention and the period of the performance of such covenant or obligation will be extended by the number of days equivalent to the number of days of such delay, hindrance or prevention. If any such Force Majeure Event continues for a period of ninety (90) consecutive days during the Term, either party will have the right to terminate this Agreement upon written notice to the other party, in which case Licensor will promptly refund to Univision any License Fee that Univision has paid in advance for Granted Rights that it cannot exploit due to the Force Majeure Event.

**20.     Infringement of Rights.**

a.      Subject to Section 20.b below, promptly upon its discovery of any third party usage that infringes on the Granted Rights (an "Infringement" or upon its receipt of written or oral notice from Univision of an Infringement, (a) Licensor will seek immediate action, at its sole expense, to cease the Infringement, including, without limitation, any and all actions available at law or in equity, or (b) if Licensor has refused to undertake such prosecution, at Univision's sole election, Univision will have the right to assume the prosecution of such matter (with counsel of its choice) on behalf of, and for the account of, Licensor; provided, however, that Univision will not settle or compromise any Infringement without the consent of Licensor, which consent will not be unreasonably withheld or delayed. Univision and Licensor shall provide to each other whatever assistance the other may reasonably require with respect to such claims. Licensor similarly, will not settle or compromise any Infringement without the consent of Univision, which consent will not be unreasonably withheld or delayed.

b.      Promptly upon discovery by Univision of any third party usage that infringes on the Granted Rights which relates solely to any Additional Univision Programs and/or the Additional Univision Content or upon its receipt of written or oral notice from Licensor of any such infringement, (a) Univision will seek immediate action, at its sole expense, to cease the infringement, including, without limitation, any and all actions available at law or in equity, or (b) if Univision has refused to undertake such prosecution, at Licensor's sole election, Licensor will have the right to assume the prosecution of such matter (with counsel of its choice) on behalf of, and for the account of, Univision; provided, however, that Licensor will not settle or compromise any infringement relating to the Additional Univision Programs and/or Additional Univision Content without the consent of Univision, which consent will not be unreasonably withheld or delayed. Univision and Licensor shall provide to each other whatever assistance the other may reasonably require with respect to such claims. Univision similarly, will not settle or compromise any infringement relating to Additional Univision Programs or Additional Univision Content without the consent of Licensor, which consent will not be unreasonably withheld or delayed.

**21.     Indemnification.**

a.      <u>Licensor Indemnification</u>. Licensor agrees to indemnify Univision, the other Univision Entities, and the affiliates, successors, assigns, shareholders, officers, directors, employees and agents of each of the foregoing (collectively the "Univision Indemnitees") and hold harmless the Univision Indemnities from any and all claims, deficiencies, assessments, liabilities, losses, damages, expenses (including, without limitation, reasonable fees and expenses of counsel) (collectively "Losses") which any Univision Indemnitee may suffer by reason of or arising out of (a) the exhibition or other use of the Program and the material and performances contained therein in accordance with this Agreement, (b) Licensor's breach of, or non-compliance with, any covenant or provision herein contained or (c) the inaccuracy of any warranty or representation made by Licensor in this Agreement.

b.      <u>Univision Indemnification</u>. Univision agrees to indemnify Licensor and its shareholders, officers, directors, employees and agents (the "Licensor Indemnitees") and hold the Licensor Indemnitees harmless from any and all Losses incurred or suffered by any Licensor Indemnitee arising out of (a) any material added to the Program by Univision, (b) Univision's breach of, or non-compliance with, any covenant or provision herein contained, or (c) the inaccuracy of any warranty or representation made by Univision in this Agreement.

c.      <u>Indemnification Notice</u>. The following procedures will govern all claims for indemnification made under any provision of this Agreement. A written notice (an "Indemnification Notice") with respect to any claim for indemnification will be given by the party seeking indemnification

("Indemnitee") to the party from which indemnification is sought ("Indemnitor") within thirty (30) days of the discovery by Indemnitee of such claim, which Indemnification Notice will set forth the facts relating to such claim then known to Indemnitee (provided that failure to give such Indemnification Notice as aforesaid will not release Indemnitor from its indemnification obligations hereunder unless and only to the extent Indemnitor has been prejudiced thereby). Upon receiving an Indemnification Notice, Indemnitor will send a written response to Indemnitee stating whether it agrees with or rejects such claim in whole or in part. Failure to give such response within sixty (60) days after receipt of the Indemnification Notice will be conclusively deemed to constitute acknowledgment of the validity of such claim. If any such claim will arise by reason of any claim made by third parties, Indemnitor will have the right, upon written notice to Indemnitee within thirty (30) days after receipt of the Indemnification Notice, to assume the defense of the matter giving rise to the claim for indemnification through counsel of its selection reasonably acceptable to Indemnitee, at Indemnitor's expense, and Indemnitee will have the right, at its own expense, to employ counsel to represent it; provided, however, that if any action will include both Indemnitor and Indemnitee and there is a conflict of interest because of the availability of different or additional defenses to Indemnitee, Indemnitee will have the right to select separate counsel to participate in the defense of such action on its behalf, at Indemnitor's expense. Indemnitee will cooperate fully to make available to Indemnitor all pertinent information under Indemnitee's control as to the claim and will make appropriate personnel available for any discovery, trial or appeal. If Indemnitor does not elect to undertake the defense within thirty (30) days after receiving the Indemnification Notice, Indemnitee will have the right to assume the defense of such matter on behalf of, and for the account of, Indemnitor; provided, however, Indemnitee will not settle or compromise any claim without the consent of Indemnitor, which consent will not be unreasonably withheld. Indemnitor may settle any claim at any time at its expense, so long as such settlement includes as an unconditional term thereof the giving by the claimant of a release of Indemnitee from all liability with respect to such claim.

22. **Representations and Warranties.**

    a.    By Licensor. Licensor represents and warrants that:

        i.    It has full power and authority to enter into this Agreement and to perform the obligations imposed upon it hereunder, and the signatory below is authorized to sign on its behalf;

        ii.    It has the absolute right, power and authority to grant to Univision the Granted Rights;

        iii.    Licensor's grant of the Granted Rights to Univision in the Territory will be exclusive to the extent provided in this Agreement, and neither Licensor nor any person has made or will make any other agreement for the sale or license of the Granted Rights or any other agreement granting rights which would interfere with or be in conflict with the Granted Rights;

        iv.    With respect to the Programs and rights to be furnished or granted by Licensor in connection with this Agreement, Licensor has obtained or will obtain all necessary releases, licenses, permissions and clearances from, and has paid or will pay all amounts (other than music performing rights society payments or payments due solely to talent and/or for content inserted in the Programs by Univision) due to any third parties and will indemnify and hold Univision harmless therefrom;

        v.    The exhibition of the Final Events as embodied in the Programs as permitted in this Agreement will not knowingly: (i) violate or infringe upon any right of any third party (including any trademark, trade name, copyright, right of privacy or right of publicity); (ii) violate

or constitute the violation of the terms of any agreement that Licensor has or will enter into; or (iii) constitute a libel or slander of any person or entity; provided, however, that the representation of this Section 22.a.v. will not will not apply to material inserted in the Programs by Univision;

      vi.      There are no known claims, litigation or other proceedings pending, outstanding or threatened adversely affecting or that would or might in any way prejudice or reduce the value of the Rights or that would or might subject Univision to scandal, ridicule or adversely affect Univision's business interests;

      vii.      Univision will not be subject to any claim against Licensor for fees or commissions by any agent or representative of Licensor;

      viii.      It will promptly notify Univision of the existence of anything which would constitute a breach by Licensor of any representation, warranty covenant or agreement set forth in this Agreement;

      ix.      It will defend the Granted Rights against all persons and execute and deliver, or cause to be executed and delivered, such further instruments or documents, and to take such further actions, as will be necessary to do so;

      x.      It has entered into or will enter into valid and binding agreements with all persons rendering services in connection with the Final Events; that any and all services rendered by such persons, where necessary to grant the rights herein, will be furnished and rendered as employees-for-hire of Licensor, who will fulfill all responsibilities under applicable laws, including without limitation those arising under any workers' compensation laws, any other legal requirement or any applicable union or guild agreement; and that the results and proceeds of all said persons' services will be transferred to Licensor;

      xi.      It will comply with all applicable legal and governmental requirements and obtain all necessary property rights (whether relative to tangible or intangible property), permits, consents, releases, licenses, approvals and any other right necessary, required or appropriate for Univision to exercise the Granted Rights, free and clear of any and all liens, claims, charges, security interests, licenses, use agreements and any other encumbrance of any type whatsoever, and without additional payment to any other person or entity;

      xii.      There is not a known, and to the best of Licensor's knowledge, will not be, any lien, claim, charge, encumbrance, restriction, agreement, commitment or arrangement with any person or entity, or any obligation (past, present or future), or any breach of any contract, license or agreement that in any way can or will interfere with, impair, abrogate, or adversely or otherwise affect any of the Granted Rights, and there are not and will not be any payments of any kind (other than music performing rights society payments or payments due solely to talent and/or for content inserted in the Programs by Univision) required to be made by Univision in respect of or as a result of its exercise of the Granted Rights; and

      xiii.      This Agreement does not and will not conflict with or violate any rights of any third party.

    b.    <u>By Univision</u>. Univision represents and warrants that:

      i.      It has full power and authority to enter into this Agreement and to perform the obligations imposed upon it hereunder, and the signatory below is authorized to sign on its behalf;

      ii.      Any material inserted in the Programs by Univision will not knowingly (i) violate or infringe upon any right of any third party (including any trademark, trade name, copyright, right of privacy or right of publicity); or (ii) constitute a libel or slander of any person or entity;

      iii.      Licensor will not be subject to any claim against Univision for fees or commissions by any agent or representative of Univision;

      iv.      It will promptly notify Licensor of the existence of anything that would constitute a breach by Univision of any representation, warranty, covenant or agreement set forth in this Agreement; and

      v.      This Agreement does not and will not conflict with or violate any rights of any third party.

**23.** **Confidentiality.** Each party recognizes and acknowledges that it may receive certain confidential information and trade secrets concerning the business and affairs of the other party. Each party agrees not to disclose, unless required by law or legal order, any such information relating to the other party's personnel or operations, or any idea, project or other property being considered for use or used by the receiving party, or any of the terms or conditions of this Agreement, to any third party other than the receiving party's legal and financial advisors who need to know such information in order to render services on behalf of the receiving party and who agree to be bound by the provisions of this Section 23. If disclosing such information in response to a law or legal order, the receiving party will give prompt prior written notice to other party and make a reasonable effort to protect and/or limit such information from unnecessary disclosure or use. The provisions of this Section 23 will not apply to any information that, at the time of disclosure, (i) was available publicly and not disclosed in breach of this Agreement; (ii) was known to the receiving party without breach of an obligation of confidentiality; or (iii) was learned from a third party who was not under an obligation of confidentiality.

**24.** **Notices.** All notices under this Agreement must be in writing and will be deemed to have been duly given or made (a) on the date delivered in person, (b) on the date indicated on the return receipt if mailed postage prepaid, by certified or registered U.S. Mail, with return receipt requested, (c) on the date delivered, if sent by Federal Express, U.P.S. Next Day Air or other nationally recognized overnight courier service or overnight express U.S. Mail, with service charges or postage prepaid or (d) by facsimile or email with written confirmation of complete delivery. In each case (except for personal delivery) such notices, as well as all requests, demands, and other communications will be addressed as follows, unless otherwise indicated in a notice duly given hereunder:

To Licensor:

    Miss Universe L.P., LLLP
    1370 Avenue of the Americas
    New York, New York 10019
    Attn: Legal Department
    Facsimile: (646) 792-4755

To Univision:

    Univision Networks & Studios, Inc.
    9405 N.W. 41st Street
    Miami, Florida 33178
    Attn: President, Programming and Content
    Facsimile: (305) 471-4065

    With a copy to:

    Univision Communications Inc.
    5999 Center Drive
    Los Angeles, CA  90045
    Attn: SVP Associate General Counsel/General
    Facsimile: (310) 348-3679

**25.** **Miscellaneous.**

    a.    Severability. Any term or provision of this Agreement that is invalid or unenforceable in any jurisdiction will, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction; provided, however, that the aggregate of all such provisions found to be invalid or unenforceable does not materially affect the benefits and obligations of the parties of the Agreement taken as a whole.

    b.    Attorneys' Fees.  In the event of any action for the breach of this Agreement or misrepresentation by any party, the prevailing party will be entitled to seek reasonable costs and expenses incurred in connection with such action, including attorneys' and expert witness fees incurred in connection with such action.

    c.    Governing Law. This Agreement has been negotiated, prepared, executed and delivered in several jurisdictions, including the State of New York, United States of America.  Accordingly, in order to establish with certainty that this Agreement will be governed by one body of well-developed commercial law, the parties hereto have expressly agreed that this Agreement will be governed by, and construed in accordance with, the laws of the State of New York, applicable to contracts executed and fully to be performed therein, to the exclusion of any other applicable body of governing law including, without limitation, the United Nations Convention on Contracts for the International Sale of Goods.

    d.    Venue. Each of the parties irrevocably submits to the jurisdiction of any New York State or United States Federal court sitting in New York County, New York in any action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby, and irrevocably agrees that any such action or proceeding may be heard and determined only in such New York State or Federal court. Each of the parties irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of any such action or proceeding. Each of the parties consents to the service of copies of the summons and complaint and any other process which may be served in any such action or proceeding by delivering of a copy of such process to such party at its address specified in or pursuant to Section 24, by commercial courier. Each of the parties agrees that a final judgment in any such action or proceeding will be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

e.  Waiver of Jury Trial. All issues, matters, and disputes between the parties concerning this Agreement will be tried by a judge in a non-jury trial.

f.  Assignments; Successors and Assigns. Neither party may assign, transfer or sub-license in whole or in part any of its rights or obligations under this Agreement without the prior written consent of the other party and any such purported assignment, transfer or sub-license will be null and void, except that (i) Univision may, in whole or in part, assign its rights and/or delegate its obligations hereunder to any Univision Entity capable of performing Univision's obligations hereunder or to any person or entity to which all or substantially all of Univision's assets are pledged or transferred so long as such transferee has the necessary assets, including intangible assets, to satisfy all of Univision's broadcast, promotional and payment obligations hereunder; and (ii) Licensor may, in whole or in part, assign its rights and/or delegate its obligations hereunder to any person or entity to which all or substantially all of Licensor's assets are pledged or transferred so long as such transferee has the necessary assets, including intangible assets, to satisfy all of Licensor's production, promotional and payment obligations to carry out its obligations hereunder. Subject to the foregoing, this Agreement and all of the terms and provisions hereof will be binding upon, and inure to the benefit of, the parties and their respective successors and permitted assigns.

g.  No Partnership. Nothing herein contained will be deemed to constitute a partnership between or joint venture by the parties, nor will either party be deemed to be the agent of the other. Neither party will hold itself out contrary to the terms of this Section. Neither party will become liable for any representation, act or omission of the other contrary to the provisions hereof.

h.  No Waivers. A waiver by either party of any breach or default by the other party will not be construed as a waiver of any other breach or default whether or not similar and whether or not occurring before or after the subject breach. No delay on the part of any party in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any waiver on the part of any party of any such right, power or privilege, nor any single or partial exercise of any such right, power or privilege, preclude any further exercise thereof or the exercise of any other such right, power or privilege.

i.  Amendments. This Agreement may not be modified or amended except by an instrument or instruments in writing signed by the party against whom enforcement of any such modification or amendment is sought. Either party may, by an instrument in writing, waive compliance by the other party with any term or provision of this Agreement on the part of such other party to be performed.

j.  Interpretation. Each of the parties hereto acknowledges that it has been represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement. Accordingly, any rule of law or any legal decision that would require interpretation of any claimed ambiguities in this Agreement against the party that drafted it has no application and is expressly waived. The provisions of this Agreement will be interpreted in a reasonable manner to effect the intent of the parties.

k.  No Third Party Beneficiaries. This Agreement is not intended to be for the benefit of and will not be enforceable by any person or entity which is not a party hereto.

l.  Counterparts. This Agreement may be executed in counterparts, each of which will be an original instrument and all of which, when taken together, will constitute one and the same agreement.

m. **Survival.** All provisions of this Agreement which expressly or by necessary implication survive the expiration or earlier termination of the Term, including, without limitation, all representations, warranties, covenants and indemnities contained herein or made by each of the parties in connection herewith, will survive the execution, delivery, suspension and termination of this Agreement or any provision hereof.

n. **Complete Agreement.** This Agreement between Licensor and Univision dated as of even date herewith constitutes the entire agreement, and supersedes all prior agreements and understandings, oral or written, between the parties with respect to the subject matter hereof, including the Term Sheet.

IN WITNESS WHEREOF, the parties have executed this Agreement on the Effective Date.

"Licensor"

MISS UNIVERSE L.P., LLLP

By: /s/ Paula M. Shugart

Name: PAULA M. SHUGART

Title: PRESIDENT

"Univision"

UNIVISION NETWORKS & STUDIOS, INC.

By: /s/ M. Beau Ferrari

Name: M. Beau Ferrari

Title: EVP of Operations

## EXHIBIT X

Technical specifications to be mutually agreed upon by the parties, taking into account industry standards and Univision's customary requirements for similar programming.