# EXHIBIT X

1

FAKLMISC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    MISS UNIVERSE, L.P., LLLP, et
     al.,
4
                 Plaintiffs,
5
          v.                           15 CV 5377 (JGK)
6
     UNIVISION NETWORKS & STUDIOS,
7    INC., et al.,

8                 Defendants.

9    ------------------------------x
                                       New York, N.Y.
10                                     October 20, 2015
                                       4:07 p.m.
11
     Before:
12
                    HON. JOHN G. KOELTL,
13
                                       District Judge
14
                         APPEARANCES
15
     LAROCCA HORNIK ROSEN GREENBERG & BLAHA LLP
16         Attorneys for Plaintiffs
     BY:  LAWRENCE S. ROSEN
17         -and-
     BELKIN BURDEN WENIG & GOLDMAN, LLP
18   BY:  JEFFREY L. GOLDMAN

19   GIBSON, DUNN & CRUTCHER, LLP
           Attorneys for Defendants
20   BY:  MIGUEL A. ESTRADA
           AMER AHMED
21

22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

FAKLMISC

1              (Case called)

2              MR. ESTRADA:  My partner, Randy Mastro, asked me to

3     apologize for not being here.  He is on trial in judge front of

4     Judge Rakoff as we speak.

5              THE COURT:  No need to apologize.  I accept that.

6              I know people from Gibson Dunn.  I've met Mr. Estrada.

7     Nothing about that affects anything that I do in the case.

8              So, Mr. Goldman, Mr. Rosen, tell me about the case,

9     please.

10             MR. ROSEN:  Yes, your Honor.  This is a premotion

11    conference.  It's not clear to us the reasons why the defendant

12    will be seeking to dismiss the claims in the complaint.

13             Ostensibly, your Honor, our client, Miss Universe, was

14    in contract with Univision, the Spanish broadcaster, for the

15    Miss USA, Miss Universe, and other pageants.  Mr. Donald Trump,

16    a member of the limited partnership that comprised

17    Miss Universe, when he declared his candidacy for President,

18    made some remarks in the opinion of the defendants that they

19    found to be somewhat offensive and as a result, in our view,

20    made a business decision to terminate the contract.  In other

21    words, they chose not to affiliate with the Miss Universe

22    pageant and directly with Mr. Trump.

23             Your Honor, we certainly understand at a business

24    level why that decision might have been made by the powers that

25    be at Univision.  However, actions have consequences.  They

3

FAKLMISC

1    chose knowingly to breach the contract.  And it is our belief

2    that as a result of the termination of the agreement and their

3    decision not to air a Spanish language pageant, they violated

4    the terms of the contract and they're indebted to us for the

5    five-year term of the agreement at roughly 13 and a half

6    million dollars.

7         There are additional claims that are asserted in the

8    complaint, your Honor, multiple claims, all of which we believe

9    state a valid cause of action under New York law.  Apparently,

10   Univision disagrees, and that's why we're here today.

11        THE COURT:  What are the other claims?

12        MR. ROSEN:  Yes, your Honor.  Claims include breach of

13   the implied covenant of good faith and fair dealing, tortious

14   interference with contract, defamation claim, and a claim for

15   punitive damages and a claim for attorneys' fees.

16        THE COURT:  I'm sorry, defamation, what after

17   defamation?

18        MR. ROSEN:  I'm sorry, your Honor?

19        THE COURT:  You said a claim for defamation and then

20   before attorneys' fees.

21        MR. ROSEN:  Punitive damages.  Your Honor, we

22   recognize and we do intend to clarify that the punitive damages

23   claim as it's asserted and the attorneys' fees are damages

24   elements of the breach of contract claim.

25        THE COURT:  Right.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

FAKLMISC

```
 1              MR. ROSEN:  If your Honor may, on the defamation
 2   claim, in the aftermath of the decision by Univision to not
 3   proceed with the contract with Miss Universe, a senior level
 4   executive at Univision thought that it would be prudent, for
 5   reasons that we truly don't understand, to juxtapose a
 6   photograph of Mr. Trump next to Dylann Roof.  Dylann Roof, of
 7   course, is the person who went into a church in Charleston,
 8   South Carolina, and executed in cold blood nine members of that
 9   church.  That is a statement under New York law.  The statement
10   by Univision is that Mr. Trump is a murderer or that he incites
11   others to commit murder.
12              We recognize, of course, your Honor, that that
13   statement might be susceptible to multiple interpretations
14   depending on who the reviewer is.  That question ultimately, we
15   believe, is an issue of fact for a finder of fact.
16              THE COURT:  Mr. Trump is not an individual plaintiff,
17   is he, in the case?
18              MR. ROSEN:  Yes, your Honor.
19              THE COURT:  Oh, he is.  Yes, okay.  So that's a claim
20   only by Mr. Trump?
21              MR. ROSEN:  Correct.
22              THE COURT:  All right.  Let me listen to the defense
23   as to what the basis for the motion to dismiss is.
24              MR. ESTRADA:  Thank you, your Honor.
25              As Mr. Rosen stated, we are here on a premotion
```

FAKLMISC

1    conference.  We previously had agreed with Mr. Trump's counsel

2    that we would agree on a schedule for the motion that has been

3    so ordered by the Part I judge, but the grounds as I will state

4    them are as follows.

5            There is defamation claim which rests on a reposting

6    on Instagram by a Univision executive of a side-by-side photo

7    of a similarly coiffed Trump and Dylann Roof.  Mr. Trump, as

8    everybody knows, is running for President of the United States.

9    The complaint nowhere asserts what the actual defamatory

10   statement was.  And under New York law, there would be no

11   reasonable view under which anybody would take this as a

12   statement of fact that Mr. Trump is a murderer.  That itself

13   actually is not stated in the complaint.

14           At the very most, this is a parody of Mr. Trump's very

15   often parodied hairdo and of his political opinions, which as

16   somebody who is running for the President of the United States

17   is not at all unusual.

18           All of the statements that are or could be alleged to

19   be giving rise to defamation in this case are absolutely

20   protected by the New York and federal Constitution.  That is at

21   the high level of the motion to dismiss on the defamation

22   claim.

23           Of course, Mr. Trump also claims damages for

24   defamation per se.  There is no basis in the complaint for a

25   claim of defamation per se.  He fails to plead any damages.

6

FAKLMISC

1    His claim that this cost him $500 million in damages is on its

2    face exorbitant, inexplicable, and certainly unexplained.

3         There is a claim for tortious interference with a

4    contract or contracts which, again, are not identified in the

5    complaint.

6         As you may know and as is obvious from the complaint

7    itself, in the aftermath of Mr. Trump's announcement for

8    President on June 16, there were a number of companies,

9    including Univision and NBC, that severed commercial

10   relationships with Mr. Trump and his businesses.  Those

11   included Macy's, the City of New York, NASCAR, ESPN.  It's a

12   fairly high number.

13        Notwithstanding all of that, the allegation of the

14   complaint is that there was some unspecified lobbying on the

15   part of Univision to convince NBC to drop its commercial

16   understandings with Mr. Trump.  Just on the basic Iqbal/Twombly

17   level, there is an obvious possible explanation for the fact

18   NBC decided to cut its relationships with Mr. Trump, as did

19   many entities.  But, in any event, there are no allegations in

20   the complaint as to what exactly it is that anybody at

21   Univision did, other than to say that upon information and

22   belief, there was some lobbying of NBC to drop Mr. Trump.

23        Again, I have a perfect right to urge as a citizen

24   anybody and everybody in the world to stop doing business with

25   Mr. Trump.  That is again protected by the First Amendment.

7

FAKLMISC

1   There is no allegation of any improper means used or coercion

2   or anything that New York law would recognize as a basis for a

3   tortious interference claim.

4         There is, as was mentioned, two contract claims.  In

5   fact, one of them is completely redundant of the other.  It's a

6   pleading of the covenant of good faith in a completely

7   redundant basis.  But the basis in gross for the dismissal of

8   that claim is on the basis and on the face of the complaint,

9   Mr. Trump and Miss Universe -- if he in fact is authorized to

10  speak for Miss Universe, which is something I'm getting to

11  presently -- they disclose that the whole basis for the bargain

12  with Univision was to get the pageant to the Spanish speaking,

13  largely Mexican American audience of Univision.

14        When Donald Trump decided to start his presidential

15  bid by engaging in what was widely and reasonably perceived as

16  a racist rant against Mexican Americans, he himself destroyed

17  the value of the contract to Univision, frustrated its purpose,

18  and prevented the Univision network from being able to have a

19  first-class broadcast as was guaranteed in the contract.

20        There is a final claim for fees which, of course,

21  would fall with any claim under the contract.  I should

22  clarify --

23        THE COURT:  I'm sorry.  There are two contract claims.

24  One is breach of contract.  The defendant didn't abide by the

25  terms of the contract.  The second is breach of the covenant of

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

FAKLMISC

1    good faith and fair dealing.  And the argument is what?

2              MR. ESTRADA:  The argument on that is that under the

3    law, if the basis for the breach of the covenant of good faith

4    and fair dealing is identical, as it is in this case, for the

5    breach of the written contract, then that is merely an

6    additional argument for the claimed breach of contract but not

7    in itself a claim.

8              THE COURT:  Okay.  And the defense to the breach of

9    contract is?

10             MR. ESTRADA:  Is frustration of purpose that appears

11   on the face of the complaint.

12             THE COURT:  I'm sorry?

13             MR. ESTRADA:  Frustration of purpose that appears on

14   the face of the complaint.

15             THE COURT:  Can I really decide a motion to dismiss

16   that the straight breach of contract claim should be dismissed

17   on the basis of alleged frustration of purpose?

18             MR. ESTRADA:  I would say yes, although it is

19   relatively rare, I recognize, your Honor.  I will point out

20   that it is a very unusual case in which the plaintiff is

21   somebody who's subject to many judicially noticeable facts and

22   who himself has come into court pleading the contract terms and

23   the basis on which the contract was entered, which simply as a

24   matter of common sense established the defense of frustration

25   of purpose because the whole point of the contract, as admitted

9

FAKLMISC

1    in the complaint, is to reach the largely Mexican American

2    audience that Univision has and the largely Hispanic audience

3    and to have a broadcast that will be tailored to the Spanish

4    speaking audience, none of whom would want to have anything to

5    do with Mr. Trump.

6         THE COURT:  And I can decide frustration of purpose as

7    a matter of law based just on the pleading in the complaint?

8         MR. ESTRADA:  And on judicially noticeable facts.

9    That would be our submission here.  Obviously, we're not here

10   to argue the motion on its merits.  But I believe that with

11   respect to the very allegations of the complaint and the nature

12   of Mr. Trump's current bid, the nature of the damage and of the

13   commercial relationship is fairly evident and this is a case in

14   which those matters are appropriate for a motion.

15        Believe me, I don't usually go into court and move to

16   dismiss on the basis of a defense, but it is also rare that

17   somebody comes into court and essentially pleads it for me.

18        THE COURT:  You say relatively rare.  Are there any

19   similar cases where a breach of contract claim has been

20   dismissed on such a basis?

21        MR. ESTRADA:  I don't know that I can readily come up

22   with one at the moment.  But we will have a briefing for you in

23   the motion, if you allow it, your Honor.

24        THE COURT:  I can't prevent it, actually.  Okay.

25        MR. ESTRADA:  But there is a final overarching issue

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

FAKLMISC

1   that also deals with this question.  The contract claim, if

2   there is one, is one that belongs to Miss Universe.  As the

3   complaint itself alleges, at the time of the filing of the

4   complaint, Mr. Trump was a minority partner in the joint

5   venture with NBC being the majority partner.  There is a very

6   inadequate and completely conclusory allegation that demand on

7   Miss Universe would have been futile.  So as to all the claims

8   but defamation, there's a question of authority.

9        I will say if you leave the face of the complaint, it

10   has been widely publicized that since the filing of the

11   complaint, Mr. Trump and NBC have resolved their differences --

12   this has been in the press -- and that as a result of the

13   resolution of those differences and the settlement, Mr. Trump

14   acquired the pageant and then sold it to somebody else.

15        And since we're here and since lack of authority would

16   actually extend to all claims but defamation, maybe this would

17   be a good opportunity for Mr. Rosen to advise the Court what

18   the basis of authority is on all counts but defamation.

19        THE COURT:  Okay.  All counts but the defamation?

20        MR. ESTRADA:  Yes, because if there's no authority to

21   sue on behalf of Miss Universe, even putting aside whether we

22   have independent grounds on each claim, as we believe we do,

23   the question of authority would dispose of all claims but

24   defamation.  And the Constitution, common sense, and basic law

25   would deal with the defamation question itself.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

FAKLMISC

1            THE COURT:  Okay.  Thank you.

2            Mr. Rosen.

3            MR. ROSEN:  Yes, your Honor.  To that point we do

4    acknowledge that the complaint needs to be cleaned up to

5    reflect the consolidation ostensibly of the parties.  There's

6    no longer a need for a derivative claim.  There has been a

7    financial transaction that has taken place and, clearly,

8    Miss Universe L.P., the named plaintiff, has full authority to

9    bring this action.  And we will in very short order, your

10   Honor, be amending the complaint to reflect that.

11           THE COURT:  Shouldn't you at least ask for permission?

12           MR. ROSEN:  Your Honor, yes.  I perhaps mistakenly

13   believed that we were within our as of right period.

14           THE COURT:  You may well be.  You may well be.  But I

15   was going to give you the opportunity to amend in any event

16   because it makes no sense to have a motion to dismiss which

17   would be greeted by an application to deny the motion to

18   dismiss, or if I was inclined to grant the motion to dismiss,

19   to allow the plaintiff the opportunity to file an amended

20   complaint.

21           So you've heard the grounds that the defendant wants

22   to raise in response to the current complaint.  Yes, I mean by

23   all means, you can file an amended complaint.  And if the

24   defendants then file a motion to dismiss on the grounds that

25   they said that they intend to move to dismiss, I take it you

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

FAKLMISC

1   will not then ask for leave to file yet another amended

2   complaint so that I write one opinion on the first motion to

3   dismiss, you then file an amended complaint, and I have another

4   motion to dismiss, right?  You'll give me your best amended

5   complaint, right?

6           MR. ROSEN:  Yes, your Honor.  Absent any newly

7   discovered information, that's absolutely correct.

8           THE COURT:  Okay.  Let me go over some of the issues

9   that were raised on the purported motion to dismiss and from

10  what you've already said.

11          In your amended complaint you will explain what the

12  authority is to bring the complaint, right?

13          MR. ROSEN:  Yes.

14          THE COURT:  And you're going to drop any independent

15  claim for punitive damages or attorneys' fees.  That's just

16  part of your ad damnum, right?

17          MR. ROSEN:  Yes, your Honor.

18          THE COURT:  Now, you've heard a detailed explanation

19  as to why you have no defamation claim.  And I take it to the

20  extent that you think you have a defamation claim, you will

21  plead as much as possible as to why you have a defamation

22  claim.  Yes?

23          MR. GOLDMAN:  We will, your Honor.  And I just want to

24  say to that point, if one of the bases for the lack of a

25  defamation claim is the argument that the posting to a mass

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

FAKLMISC

1    murderer was solely because of hair style and having nothing to

2    do with mass murder, I don't think we need to address that.

3    But with respect to defamation per se, we will certainly be

4    addressing that.

5           THE COURT:  All right.

6           With respect to tortious interference with contract,

7    you're talking about the defendants having tortiously

8    interfered with other contracts other than the contract which

9    is being claimed as breach of contract, right?

10          MR. ROSEN:  That's correct, your Honor.

11          THE COURT:  And the defendants say that claim doesn't

12   even survive under Iqbal and Twombly because there are no

13   specific allegations as to what the defendants did to interfere

14   with other specific contracts and that they used improper means

15   or otherwise improperly interfered with the other contracts.

16          And you say?

17          MR. ROSEN:  Your Honor, Mr. Randy Falco, the president

18   of Univision at the time, previously worked for NBC.  And the

19   timing of NBC's decision to not go forward with the pageant is

20   somewhat suspect given that just a day or two earlier they had

21   made --

22          THE COURT:  But the tortious interference with

23   contract is not under the Univision contract.

24          MR. ROSEN:  No, it's on the NBC arrangement with

25   Trump.  And, your Honor, there the issue is that Mr. Trump, the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

FAKLMISC

1    individual, his views on immigration were well-known before

2    this contract was entered into with Univision.  It should not

3    have come as any surprise.  It became an issue for Univision,

4    of course, when he announced he's running for President.

5            NBC's original response to this was, look, Mr. Trump

6    has his personal views and we don't agree with them, those are

7    his views, and it is what it is.  And then, lo and behold, we

8    believe, Mr. Falco used some of his connections and some of his

9    relationships that had developed, not to mention the fact that

10   he had access to a demographic that was very important to NBC,

11   and we believe there was some coercion and we believe that

12   there was some suggestions that NBC not do business with Trump.

13           I believe that we have enough, your Honor, to show

14   malice, which is an element of a tortious interference with

15   contract claim, and also economic duress would satisfy at least

16   for pleading purposes.

17           THE COURT:  The argument on the other side is that

18   there are no factual allegations to show that Univision

19   actually used its influence it had with NBC to get NBC to act

20   in any way.  Now, you say, well, if it did, then it was

21   malicious and you can satisfy the other elements for the tort.

22   But the argument on the other side is there are insufficient

23   factual allegations to support a plausible conclusion that in

24   fact Univision was doing that.

25           And so there certainly is at least a question why you

FAKLMISC

1    want to delay the case on breach of contract by adding other

2    claims which invite a motion to dismiss.  Maybe the motion to

3    dismiss would come in any event, but I just raise it with you.

4    All I have is what the parties have told me in connection with

5    this conference, although I haven't heard the factual basis for

6    the belief that Univision was doing something vis-a-vis NBC,

7    which certainly has a substantial presence, that it doesn't

8    need Univision to tell it what to do, so.

9         MR. ROSEN:  Your Honor, we are at a bit of a

10   disadvantage in that we were not privy to any of the

11   conversations that we believe took place between Mr. Falco and

12   senior executives at Univision.  Now, hypothetically, if there

13   were emails out there or phone calls that were made or

14   discussions, that would be evidence supporting our claim.  We

15   just find it very suspect, the timing.  NBC took a position and

16   then quickly reversed that position.

17        THE COURT:  Well, you're going to file an amended

18   complaint.  One would suspect that the standard for pleading a

19   plausible claim is we find it suspicious.  So I don't decide

20   anything until it's briefed on the facts and the law.  You're

21   going to file an amended complaint.  There will surely be a

22   motion to dismiss.  The more claims, the longer the motion to

23   dismiss, the longer it takes to decide.

24        There is then the issue of whether there's an

25   independent breach of the implied covenant of good faith and

FAKLMISC

1    fair dealing as an independent claim, which is something you
2    should look at because there are lots of cases which dismiss
3    such a claim at the outset as duplicative of the claim of
4    breach of contract.  There certainly is a breach of implied
5    covenant of good faith and fair dealing, but there are many
6    cases which say if there's a breach of contract claim, the
7    breach of implied covenant of good faith and fair dealing is
8    duplicative because you have to interpret the contract with the
9    covenant of good faith and fair dealing.  Okay.
10        MR. ESTRADA:  Your Honor, may I, solely in aid of the
11   Court's purpose of just going through this exercise once and in
12   partial response to statements by counsel on the defamation, I
13   just want to make clear that it is not our position solely that
14   a reasonable person would view this as a parody of Mr. Trump's
15   hair.  It is that there is no identifiable statement of fact,
16   that it is at most an opinion on his hair, his views, or a
17   parody of the man, it doesn't really matter, and the First
18   Amendment and the New York constitution make it fully
19   protected.
20        THE COURT:  Was there any printing that went along
21   with the juxtaposition of the two photos?
22        MR. ESTRADA:  There is a text on top of them that says
23   "no comment."
24        And solely on the point of Iqbal, again, I will point
25   out that I don't need to gild the lily on the plausibility.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

FAKLMISC

1    And the whole point of Twombly and Iqbal was to preclude the

2    fishing expedition of "we don't know but we suspect" and to cut

3    it off at the motion to dismiss.

4         There is another issue that is part of that claim that

5    should be brought up now and it is that they have settled with

6    NBC according to public reports.  If they don't know now, I

7    don't know what else they're going to find out.

8         THE COURT:  I doubt that I could take that into

9    account on a motion to dismiss.  I mean whether they settled

10   with NBC, what the terms of that settlement were, all of that

11   would seem to go far beyond the complaint.

12        MR. ESTRADA:  Well, we'll see what the complaint if

13   refiled says.  I was mentioning it in aid of a further point

14   which is that on question of law, if that is either in the

15   complaint or judicially noticeable, that would bear on whether

16   the complaint apart from the factual failings establishes a

17   claim as a matter of law because they settled the claim that

18   allegedly gives source to the damage.

19        THE COURT:  Okay.

20        MR. GOLDMAN:  Your Honor, if I may, we will certainly

21   with the Court's guidance amend the complaint with the idea

22   being we're not trying to engage in unnecessary motion

23   practice.  I would hope that defendants' counsel listening to

24   your Honor with respect to frustration of purpose because in

25   New York, if what is said is foreseeable, it's a complete

18

FAKLMISC

1    defense to that.  And Mr. Trump many times well before the

2    contract was signed with Univision had an opinion that was

3    somewhat similar if not identical to his opinion that he

4    enunciated when he announced for his presidency.  There was no

5    morals clause.  They were free not to enter into that

6    agreement.

7           So when counsel says that your Honor could take

8    "judicially noticeable facts" with respect to Mr. Trump, it's

9    those judicially noticeable facts that make the frustration of

10   purpose inapplicable because it was completely reasonable for

11   Univision to have suspected that and hopefully that won't be

12   one aspect of the motion.

13          THE COURT:  Okay.  When do you want to file your

14   amended complaint?

15          MR. ROSEN:  Within two weeks, your Honor, if that

16   would be acceptable.

17          THE COURT:  That's fine.  Sure.

18          So amended complaint November 6.

19          Time to answer or move with respect to the amended

20   complaint is?

21          MR. ESTRADA:  We would ask for 20 days, your Honor.

22          THE COURT:  That's fine.

23          MR. ESTRADA:  We previously had a stip, and with

24   respect to their response to our motion, we're happy to stand

25   by the stipulation and give them 45 days as previously agreed.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

FAKLMISC

```
 1              THE COURT:  Whoa.

 2              MR. ESTRADA:  If they need it.

 3              THE COURT:  So 45 days to respond.  No, they don't

 4    need that.

 5              So the amended complaint November 6.

 6              The answer or move by November 30 --

 7              MR. ESTRADA:  Excuse me, your Honor.

 8              THE COURT:  -- which is a Monday.  It's the Monday

 9    after Thanksgiving.  The 26th is Thanksgiving.

10              And response to any motion to dismiss?

11              MR. ESTRADA:  Your Honor, if I could have a plea to

12    reconsider at the urging plea of somebody who needs to be

13    involved and won't be available for Thanksgiving, if we could

14    have an extra week to take the holiday into account.

15              THE COURT:  Not a problem.

16              So answer or move by December 4.

17              Response to any motion to dismiss?

18              MR. GOLDMAN:  Your Honor, we had stipulated and I

19    believe your Honor so ordered I think it was 45 days.

20              MR. ESTRADA:  Forty-five days.

21              MR. GOLDMAN:  We don't need 45 days.  We can do it in

22    30 days, your Honor.

23              MR. ESTRADA:  But we stand by our bargains on that,

24    your Honor.

25              THE COURT:  Sure.
```

20

FAKLMISC

1          Response to any motion to dismiss, January 8, 2016.

2          And then the reply?

3          MR. ESTRADA:  If we could ask for two weeks, that

4     should be enough, your Honor.

5          THE COURT:  January 22.

6          Okay.  I'll enter an order which puts in that

7     schedule.

8          Anything else?

9          MR. ESTRADA:  Nothing for the defense, your Honor.

10          MR. ROSEN:  Nothing for the plaintiff, your Honor.

11     Thank you.

12          THE COURT:  Good to see you all.

13                         o0o

14

15

16

17

18

19

20

21

22

23

24

25