UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

|  |  |  |
|---|---|---|
| MISS UNIVERSE L.P., LLLP and DONALD J. TRUMP, | : | Case No. 15 CV 5377 (JGK)(JLC) |
|  | : |  |
| Plaintiffs, | : |  |
|  | : |  |
| - against - | : |  |
|  | : |  |
| UNIVISION NETWORKS & STUDIOS, INC. and | : |  |
| ALBERTO CIURANA, individually, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………...…………...iii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 2

    A.     The Parties Execute the License Agreement ............................................. 2

    B.     Defendants Wrongfully Terminate the Agreement, Defame Mr. Trump and
           Intentionally Interfere with Plaintiffs' Business Relationships.................................. 3

ARGUMENT……………………………………………………………......................…6

    I.     LEGAL STANDARD ................................................................................. 6

    II.    DEFENDANTS' ATTEMPT TO DISMISS PLAINTIFFS'
          BREACH OF CONTRACT CLAIM (FIRST CLAIM
          FOR RELIEF) IS MERITLESS AND HIGHLY PREMATURE ............................. 7

          A.     The Alleged Conduct at Issue was Foreseeable................................ 7

          B.     Univision Never Insisted on Contractual Safeguards in the Agreement ..........9

          C.     Defendants' Attempt to Argue Frustration of Purpose is Premature ..............11

          D.     Defendants' Additional Grounds for Dismissal are Without Merit ................12

    III.   PLAINTIFFS HAVE STATED A CLAIM FOR
          INTENTIONAL INTERFERENCE WITH
          CONTRACTUAL RELATIONSHIP (SECOND CLAIM FOR RELIEF) ................13

    IV.   MR. TRUMP HAS STATED A CLAIM FOR
          DEFAMATION *PER SE* (THIRD CLAIM FOR RELIEF) ...................................... 17

CONCLUSION……………………………………………………………………………..24

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Ace Arts, LLC v. Sony/ATV Music Publ'g. LLC.*
56 F. Supp. 3d 436 (S.D.N.Y. 2014).............................................................................15

*Armstrong v. Simon & Schuster, Inc.,*
85 N.Y.2d 373 (1995) ................................................................................... 19-20

*Aronson v. Wiersma,*
65 N.Y.2d 592 (1985)………………………………………………………..…….17

*ATSI Communications, Inc. v. Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007)…………....……………………………………………6

*Balance Point Divorce Funding, LLC v. Scrantom,*
978 F. Supp. 2d 341 (S.D.N.Y. 2013)……………………..……………………...11-12

*Bank of America Nat'l Trust and Savings Assn.,*
740 F. Supp. 260 (S.D.N.Y. 1990)………..……………………………………...10, 11

*Bell Atlantic v. Twombly,*
550 U.S 544, 556 (2007)…………………………………………………………..6

*Burke v. Steinmann,*
No. 03 Civ. 1390 (GEL), 2004 WL 1117891 (S.D.N.Y. May 18, 2004)……......……........8, 10

*Carney v. Memorial Hosp. and Nursing Home of Greene Cnty.,*
64 N.Y.2d 770 (1985)…………………………………………………………....20

*Celle v. Filipino Reporter Enterprises Inc.,*
209 F.3d 163 (2d Cir. 2000)…………………………………………………...17

*Chau v. Lewis,*
771 F.3d 128 (2d Cir. 2014)……..………………………………………………21

*Cohen v. Google, Inc.,*
25 Misc. 3d 945 (Sup. Ct. N.Y. Cnty. 2009)…………………………………………20

*Cortec Industries, Inc. v. Sum Holding L.P.,*
949 F.2d 42 (2d Cir. 1991)……………………………………..…………………7

*Cruz v. Marchetto,*
No. 11 Civ. 8378, 2012 WL 4513484 (S.D.N.Y. Oct. 1, 2012)……..……………………......23

iii

*Davis v. City of New York*,
226 A.D.2d 271, 641 N.Y.S.2d 275 (1st Dep't 1996)…………………………….…………...23

*Fischer v. Post-Standard Co.*,
14 A.D.2d 130 (3d Dep't 1961)…………….…………………..………………………20-21

*Gallo v. Montauk Video, Inc.*,
178 Misc. 2d 1069, 684 N.Y.S.2d 817
1999 N.Y. Slip Op. 99023 (App. Term, 2d Dep't 1998)……………………………...…….19

*Gander Mountain Co v. Islip U-Slip LLC*,
923 F. Supp. 2d 351 (N.D.N.Y. 2013)……………………………..………………….7, 9-10, 12

*Garrison v. Toshiba Bus. Sols. (USA)*, Inc.,
907 F. Supp. 2d 301 (E.D.N.Y. 2012)………………………………………………………...23

*Germain v. M & T Bank Corp.*,
-- F. Supp. 3d --, 2015 WL 3825198 (S.D.N.Y. Jun 19, 2015)……………….........17, 21, 22

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974)……………………………………………………………………19-20

*Girden v. Sandals Int'l*,
262 F.3d 195 (2d Cir. 2001)……………………………………………………….……..23

*Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*,
50 N.Y.2d 183 (1980)………………………………………………………………………15

*Gui Ying Shi v. McDonald's Corp.*,
110 A.D.3d 678, 972 N.Y.S.2d 307 (2d Dep't 2013)…………………………………………23

*Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*,
128 F.3d 59 (2d Cir. 1997)…………………………...………………………………...…….6

*Highland Mgmt. LP v. Schneider*,
198 Fed.Appx. 41 (2d Cir.2006)………………….…………………………………...16

*Hill v. City of New York*,
No. 05 Civ. 9473 (RMB)(JCF), 2006 WL 2347739 (S.D.N.Y. Aug. 14, 2006)………...……….22

*Hooks v. Forman, Holt, Eliades & Ravin, LLC*,
717 F.3d 282 (2d Cir. 2013)…………………………………………………………………….6

*Housman v. Media Technology Corp. Ltd.*,
No. 95 Civ. 00639 (JSM), 1996 WL 66121 (S.D.N.Y. Feb. 14, 1996)…………….………*passim*

iv

*Idir, Inc. v. U.S. Postal Service*
No. 81 Civ. 2507 (PNL), 1984 WL 543 (S.D.N.Y. June 25, 1984)………………………………...10

*IMG Fragrance Brands, LLC v. Houbigant, Inc.,*
679 F. Supp. 2d 395 (S.D.N.Y.2009)…………………………………………………...…….13

*Jewell v. NYP Holdings, Inc.,*
23 F. Supp. 2d 348 (S.D.N.Y. 1998)………………………………………………………20, 21-22

*Joyce v. Thompson Wigdor & Gilly, LLP.,*
No. 06 Civ 15315 (RLC) GWG, 2008 WL 2329227 (S.D.N.Y. June 3, 2008)……………….....17

*Kelly–Brown v. Winfrey,*
717 F.3d 295 (2d Cir. 2013)………………………………………………………………….....12

*Kirch v. Liberty Media Corp.,*
449 F.3d 388 (2d Cir. 2006)……………………………………………………………...………21

*Lama Holding Co. v. Smith Barney Inc.*
88 N.Y.2d 413 (1996)………………………………………………………………………….13

*Leadsinger, Inc. v. Cole*
No. 05 Civ. 5606 (HBP), 2006 WL 2320544 (S.D.N.Y. Aug. 10, 2006)……………………....15-16

*Lenel Sys. Int'l, Inc. v. Smith,*
34 A.D.3d 1284, 824 N.Y.S.2d 553 (4th Dep't 2006)…………………………………………...13

*Lopez v. Jet Blue Airways,*
662 F.3d 593 (2d Cir. 2011)……………………………………………………………….....6

*Mendez v. Bank of America Home Loans Servicing, LP,*
840 F. Supp. 2d 639 (E.D.N.Y. 2012)…………………………………………………………11, 13

*Orange County Choppers, Inc. v. Olaes Enters.,*
497 F. Supp. 2d 541 (S.D.N.Y. 2007)…………………………………………………...........15

*Profile Publ'g & Mgmt. Corp. APS v. Musicmaker.com., Inc.,*
242 F. Supp. 2d 363 (S.D.N.Y. 2003)…………………………………………………………11, 13

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC,*
813 F. Supp. 2d 489 (S.D.N.Y. 2011)…………………………………………………...........17

*Pursuit Inv. Management LLC v. Alpha Beta Capital Partners, L.P.,*
127 A.D.3d 580, 8 N.Y.S.3d 283 (1st Dep't 2015)……………………………...………16

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
53 F. Supp. 3d 705   (S.D.N.Y. 2014)………………………………………………..………21

*Schermerhorn v. Rosenberg*,
73 A.D.2d 276 (2d Dep't 1980)………………………………………………………………20

*Silfsdorf v. Levine*,
59 N.Y.2d 8 (1983)……………………………………………………………...………...20, 22

*Steinhilber v. Alphonse*,
68 N.Y.2d 283 (1986)………………………………………………………………….......21-22

*Stepanov v. Dow Jones & Co.*,
120 A.D.3d 28 (1st Dep't 2014)……………………………………………..……………..20

*St. John's Univ., N.Y. v. Bolton*,
757 F. Supp. 2d 144 (E.D.N.Y. 2010)………………………………………..……………14

*Stern v. Cosby*,
645 F. Supp. 2d 258 (S.D.N.Y. 2009)……………………………………………………...17

*Syracuse Orthopedic Specialists, P.C. v. Hootnick*,
42 A.D.3d 890, 839 N.Y.S.2d 897 (4th Dep't 2007)…………………………………….....13

*Tecnoclima, S.p.A. v. PJC Group of New York, Inc.*,
No. 89 Civ. 4437 (CSH), 1991 WL 33357 (S.D.N.Y. Feb. 27, 1991)…………………8, 9, 10, 12

*Tycoons Worldwide Group (Thailand) Pub. v. JBL Supply, Inc.*,
721 F. Supp. 2d 194 (S.D.N.Y. 2010)……………………………………………...……7, 8, 10

*U.S. v. Gen Douglas MacArthur Senior Vill.*,
508 F.2d 377 (2d Cir. 1974)……………….…………..……………………………………..7

*Warner v. Kaplan*,
71 A.D.3d 1 (1st Dep't 2009)……………………………………………………….........7

*Washington Ave. Assocs., Inc. v. Euclid Equip., Inc.*,
229 A.D.2d 486, 645 N.Y.S.2d 511 (2d Dep't 1996)……………………………………16

**Rules**                                                                    **Page**

Fed R. Civ. P. 12(b)(6)………………………………………………………………6, 11

Plaintiffs Miss Universe L.P., LLLP ("MUO") and Donald J. Trump ("Mr. Trump") (collectively, "Plaintiffs") submit this memorandum of law in opposition to the motion of Defendants Univision Networks & Studios, Inc. ("Univision") and Alberto Ciurana ("Ciurana") (collectively, "Defendants") to dismiss the Amended Complaint (the "Complaint").

## PRELIMINARY STATEMENT

Plaintiffs commenced this action alleging (i) that Univision willfully breached the License Agreement entered into between MUO and Univision for the exclusive Spanish broadcast rights of the Miss USA, Miss Teen USA and Miss Universe competitions, and (ii) that Univision's subsequent conduct damaged Plaintiffs' well-established contractual relationships with a number of prominent businesses.  In addition, the Complaint alleged a separate claim for defamation against defendant Ciurana arising from his now infamous social media posting which equated Mr. Trump to one of the most heinous criminals in recent history.

Rather than defend their actions as lawful, Defendants, in their motion to dismiss, sidestep the real issues in dispute by repeatedly and improperly using Mr. Trump's comments made during the announcement for his candidacy for President of the United States as justification for Univision's willful breach of the agreement between MUO and itself.  The simple fact is that for all of Defendants' over-the-top assertions, nothing can excuse the calculated effort undertaken by Univision and its executives to not only flagrantly breach and walk away from its clear and unequivocal contractual obligations, but to try and destroy Mr. Trump personally by interfering with many of his most valued business relationships and defaming him and his reputation publicly.

Accordingly, try as they might to dismiss this action, whether by distorting many of the allegations in the Complaint or simply ignoring others and improperly inviting the Court to look

beyond the four corners of the pleading, Plaintiffs have sufficiently pled each and every element of the causes of action alleged in the Complaint, and Defendants' reliance on a series of inapposite and distinguishable cases must cause their motion to fail in its entirety.

In short, Defendants' motion should be denied.

## STATEMENT OF FACTS

### The Parties Execute the License Agreement

Prior to a sale of its assets on September 10, 2015, MUO was in the business of organizing, staging and producing some of the world's most successful, well known, and respected pageant competitions, including Miss USA, Miss Teen USA and Miss Universe.  In 2014 alone, the Miss USA competition was seen by more than 100 million viewers in over 70 countries while, in 2015, the Miss Universe pageant was broadcast to a worldwide audience of approximately 1 billion viewers in more than 190 countries.  Complaint ¶ 7.

On or about January 14, 2015, following a bidding war between rival Spanish language television networks Telemundo and Univision, MUO and Univision (together, the "Parties") entered into a license agreement pursuant to which Univision acquired from MUO the sole and exclusive right to broadcast, in Spanish, live and on demand, via television and any digital media, the Miss USA, Miss Teen USA and Miss Universe competitions (together, the "Final Events") for five (5) straight years – from 2015 through 2019 – in the United States (including Puerto Rico) and Canada (the "Agreement").  *Id.*  ¶ 8.

Pursuant to Section 1(a) of the Agreement, MUO agreed that it would "organize, stage and produce" the Final Events, all of which would "feature contestants from around the world or the United States (as applicable) consistent with the production values, performances and other elements of past Miss Universe, Miss USA and Miss Teen USA (as webcast) Pageants."  *Id.* ¶ 9.

Furthermore, pursuant to Section 1(b), MUO and Univision agreed that, to maximize viewership, both the Miss USA and Miss Universe competitions "will be staged during primetime (U.S. Eastern Time) on dates to be mutually agreed upon by the parties" and that MUO will "use reasonable efforts" to hold each such competition "on a Sunday night" when the potential international audience is largest.  *Id.* ¶ 10.  Additionally, pursuant to Section 3(a), MUO and Univision agreed that Univision would "exhibit each Program live via the Univision or UniMas Networks…."  In consideration of these rights, Univision agreed that it would pay MUO a license fee in the sum of $2.5 million per year for 2015, 2016 and 2017 and in the sum of $3 million per year for 2018 and 2019, for a total of $13.5 million over the five (5) year term.  *Id.* ¶ 13.

Section 5(b) provides only three (3) bases upon which Univision may terminate the Agreement:

- if MUO files for bankruptcy (*see* §5(b)(1));

- if MUO grants the same rights granted to Univision to another party (*see* §5(b)(3)); and

- if MUO breaches and fails to cure any other material obligation.  *Id.*

*Id.* ¶ 14.  To be clear, these are the only termination rights Univision has under the Agreement.

**Defendants Wrongfully Terminate the Agreement, Defame Mr. Trump and Intentionally Interfere with Plaintiffs' Business Relationships**

On June 16, 2015, Mr. Trump, at a nationally televised event held in Trump Tower, formally announced his candidacy for President of the United States.  During his 45 minute speech, Mr. Trump addressed a multitude of political issues, many of which, over the last decade, have consistently served as the focal point of his political views, including, among other things, the economy and his plans for improved job growth, Mexico and other nations

consistently outmaneuvering the United States on trade, illegal immigration and the need for a

more effective border between the United States and Mexico, currency manipulation by the

Chinese government, the recent decline in U.S.-Israeli relations and the ongoing threat from Al

Qaeda, ISIS and other international terrorist groups.  *Id.* ¶ 18.

On June 25, 2015, Univision released a statement to all of its radio and television outlets

and on its website (the "Univision Statement") announcing that, in response to Mr. Trump's June

16 comments, which were virtually identical to the comments he had made previously, not only

would Univision "not be airing the Miss USA pageant" on July 12, but was terminating its

relationship with MUO in its entirety.  The Univision Statement reads, as follows:

> "Today, the entertainment division of Univision Communications
> Inc. announced that it is ending the Company's business
> relationship with the Miss Universe Organization, which is part-
> owned by Donald J. Trump, based on his recent, insulting remarks
> about Mexican immigrants. At Univision, we see first-hand the
> work ethic, love for family, strong religious values and the
> important role Mexican immigrants and Mexican-Americans have
> had and will continue to have in building the future of our country.
> **We will not be airing the Miss USA pageant on July 12th or
> working on any other projects tied to the Trump Organization**.
>
> Univision News and the local news division will continue to
> provide comprehensive coverage of all candidates, including Mr.
> Trump, to ensure our audience continues to have access to all
> points of view (emphasis added)."

(*See* http://corporate.univision.com/2015/06/statement-from-the-entertainment-division-of-

univision-communications-inc-on-june-25-2015/)  *Id.* ¶ 24.

The Univision Statement was shocking for several reasons.  Not only did Univision have

no right to terminate the Agreement, but Univision never even sent MUO a termination notice

prior to releasing the Univision Statement, let alone a notice informing MUO that it was

allegedly in default.  Presumably, this was because Univision knew full well that there was

nothing in the Agreement which gave Univision the right to terminate.

Adding insult to injury, on June 25, 2015, Mr. Ciurana, Univision's President of Programing and Content, posted a photo on his official Univision Instagram account showing Mr. Trump side by side with Dylann Roof, the 21 year old who had been recently arrested in the murder of nine (9) African-Americans attending bible study at a church in Charleston, South Carolina, one of the worst hate crimes to ever take place on U.S. soil. Across the top of both photos appeared the words "NO COMMENTS." *Id.* ¶ 26. Realizing the wrongfulness of his actions, Mr. Ciurana removed the posting in question and subsequently posted on Instagram that he "should not have re-posted the photo [of Mr. Trump next to Roof]", which in itself, is an outright admission of the defamatory nature of the original posting. *See* https://www.washingtonpost.com/blogs/erik-wemple/wp/2015/06/26/yes-you-can-go-too-far-in-trashing-donald-trump-a-univision-executive-shows-how/. But the damage was already done. Almost immediately, Mr. Ciurana's false statement was picked up by the media and became the subject of hundreds, if not thousands, of press articles. *Id.* ¶ 28.

However, Univision's attempt to suppress Mr. Trump's First Amendment rights and defame his image did not end there. Upon information and belief, upon terminating its relationship with Plaintiffs, executives at Univision began colluding with representatives at NBC to cause NBC to permanently sever its contractual and business relationship with Plaintiffs.

In the end, with no Spanish language broadcast, MUO lost much of its Spanish-speaking audience and, with it, tens if not hundreds of millions of dollars in lost advertising sales, production costs, venue fees, telecast promotions, sponsorships, joint selling possibilities, licensing, merchandising revenue, franchise fees, brand value and the like, both in the immediate future and for many years to come. Moreover, Defendants' defamatory social media posting and

intentional interference with Plaintiffs' pre-existing business relationships, including with NBC, caused Plaintiffs to suffer tremendous damages.  In short, the fallout from Univision's brazen decision to abruptly walk away from its contractual obligations was catastrophic.  *Id.* ¶ 38.

## ARGUMENT

### I.   LEGAL STANDARD

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but must only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  On a motion to dismiss, the Court "accept[s] all properly pled factual allegations in the complaint as true and draw[s] all reasonable inferences in favor of the plaintiff." *Hooks v. Forman, Holt, Eliades & Ravin, LLC,* 717 F.3d 282, 284 (2d Cir. 2013); *accord Twombly,* 550 U.S. at 556.  In other words, the Court does not "assay the weight of the evidence which might be offered in support thereof" but instead "assess[es] the legal feasibility of the complaint." *Lopez v. Jet Blue Airways,* 662 F.3d 593, 596 (2d Cir. 2011) (internal citation and quotation marks omitted).  As such, the issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 59, 62 (2d Cir. 1997).  Lastly, to overcome dismissal, a plaintiff need only "provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (internal quotation omitted).

Plaintiffs have adequately pleaded each of their claims and Defendants' motion to

dismiss must be denied in its entirety.[1]

## II.    DEFENDANTS' ATTEMPT TO DISMISS PLAINTIFFS' BREACH OF CONTRACT CLAIM (FIRST CLAIM FOR RELIEF) IS MERITLESS AND HIGHLY PREMATURE

Defendants argue that Mr. Trump's comments frustrated "the essential purpose of the [License Agreement]…excusing Univision from any obligations owed thereunder."  Moving Br. at 22.  This argument, however, fails as a matter of law.  As demonstrated below, frustration of purpose is unavailable as a defense where (i) "the event which prevented performance was foreseeable" and (ii) "prior provision could have been made for its occurrence."  *See Warner v. Kaplan*, 71 A.D.3d 1, 6 (1st Dep't 2009) (internal citation omitted).  *See also Tycoons Worldwide Grp. (Thailand) Pub. Co. v. JBL Supply Inc.*, 721 F. Supp. 2d 194, 203 (S.D.N.Y. 2010).  In addition, because frustration of purpose is an affirmative defense, it is highly improper and premature for Defendants to argue it on a motion to dismiss.

### A.    The Alleged Conduct at Issue was Foreseeable

It is well settled that a frustration of purpose defense will only excuse performance "when a virtually cataclysmic, wholly unforeseeable event renders the contract valueless to one party." *Gander Mountain Co. v. Islip U-Slip LLC*, 923 F. Supp. 2d 351, 359 (N.D.N.Y. 2013) (*quotations omitted*) (citing *U.S. v. Gen Douglas MacArthur Senior Vill.*, 508 F.2d 377, 381) (2d Cir. 1974)); *Housman v. Media Technology Corp. Ltd.*, No. 95 Civ. 00639 (JSM), 1996 WL 66121, *4 (S.D.N.Y. Feb. 14, 1996) ("[d]ischarge under [frustration of purpose] doctrine has been limited to instances where a virtually cataclysmic, wholly unforeseeable event renders the

---

[1] Should the Court determine that one or more claims for relief fail to state a claim, the appropriate remedy would be to grant Plaintiffs leave to replead and not dismiss the Complaint. *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead.").

contract valueless to one party"); *Burke v. Steinmann*, No. 03 Civ. 1390 (GEL), 2004 WL

1117891, *9 (S.D.N.Y. May 18, 2004) ("a party to a contract may [only] rescind the contract if

an unforeseen event has occurred, which, in the context of the entire transaction, destroys the

underlying reasons for performing the contract"); *Tecnoclima, S.p.A. v. PJC Group of New York,*

*Inc.*, No. 89 Civ. 4437 (CSH), 1991 WL 33357, *7 (S.D.N.Y. Feb. 27, 1991); *Tycoons*

*Worldwide Group*, 721 F. Supp. 2d at 203 ("[t]he doctrine of frustration of performance excuses

a party's performance only in situations a virtually cataclysmic, wholly unforeseeable event

renders the contract valueless to one party").

  Here, Mr. Trump's comments on June 16, 2015 could hardly be viewed as

unforeseeable, let along cataclysmic.  Over the course of his career, Mr. Trump has been known

throughout the world as a "straight-talker" – someone who is not afraid to speak his mind and

voice concerns publicly regarding political, economic and social issues he feels strongly about

and which he believes are important to the well-being of the country and the world.  Given his

political and business acumen, major news outlets have sought and regularly feature Mr.

Trump's opinions and political commentary on a variety of topics.

  Moreover, for over a decade, Mr. Trump has, in numerous television and news

interviews, consistently voiced his concerns regarding the influx of illegal immigrants pouring

into the United States across the Mexican border and the crime that has resulted therefrom, views

which were widely reported by every major media outlet, including, both Univision and NBC.

Complaint ¶ 21.  As Mr. Trump explained in an interview with Fox News' Bill O'Reilly on

March 30, 2011, "[t]hey're coming over, and they're climbing over a fence, and there's nobody

within 10 miles — and they're selling drugs all over the place, they're killing people all over the

place — and we're not doing anything about it."  However, Mr. Trump cautioned that it was

difficult to generalize the experience of all immigrants who had entered the United States illegally.  "You're going to have to look at the individual people, see how they've done, see how productive they've been, see what their references are -- and then make a decision," he said. "You have some great, productive people -- and then you have some total disasters that probably should be in prison."  *Id.* at 22.

Today, Mr. Trump stands at the very top of the polls among Republicans in the race for the Presidency of the United States.  As a result, Mr. Trump's comments were clearly not cataclysmic and can hardly be viewed as unforeseeable.

### B.      Univision Never Insisted on Contractual Safeguards in the Agreement

Not only did Mr. Trump's statements have to be unforeseeable, but the defense of "commercial frustration applies only where the parties could not have provided for the frustrating event through contractual safeguards."  *Gander Mountain Co.*, 923 F. Supp. 2d at 360 ("[i]f a contingency is reasonably foreseeable and the agreement nonetheless fails to provide protection in the event of its occurrence, the defense of commercial frustration is not available") (*quotations and citations omitted*); *Housman*, 1996 WL 66121, *4 ("defendant's failure to provide for termination [clause in parties' agreement] in the case of a wholly foreseeable event precludes excuse of performance on these grounds"); *Tecnoclima, S.p.A.*, 1991 WL 33357, *7 ("under New York law, frustration of performance is no defense where no unusual or unforeseeable event prevented performance *and* provision could have readily been made for what occurred") (*citations, quotations, and alterations omitted*) (*emphasis in original*).

As such, courts have repeatedly held that a frustration of purpose defense fails, as a matter of law, where the alleged event could have been addressed by the parties in their underlying contract.  *See Gander Mountain Co.*, 923 F. Supp. 2d at 360 (rejecting commercial

9

tenant's frustration of purpose claim arising from its inability to obtain property insurance where the tenant failed to contract for this contingency in its lease); *Housman*, 1996 WL 66121, *1, 3-4 (rejects frustration of purpose defense where defendant's merger with another company rendered the purpose of the parties' agreement valueless on the ground that "defendant easily could have guarded against such an event in the contract"); *Bank of American Nat'l Trust and Savings Assn.,* 740 F. Supp. 260, 266-267 (S.D.N.Y. 1990) (rejecting frustration of purpose defense after certain currency exchange arrangements were no longer available because the parties had clearly considered "the possibility of a change in the currency regulations" when drafting their agreement); *Burke*, 2004 WL 1117891, *9 (rejecting frustration of purpose defense involving poor performance of restaurant manager where the issue was clearly foreseeable at the time the parties contracted); *Idir, Inc. v. U.S. Postal Service,* No. 81 Civ. 2507 (PNL), 1984 WL 543 (S.D.N.Y. June 25, 1984) (rejecting frustration of purpose defense by Postal Service that political pressures rendered performance impossible where "[t]he occurrence of such events [that] led to the change of decisions was always a reasonably foreseeable possibility" and "might well have been covered by a termination for convenience clause, but such a clause was not included"); *Tecnoclima, S.p.A..*, 1991 WL 33357, *7 (rejecting frustration of purpose defense involving contract for warm air furnaces where the problem associated with the performance of a related boiler did "not necessarily rise to a cataclysmic level" and "a contractual provision could have readily been made" for the contingency that the boilers would not perform properly); *See also Tycoons Worldwide Group*, 721 F. Supp. 2d at 203.

  Applying this established case law here, Univision's frustration of purpose defense must clearly be rejected as a matter of law.  As demonstrated above, pursuant to Section 5(b) of the Agreement, there are only three (3) bases upon which Univision could have possibly terminated

the Agreement:

- if MUO files for bankruptcy (*see* §5(b)(1));

- if MUO grants the same rights granted to Univision to another party
  (*see* §5(b)(3)); and

- if MUO breaches and fails to cure any other material obligation.  *Id.*

Again, there are no other bases upon which Univision could have terminated the Agreement.

Had Univision been concerned at the time they entered into the Agreement that Mr.

Trump or someone else affiliated with MUO might make statements which could impact the

value and benefit they sought to obtain from the Agreement or their ability to obtain

sponsorships for the pageants, as Defendants allege in their motion papers, Univision could have

insisted that the Agreement include an appropriate provision -- such as a so-called "morals

clause" -- in an effort to protect their interest in a situation like this.  No such provision,

however, was ever included.  As a result, under no circumstances can Univision possibly argue

frustration of purpose under the facts of this case.

### C.    Defendants' Attempt to Argue Frustration of Purpose is Premature

Not only does Univision fail to meet the elements of "frustration of purpose", but its

decision to argue it at this early juncture in the case is clearly inappropriate.  "[F]rustration of

purpose" is an affirmative defense generally raised in an answer to a complaint and is not

appropriately heard on a motion to dismiss pursuant to Rule 12(b)(6) since it requires an

"analysis of facts" well after the pleading stage of the case.  *See Profile Publ'g & Mgmt. Corp.*

*APS v. Musicmaker.com., Inc.*, 242 F. Supp. 2d 363, 365 (S.D.N.Y. 2003) (defense analyzed on

summary judgment).  It has been held that "a factual analysis….is not possible on a motion to

dismiss."  *Mendez v. Bank of America Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 649

(E.D.N.Y. 2012).  The only exception to this rule is where facts sufficient to establish such

affirmative defense appear "on the face of the complaint" such that no discovery is necessary.

*Balance Point Divorce Funding, LLC v. Scrantom*, 978 F. Supp. 2d 341, 350 (S.D.N.Y. 2013)

(citing *Kelly–Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)).

That is clearly not the case here.  As demonstrated above, in order to prove "frustration

of purpose", Univision must show (i) that the triggering act was not simply unforeseeable, but

catastrophic; and (ii) that Univision lacked the ability to protect against its prior occurrence by

including a contractual provision in the Agreement.  *Gander Mountain Co.*, 923 F. Supp. 2d at

359; *Housman*, 1996 WL 66121, *4; *Tecnoclima*, 1991 WL 33357, *7; *Tycoons Worldwide*

*Group*, 721 F. Supp. 2d at 203.  Plainly, the facts alleged in the Complaint fall far short of

satisfying these elements.  To the contrary, as detailed above, the facts alleged in the Complaint

show the complete opposite – that the events were foreseeable and that Univision could have

insisted on appropriate contractual safeguards in the Agreement.  As a result, it is premature for

this Court to consider Univision's "frustration of purpose" defense at this stage in the case.

### D.   Defendants' Additional Grounds for Dismissal are Without Merit

In a last gasp attempt to dismiss Plaintiffs' breach of contract claim, Defendants argue

that it was *Plaintiffs* who, both expressly and impliedly, breached the Agreement first, thereby

relieving Univision of its duties to perform.  Moving Br. at 24.  Once again, however,

Defendants' argument is without basis, entirely conclusory and a clear "shot in the dark."  While

Defendants contend that MUO violated Sections 2(a)(vi) and 2(b) of the Agreement, which

required MUO to cause the Miss USA pageant to be produced as a "first class network-quality

production", Defendants do not provide even a shred of proof to establish that the Miss USA

pageant, which ultimately took place on July 12, 2015 without Univision, was anything less than

first-class and of the highest quality.  Instead, Defendants' allegations are based on wholly

unsupported speculation and conjecture.  As a result, raising this fact intensive argument at this early stage in the case is completely premature and inappropriate.  *Profile Publ'g & Mgmt. Corp. APS*, 242 F. Supp. 2d at 365*; Mendez*, 840 F. Supp. 2d at 649.  Not surprisingly, the cases relied on by Plaintiffs are all procedurally inapplicable, dealing with contract disputes in the context of *summary judgment post-discovery.  Lenel Sys. Int'l, Inc. v. Smith*, 34 A.D.3d 1284, 1285, 824 N.Y.S.2d 553, 554 (4th Dep't 2006); *Syracuse Orthopedic Specialists, P.C. v. Hootnick*, 42 A.D.3d 890, 893, 839 N.Y.S.2d 897, 900 (4th Dep't 2007).[2]

For all the foregoing reasons, Defendants have utterly failed to make any showing which would warrant dismissal of Plaintiffs' First Claim for Relief.

## III.  PLAINTIFFS HAVE STATED A CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP (SECOND CLAIM FOR RELIEF)

Under New York law, a claim for intentional or tortious interference requires "existence of a valid contract between plaintiff and a third party, defendant's knowledge of the contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *IMG Fragrance Brands, LLC v. Houbigant, Inc.,* 679 F. Supp. 2d 395, 405–06 (S.D.N.Y.2009) (citing *Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 424 (1996)).

Here, the Complaint pleads all of these elements.  The Complaint alleges, for instance, that Plaintiffs and their respective affiliates are parties to numerous valid and enforceable agreements with various third parties (*see* Complaint ¶ 54) and that Univision was aware of their existence, including certain agreements with NBC.  *Id.* ¶ 55.  Plaintiffs additionally alleged that,

---

[2] Plaintiffs, heeding to the Court's recommendation, eliminated their cause of action for breach of the implied covenant of good faith and fair dealing when they filed their Amended Complaint. As a result, there is no need for Plaintiffs to address that portion of Defendants' moving brief requesting the dismissal of such claim.

upon information and belief, Univision engaged in a wrongful, willful, concerted and purposeful effort to coerce, collude and/or conspire with various parties to terminate their contractual and other business relationships with Plaintiffs knowing full well of the existence of the agreements, including certain agreements with NBC. *Id.* ¶ 56. The basis of this claim arises from, among other things, the fact that executives at Univision, many of whom, including, but not limited to, Mr. Falco (a former longtime NBC executive) are believed to have colluded with their former colleagues at NBC and/or otherwise used coercive and other improper and illegal tactics and means, to cause NBC to permanently sever its contractual and business relationship with Plaintiffs by, among other things, refusing to broadcast the Miss USA, Miss Teen USA and Miss Universe pageants in express violation of NBC's contractual obligations. *Id.* ¶ 29. Therefore, Plaintiffs have satisfied any inquiry with regard to Univision's knowledge of Plaintiffs' business relationships. *See St. John's Univ., N.Y. v. Bolton,* 757 F. Supp. 2d 144, 172–73 (E.D.N.Y. 2010) ("While Plaintiff has the ultimate burden of proving by a preponderance of the evidence that Spireas had actual knowledge of Bolton's contractual obligations to St. John's, on a motion to dismiss it is sufficient for Plaintiff to allege facts from which the court might reasonably infer that Spireas had such knowledge.").

Further, the Complaint alleges that Univision undertook its improper actions, among other reasons, for the malicious, improper, and intentional purpose of punishing MUO for Mr. Trump's comments, and also based upon the mistaken belief that the termination of the NBC agreement would reduce or extinguish Univision's contractual obligations to pay license fees and other damages to MUO under the Agreement. *See* Agreement, Section 15. This allegation in itself also provides the necessary foundation to withstand dismissal of Plaintiffs' tortious interference claim.

14

Defendants' cases, on the other hand, are wholly inapposite to the facts and circumstances here.  As an initial matter, none of Defendants' cases even remotely resemble the relationships and standing of the parties to this action.  In this case, not only do you have highly-recognized media companies, but a defendant whose current President and Chief Executive Office (Mr. Falco) was previously a long time executive at another television network (NBC), and thus, well aware of Plaintiffs' other contractual relationships.  Complaint ¶¶ 29, 55-56.

As for the cases themselves, the allegations in *Orange County Choppers, Inc. v. Olaes Enters.*, 497 F. Supp. 2d 541, 562 (S.D.N.Y. 2007) merely involved threats to terminate the agreements at issue.  Here, as has become well-known, a number of very prominent businesses actually chose to sever their business relationships with Mr. Trump and his companies as a result of Univision's conduct.  This is alleged properly in the Complaint.  *Id.* ¶ 29.  In addition, contrary to the allegations made in *Ace Arts, LLC v. Sony/ATV Music Publ'g, LLC*, 56 F. Supp. 3d 436, 450–51 (S.D.N.Y. 2014) (dismissing "conclusory allegation" that defendant "did in fact . . . induce a breach and disruption of the Distribution Contract"), Plaintiffs have alleged that "Univision engaged in a wrongful, willful, concerted and purposeful effort to coerce, collude and/or conspire with various parties to terminate their contractual and other business relationships with Plaintiffs knowing full well of the existence of the Third Party Agreements." Complaint ¶¶ 29, 39, 56.  *See Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 189–90 (1980) (terms "improperly" and "without justification" are used interchangeably; determining whether interference is "improper" is a fact specific inquiry requiring consideration of several factors and their relative significance in each case).  This allegation could in no way be construed as conclusory warranting dismissal at this early stage of the case.

Defendants reliance on *Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606 (HBP), 2006 WL

2320544 (S.D.N.Y. Aug. 10, 2006) also is misplaced.  In *Leadsinger, Inc.*, the plaintiff sued its former sales manager for allegedly interfering with plaintiff's contracts entered into with certain of its customers.  *Id.* at *12.  In that case, the Court found that plaintiff failed to plead two of the critical elements of a tortious interference claim; the existence of a valid contract with a third-party and actual breach of contract.  *Id.*[3]  These elements are clearly pled here.

Defendants also argue that Plaintiffs' intentional interference claim should fail since "persuasion alone, even if it [was] knowingly directed at interference with the contract, is not enough to state a claim for tortious interference."  Moving Br. at 20 (citations omitted).  As alleged in the Complaint, Univision did not simply persuade third-parties to breach their contractual obligations, but went further by inducing and prevailing upon NBC, for example, to walk away from its contractual obligations to MUO.  In this regard, the Second Circuit has recognized that pleading that a defendant induced or prevailed upon a third party to breach a contract is sufficient to satisfy the required element of "procurement."  *Highland Mgmt. LP v. Schneider,* 198 Fed.Appx. 41, 46 (2d Cir. 2006) (citations omitted).

Finally, Defendants argue that any lobbying by Univision of NBC was protected by the First Amendment (*see* Moving Br. at 21).  This, in and of itself, serves as an admission that Univision **did** have communications with NBC.  At a minimum, it entitles Plaintiffs to discovery on these communications.

---

[3] The New York State court cases relied upon by Defendants should be given no weight as they are either procedurally dissimilar from this action, *see Pursuit Inv. Management LLC v. Alpha Beta Capital Partners, L.P.*, 127 A.D.3d 580, 580, 8 N.Y.S.3d 283, 284 (1st Dep't 2015) (motion to dismiss tortious interference claim brought *after* discovery had already commenced) or involved extremely limited analysis of parties whose business relationships in no way resembled the parties involved in this action, *see Washington Ave. Assocs., Inc. v. Euclid Equip., Inc.*, 229 A.D.2d 486, 487, 645 N.Y.S.2d 511, 512 (2d Dep't 1996) (limited discussion as to the fact that merely alleging certain "conversations" took place could not support a tortious interference claim).

Therefore, the motion to dismiss Plaintiffs' Second Claim for Relief should be denied.

## IV.    MR. TRUMP HAS STATED A CLAIM FOR
        **DEFAMATION *PER SE* (THIRD CLAIM FOR RELIEF)**

A claim for defamation requires "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation per se." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011) (internal citations omitted).  A statement is defamatory if it "exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or ... induce[s] an evil opinion of one in the minds of right-thinking persons, and ... deprives one of ... confidence and friendly intercourse in society." *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (internal quotation marks and citations omitted).  A party alleging defamation need only show that the publication in question may reasonably be understood as defamatory. *Celle*, 209 F.3d at 177-178; *Aronson v. Wiersma,* 65 N.Y.2d 592, 594 (1985); *See also, Joyce v. Thompson Wigdor & Gilly, LLP.*, No. 06 Civ 15315 (RLC) GWG, 2008 WL 2329227 at *3 (S.D.N.Y. June 3, 2008) (Post-*Twombly*).  Lastly, "a statement charging an individual with a serious crime … [or] a statement that tends to injure another in his or her trade, business, or profession" constitutes defamation *per se*.  *Pure Power Boot Camp, Inc.*, 813 F. Supp. 2d at 550; *Germain v. M & T Bank Corp.*, -- F. Supp. 3d --, 2015 WL 3825198 (S.D.N.Y. Jun 19, 2015)*; Stern v. Cosby*, 645 F. Supp. 2d 258, 273 (S.D.N.Y. 2009) (internal citation omitted).  Here, the Complaint properly pleads each of these elements. *Id.* ¶¶ 59-68.

Below is the Instagram post by Mr. Ciurana at issue in this lawsuit:



As stated in the Complaint, given the entire context of the post, including the two photographs, accompanied by the caption "NO COMMENTS", the surrounding events along with its target audience, a reasonable person could interpret Mr. Ciurana as stating that either (i) Mr. Trump had committed heinous acts similar to those of Dylann Roof (charged in 2015 with the racially-motivated murders of nine people attending a bible study at an African-American church in Charleston, South Carolina) and/or (ii) Mr. Trump had incited others to commit similar heinous acts.  Complaint ¶ 61**.**  These statements of fact -- all of which are not only completely untrue, but irresponsible, reckless, indefensible, and outright disgusting -- go well beyond protected "opinion" or "lampooning" as Defendants now argue and fall squarely within the definition of defamation *per se*.  Further, as one of the top executives at Univision, Mr. Ciurana – who has quite a substantial social media presence in his own right as demonstrated by his approximately 3.03 million followers on Twitter and 151,000 followers on Instagram -- was in a

18

unique position to partake in a direct attack at the principal of a business partner, in this case, Mr. Trump.

Indeed, the situation here is no different than *Gallo v. Montauk Video, Inc.*, 178 Misc. 2d 1069, 684 N.Y.S.2d 817, 1999 N.Y. Slip Op. 99023 (App. Term, 2d Dep't 1998) in which the court found that posting the plaintiff's name on the countertop at a video store with the word "reward" and the monetary sum of $1,000 was "reasonably susceptible to a defamatory connotation and actionable as libel per se." *Id.* at **1069. If that constituted defamation *per se*, surely the same can be said for posting on a company's official social media account a picture of Mr. Trump side-by-side with someone who just days before committed one of the worst hate crimes on U.S. soil -- especially where that company was and is one of the largest television networks in the world. In *Gallo*, the court held that "[t]he words considered in context and under the circumstances of their publication may reasonably be construed as suggesting to an average reader a wrongdoing by plaintiff." The court went on to note that "[c]ontrary to defendant's contention, in New York, libel per se may be alleged and proved by reference to extrinsic facts, and no special damages need be shown, since a presumption of actual damage to reputation arises from the statement itself entitling plaintiff to recover general damages." *Id.*

As the court's decision in *Gallo* shows, Defendants are incorrect that New York courts are encouraged to dispose of libel cases at the pleading stage. Moving Br. at 10. While courts recognize some value "where appropriate" to dismiss libel cases so as not to chill the exercise of constitutionally protected freedoms, New York's Court of Appeals equally recognizes "a plaintiff's right to seek redress, and not have the courthouse doors closed at the very inception of the action, where the pleading meets a minimal standard necessary to resist dismissal of a complaint." *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 379 (1995). *See also Gertz v.*

19

*Robert Welch, Inc.*, 418 U.S. 323, 345-46 (1974) (recognizing that private individuals are "vulnerable to injury" and "deserving of recovery" for defamatory falsehood injurious to reputation); *Cohen v. Google, Inc.*, 25 Misc. 3d 945, 952 (Sup. Ct. N.Y. County. 2009) (Those who suffer damages as a result of defamatory statements "should be able to seek appropriate redress by preventing the wrongdoers from hiding behind an illusory shield of purported First Amendment rights.")

Defendants are also wrong in assuming that the post is susceptible to only one possible interpretation that is not false and defamatory and that the post constitutes visual satire expressing the author's opinion of a presidential candidate.  Moving Br. at 10.  It is well settled that "[o]n a motion to dismiss a defamation claim, the court must decide whether the statements, considered *in the context of the entire publication*, are *reasonably susceptible of a defamatory connotation*, such that the issue is worthy of submission to a jury." *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 34 (1st Dep't 2014) (emphases added) (quotation omitted); *accord Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 363 (S.D.N.Y. 1998); *Silfsdorf v. Levine*, 59 N.Y.2d 8, 12-13 (1983).  Unless it can be found as a matter of law that (1) the statement is "clearly susceptible to only one interpretation" and (2) that singular interpretation is nonlibelous, this Court must deny the motion to dismiss. *Carney v. Memorial Hosp. and Nursing Home of Greene Cnty.*, 64 N.Y.2d 770, 772 (1985) (lower court erred in dismissing defamation). *See also Schermerhorn v. Rosenberg*, 73 A.D.2d 276, 284 (2d Dep't 1980) ("[u]nless the court can say, as a matter of law, that the statement could not have had such an effect [i.e., impute moral turpitude to him], it is for the jury to decide whether or not it did"); *Fischer v. Post-Standard Co.*, 14 A.D.2d 130, 133 (3d Dep't 1961) (error to hold that words were not defamatory as a matter of law even if "innocent sense can be attributed to them" where "they are capable of a construction

which would make them actionable").

It is utterly preposterous to suggest that Mr. Ciurana's Instagram post is susceptible to only one possible interpretation that is not false and defamatory or that it constitutes an example of "a tongue-in-cheek attempt at humor" or "an expression of disapproval" as Defendants suggest. Moving Br. at 10-11. Surely this Court would agree that comparing Mr. Trump to Dylann Roof hardly constitutes "a tongue-in-cheek attempt at humor."

Defendants also argue that the Mr. Ciurana's post constitutes non-actionable protected opinion. Moving Br. at 10. "To determine whether a statement is an opinion or a fact, courts look to four factors: "(1) whether the specific language in issue has a precise, meaning which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication in which the statement appears; and (4) a consideration of the broader social context or setting surrounding the communication[.] including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." *Germain*, 2015 WL 3825198, *20 (citing *Kirch v. Liberty Media Corp.,* 449 F.3d 388, 402 n. 7 (2d Cir. 2006)) (internal quotation marks omitted); *see also Chau v. Lewis,* 771 F.3d 128–29 (2d Cir. 2014) (same). Moreover, "opinions based on false facts are actionable against a defendant who had knowledge of the falsity or probable falsity of the underlying facts." *Restis v. Am. Coal. Against Nuclear Iran, Inc*., 53 F. Supp. 3d 705, 719 (S.D.N.Y. 2014) (internal citations omitted). Notwithstanding these factors, a statement of opinion is actionable when it is so-called "mixed" opinion that "implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it." *Jewell*, 23 F. Supp. 2d at 377 (quotation omitted); *see also Steinhilber v. Alphonse*, 68 N.Y.2d

283, 289-90 (1986); *Silsdorf*, 59 N.Y.2d at 14.  Merely suggesting that the Instagram post constitutes "opinion" therefore is not enough for dismissal at this stage—"the Court must look at the context of [defendant's statement] to determine whether it constitutes a mixed opinion that is actionable under New York law." *Germain*, 2015 WL 3825198 at *21.

As described above, the Instagram post by Mr. Ciurana implies that Mr. Trump committed acts similar to Roof or was inciting others to commit such acts.  It further implies that there are additional facts – unknown to the reader or viewer – which justify this conclusion.  It is therefore actionable "mixed" opinion. *Germain,* 2015 WL 3825198, *21 (statement deemed actionable "mixed" opinion since "the context in which it was made plausibly suggests that it is based on undisclosed facts or on facts that are challenged as untrue"); *Jewell*, 23 F. Supp. 2d at 377.

Lastly, the Complaint sufficiently alleges that when Mr. Ciurana posted on Instagram he was acting in his capacity as an employee of Univision.  Indeed, Defendants do not dispute that Mr. Ciurana was a high ranking executive at Univision and it is ludicrous to suggest he is not the "mouthpiece" for Univision given not only his millions of social media followers, but the fact that his Instagram account expressly states that Mr. Ciurana serves as "President, Programming & Content Univision Networks at Univision Communications Inc."  At the very least, there is a question of fact as to his duties, and plaintiffs should be entitled to depose Mr. Ciurana on this issue.  *See Hill v. City of New York*, No. 05 Civ. 9473 (RMB)(JCF), 2006 WL 2347739, at *7 (S.D.N.Y. Aug. 14, 2006) ("[w]hether an employee was acting within that scope [of employment] at a particular time requires a fact-intensive inquiry" and cannot be resolved on this

motion to dismiss.") (internal citation omitted).[4]

Therefore, the motion to dismiss the Complaint's Third Claim for Relief should be denied.

---

[4]     Defendants' reliance on *Girden v. Sandals Int'l,* 262 F.3d 195, 205 (2d Cir. 2001) (post-trial decision)*, Davis v. City of New York*, 226 A.D.2d 271, 271-72, 641 N.Y.S.2d 275, 276 (1st Dep't 1996) (same) *Gui Ying Shi v. McDonald's Corp.,* 110 A.D.3d 678, 679, 972 N.Y.S.2d 307, 309 (2d Dep't 2013) (summary judgment decision) (*see* Moving Br. at 14-15) should be given no consideration whatsoever as all of these decisions are procedurally inapplicable as they involved matters well beyond the pleading stage (which is the case here).  Moreover, contrary to the individual accused of defamation in *Cruz v. Marchetto,* No. 11 Civ. 8378, 2012 WL 4513484, at *7 (S.D.N.Y. Oct. 1, 2012), Mr. Ciurana's Instagram post was inside of Univision's control since it was made through his official Univision Instagram account.  In addition, the plaintiff in *Garrison v. Toshiba Bus. Sols. (USA)*, Inc., 907 F. Supp. 2d 301, 309 (E.D.N.Y. 2012) (Moving Br. at 15) attempted to impose liability on corporate defendants because of the actions committed by a low-level employee.  As Univision's President of Programming and Content, Mr. Ciurana's can in no way be considered a low-level employee.  *See* http://corporate.univision.com/leader/alberto-ciurana-2/.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny

Defendants' motion to dismiss in all respects.

Dated:     New York, New York
           January 8, 2016

           TRUMP ORGANIZATION LLC


           By:___s/Matthew R. Maron_____
                  Matthew R. Maron
           725 Fifth Avenue
           New York, New York 10022
           (212) 715-7200
           mmaron@trumporg.com

           Lawrence S. Rosen
           LAROCCA HORNIK ROSEN
           GREENBERG & BLAHA LLP
           The Trump Building
           40 Wall Street, 32nd Floor
           New York, New York 10005
           (212) 530-4822
           lrosen@lhrgb.com

           Jeffrey L. Goldman
           BELKIN BURDEN WENIG & GOLDMAN, LLP
           270 Madison Avenue
           New York, New York 10016
           (212) 867-4466
           jgoldman@bbwg.com

           *Attorneys for Plaintiffs*

24