UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
:
MISS UNIVERSE L.P., LLLP and DONALD J. TRUMP, :
:
            Plaintiffs, :
:
        -against- : Case No. 1:15-cv-5377 (JGK)
:
UNIVISION NETWORKS & STUDIOS, INC. and :
ALBERTO CIURANA, individually, :
:
            Defendants. :
:
------------------------------------------------------------------------x


# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT


GIBSON, DUNN & CRUTCHER LLP

Randy M. Mastro
Amer S. Ahmed
200 Park Avenue
New York, New York 10166-0193
Tel.: (212) 351-4000
Fax: (212) 351-4035

Miguel A. Estrada
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: (202) 955-8500
Fax: (202) 530-9616

*Attorneys for Defendants Univision Networks & Studios, Inc. and Alberto Ciurana*

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................... ii

I.      PRELIMINARY STATEMENT ....................................................................................1

II.     ARGUMENT .................................................................................................................3

     A.     Trump Fails to Address the Fatal Deficiencies in his Defamation Claim. ..............3

          1.  Trump Fails to Plead that the Image Conveyed a False Statement of Fact. ......3

          2.  Trump Fails to State a Claim against Univision, or for Damages. ....................6

     B.     Trump Has Not Pleaded a Viable Claim for Tortious Interference with Contract. ..................................................................................................................6

          1.  Trump Fails to Plead An Actual Breach by NBC or any Third Party. ..............6

          2.  Trump Fails to Plead "But For" Causation or Unjustified Procurement. ..........7

          3.  Trump Fails to Plead Damages. .........................................................................9

     C.     Trump Frustrated the Purpose of the Contract, and Miss Universe Breached First. ........................................................................................................................9

III.    CONCLUSION ............................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aero Media LLC v. World Healing Ctr. Church, Inc.*,
   No. 12-5196, 2013 WL 2896856 (S.D.N.Y. June 11, 2013) ...................................................4

*Alvord & Swift v. Stewart M. Muller Constr. Co.*,
   385 N.E.2d 1238 (N.Y. 1978) ..................................................................................................9

*Ava v. NYP Holdings, Inc.*,
   885 N.Y.S.2d 247 (App. Div. 1st Dep't 2009) .......................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................................7, 8

*Carney v. Mem'l Hosp. & Nursing Home of Greene Cty.*,
   475 N.E.2d 451 (N.Y. 1985) ..................................................................................................4

*Celle v. Filipino Reporter Enters. Inc.*,
   209 F.3d 163 (2d Cir. 2000) ................................................................................................1, 4

*Edward B. Fitzpatrick, Jr. Constr. Corp. v. Suffolk Cty.*,
   525 N.Y.S.2d 863 (App. Div. 2d Dep't 1988) .......................................................................8

*Gallo v. Montauk Video, Inc.*,
   684 N.Y.S.2d 817 (App. Term, 2d Dep't 1998) ....................................................................5

*Germain v. M&T Bank Corp.*,
   2015 WL 3825198 (S.D.N.Y. Jun. 19, 2015) ........................................................................5

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ...............................................................................................................5

*Girden v. Sandals Int'l*,
   262 F.3d 195 (2d Cir. 2001) ..................................................................................................6

*Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*,
   No. 02-7955, 2003 WL 21136096 (S.D.N.Y. May 15, 2003) ..............................................4

*Highland Mgmt. LP v. Schneider*,
   198 F. App'x 41 (2d Cir. 2006) .............................................................................................8

*Hustler Magazine, Inc. v. Falwell*,
   485 U.S. 46 (1988) .................................................................................................................5

*Immuno AG. v. Moor-Jankowski*,
   567 N.E.2d 1270 (N.Y. 1991) ................................................................................................3

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Inselman Co. v. FNB Fin. Co.*,
   364 N.E.2d 1119 (N.Y. 1977) ......................................................................................................7

*Jewell v. NYP Holdings, Inc.*,
   23 F. Supp. 2d 348 (S.D.N.Y. 1998) ...........................................................................................5

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006) ........................................................................................................7

*Levin v. McPhee*,
   119 F.3d 189 (2d Cir. 1997) ........................................................................................................4

*Mendez v. Bank of Am. Home Loans Servicing, LP*,
   840 F. Supp. 2d 639 (E.D.N.Y. 2012) .......................................................................................10

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982) ....................................................................................................................9

*Orange County Choppers, Inc. v. Olaes Enters.*,
   497 F. Supp. 2d 541 (S.D.N.Y. 2007) .........................................................................................7

*Profile Publ'g & Mgmt. Corp. v. Musicmaker.com., Inc.*,
   242 F. Supp. 2d 363 (S.D.N.Y. 2003) .......................................................................................10

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
   53 F. Supp. 3d 705 (S.D.N.Y. 2014) ...........................................................................................7

*Silsdorf v. Levine*,
   59 N.Y.2d 8 (N.Y. 1983) .............................................................................................................5

*St. John's Univ., N.Y. v. Bolton*,
   757 F. Supp. 2d 144 (E.D.N.Y. 2010) .....................................................................................7, 8

*Van Buskirk v. N.Y. Times Co.*,
   No. 99 CIV. 4265, 2000 WL 1206732 (S.D.N.Y. Aug. 24, 2000) ..............................................4

*Wash. Ave. Assocs., Inc. v. Euclid Equip., Inc.*,
   645 N.Y.S. 2d 511 (App. Div. 2d Dep't 1996) ...........................................................................8

I.      PRELIMINARY STATEMENT

This Court directed Trump and Miss Universe (collectively, "Trump") to provide their "best complaint" or face dismissal with prejudice. Yet none of the new complaint's allegations passes muster under the heightened pleading standards of Rule 8(a), as articulated by the Supreme Court in *Twombly* and *Iqbal*. Because Trump's latest complaint rehashes the same implausible, factually unsupported inferences as before, and continues to amount to nothing more than a string of conclusory legal assertions, the Court should now ring down the curtain for good on Trump's unseemly attempt to use the federal courts to further his campaign.

As to defamation, Trump concedes—as he must—that his claim is not actionable unless Mr. Ciurana's Instagram repost advances "statements of fact." Opp. 18. Trump would have this Court believe that an obvious visual satire—side-by-side photographs of church-shooter Dylan Roof and a similarly coiffed and glum-looking Trump—seriously conveys the highly precise *factual* assertion that Trump is a perpetrator of, or an accomplice to, racially-motivated mass murder. No reasonable person would draw such an inference in any circumstance, and such an inference would be especially strained in the middle of a presidential campaign that Trump himself has chosen to wage on an exclusionary, anti-immigrant platform. Trump may not enjoy being lampooned for his personal appearance or his extremist views, but the expression of such *opinions* about our putative political leaders is not actionable as a factual statement. In fact, it is constitutionally protected, regardless of how thin-skinned the candidate.

Nor is it correct that the Instagram post must go to a jury because it could have more than "one possible interpretation" (Opp. 20). As the plaintiff in this lawsuit, Trump has the burden of alleging a plausible *defamatory* meaning of the challenged publication that is actionable as factual—and he flunks that test. *See Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 178 (2d Cir. 2000). No reasonable user of social media would interpret that post as anything other than an expression of pure opinion amidst a heated political debate of Trump's own making.

Trump's opposition brief also confirms that he cannot state a claim for tortious interference with contract. The latest complaint posits that NBC, one of the country's largest

1

media conglomerates and the owner of Univision's primary Spanish-language rival, somehow succumbed to unstated and unspecified acts of "coercion" by former executives now at Univision and agreed to breach a multi-year agreement at their behest. Trump simply alleges no *facts* to support this claim. In particular, his pleading fails to allege at least four distinct elements of the tort. Nowhere does it allege that NBC's termination of dealings with Miss Universe constituted breach of contract, as opposed to a justified response to Trump's outrageous conduct. Nor does Trump plausibly allege any wrongful means by which Univision was able to dictate business decisions at a "highly-recognized media compan[y]" like NBC (Opp. 15). Nor does Trump allege facts rebutting the most obvious explanation for NBC's acts—that like many other companies, NBC concluded that remaining associated with Trump brands would cause NBC harm in the wake of Trump's anti-immigrant campaign. Finally, Trump fails to dispute that Miss Universe's publicized settlement with NBC has already compensated Miss Universe in full for any alleged breach. Trump's entirely unsupported allegations of a whisper campaign, purportedly orchestrated by Univision executives, cannot get him to discovery when he has utterly failed to plead the basics of his tortious interference claim with any factual specificity, much less plausibility. Moreover, Trump never disputes that urging a boycott of his brands would have been constitutionally protected activity, had it occurred.

Finally, Trump demands discovery on his contract claim, but does not dispute any of the public facts clearly justifying Univision's termination of the deal: that after his remarks, sponsors, performers, and the audience for Miss Universe's Spanish broadcasts all but evaporated; that neither Miss Universe nor Trump did anything to ameliorate this damage; and that Trump only intensified his attacks on Hispanic Americans in the days and weeks following his campaign announcement, stoking an unprecedented national backlash. This motion is far from premature in light of that undisputed record. Trump's incredible retort is that Univision should have somehow foreseen that he would abandon his pompous, narcissistic celebrity TV persona—not to mention his long history of politically expedient, often liberal positions—and run for President on a divisive, race-baiting platform that labels much of Univision's audience

criminals and "rapists," fit to be deported or penned behind a border wall. On these undisputed facts, however, it is Trump who breached this contract and frustrated its purpose, thereby warranting Univision's termination of it.

## II.   ARGUMENT

### A.   Trump Fails to Address the Fatal Deficiencies in his Defamation Claim.

Trump knows that because he is indisputably a public figure, his defamation claim faces enormous legal obstacles. He must plausibly allege, among other things: that the Instagram post expresses a false statement of fact about him, rather than opinion; that it was published with actual malice; and that it caused special damages or accused him of a crime. As to each of these burdens, Trump offers only a single argument—that the Instagram post actually accused Trump of committing or inciting racially-motivated mass murder. Opp. 18. Trump has never alleged any other meaning for the social-media image. Because, as a matter of law, no reasonable reader would interpret the post as Trump alleges, his defamation claim must be dismissed.

#### 1.   Trump Fails to Plead that the Image Conveyed a False Statement of Fact.

As Trump acknowledges, to allege a provably false statement of fact, as opposed to non-actionable opinion, he must show that Mr. Ciurana's Instagram post "'has a precise meaning which is readily understood,'" rather than one that is "'indefinite and ambiguous,'" and that the post "'is capable of being objectively characterized as true or false.'" Opp. 21 (quotation omitted). But the post is ambiguous, given its anodyne portrayal of two photographs with the caption "NO COMMENTS," and it cannot objectively be characterized as "true" or "false." "[V]iewed in [its] context" as an image-based social-media post, *i.e.*, as a "meme," it could have any number of non-factual meanings: a tongue-in-cheek suggestion that Trump and Roof look alike (or have the same hair stylist); an observation that Trump's rhetoric is racially insensitive; or at most a suggestion that Trump's candidacy is based on extremist views. *Immuno AG. v. Moor-Jankowski*, 567 N.E.2d 1270, 1281 (N.Y. 1991) (meaning assessed from perspective of "reasonable reader" of publication). Every one of those meanings—or any other that could reasonably be drawn—is a non-actionable opinion. MTD 10–12. The fact that Mr. Ciurana

3

removed the post does not remotely show that it had the "defamatory" import Trump alleges.

Trump misstates the law by arguing that his defamation claim can be dismissed now only if the Instagram post is "'clearly susceptible to only one interpretation,'" and "that singular interpretation is nonlibelous." Opp. 20 (quoting *Carney v. Mem'l Hosp. & Nursing Home of Greene Cty.*, 475 N.E.2d 451 (N.Y. 1985)). It makes no difference that the post is susceptible to more than one *non-actionable* interpretation; Trump must meet his burden to plead a "*defamatory* meaning of the challenged statement" that conveys actual facts and is "*plausible*." *Celle*, 209 F.3d at 178 (emphases added). The plaintiff in *Carney* alleged one, so his case could go forward. 475 N.E.2d at 453. But if Trump cannot impute a "plausible defamatory meaning" to the image, his claim should be dismissed. *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, No. 02-7955, 2003 WL 21136096, at *2 (S.D.N.Y. May 15, 2003).

And Trump cannot. "[T]he court must decide as a *threshold issue* whether the allegedly defamatory statement 'is reasonably susceptible to the defamatory meaning imputed to it.'" *Van Buskirk v. N.Y. Times Co.*, No. 99 CIV. 4265, 2000 WL 1206732, at *3 (S.D.N.Y. Aug. 24, 2000) (quoting *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997)) (emphasis added); MTD 10, 12. The *only* arguably factual interpretation of the Instagram post Trump has ever put forward is that it accuses him of having committed or incited a race-based mass murder similar to Dylann Roof's. But it is nonsensical to argue that any reasonable Instagram user (or anyone else) would conclude, based solely on Mr. Ciurana's post, that Trump—one of America's most well-covered public figures—is secretly a mass murderer or an accomplice to mass murder. Even if it were conceivable that "some readers might draw this inference," that "does not render it reasonable." *Ava v. NYP Holdings, Inc.*, 885 N.Y.S.2d 247, 253 (App. Div. 1st Dep't 2009). Courts routinely dismiss complaints where the "proffered defamatory meaning cannot be fairly discerned from" the publication, without straining to invent another. *E.g.*, *Aero Media LLC v. World Healing Ctr. Church, Inc.*, No. 12-5196, 2013 WL 2896856, at *3 (S.D.N.Y. June 11, 2013); MTD 11–12.

Trump's bid to characterize the Instagram post as "actionable 'mixed' opinion" (Opp. 22) is as outlandish as the factual meaning he imputes to it. The side-by-side comparison would not

leave any reasonable viewer "speculating" or "ponder[ing]" whether Mr. Ciurana secretly possessed "undisclosed" facts linking Trump to racially-motivated crimes. *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 383–87 (S.D.N.Y. 1998). In *Jewell*, the statements found actionable were written in a "neutral style indicative of traditional newspaper reporting," and gave readers only half the story because they suggested "mounting evidence" of criminality was seized from the plaintiff. *Id.* Similarly, in *Germain v. M&T Bank Corp.*, 2015 WL 3825198, at *21 (S.D.N.Y. Jun. 19, 2015), the speaker told an investigator that the plaintiff was "'no good,'" but also cryptically alluded that he "'had ties to the Albanian mob.'" *See also Silsdorf v. Levine*, 59 N.Y.2d 8, 12–13 (1983) (statement that "'it pays to do business with the mayor'" suggested corruption). The specificity of those statements in context—and what they left unsaid—is a far cry from Mr. Ciurana's reposted image with the "No Comments" caption. The Instagram post is far closer to the visual "cartoon" that was held non-actionable in *Jewell*. 23 F. Supp. 2d at 385.

Trump's heavy reliance on *Gallo v. Montauk Video, Inc.*, 684 N.Y.S.2d 817 (App. Term, 2d Dep't 1998), is even farther afield. Opp. 19. A "reward" poster like the one in *Gallo* is a classic reference to the public identification of wanted criminals. "No Comments," by contrast, is the hallmark of ambiguity and does not remotely (much less reasonably) convey a criminal accusation when posted on social media. For all of Trump's talk that this Court should consider "the context of the entire publication" (Opp. 20), he ignores the obviously different context of *Gallo*, where the poster appeared in a local video store and featured a local private citizen.

Trump speciously invokes *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345–46 (1974), to argue that he needs protection because he is "vulnerable to injury" and "deserving of recovery." Opp. 20. That argument entirely overlooks the fact that *Gertz* pointedly distinguished "private individuals" from public figures such as Trump. *Gertz* concerned the rights of private persons who lack the means to counteract alleged falsehoods about them. 418 U.S. at 345. But Trump is exactly the opposite. He invites public comment on his political views, responds in kind, and—having assiduously courted publicity—must expect to "be subject to vehement, caustic, and sometimes unpleasantly sharp attacks." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 51

(1988). Trump makes no convincing attempt to explain why, in the throes of a national election cycle in which he chose to participate as a candidate, an Instagram post about him should not be considered satire, parody, or commentary protected by the First Amendment. MTD 13.

### 2. Trump Fails to State a Claim against Univision, or for Damages.

Even if Trump had pleaded a defamatory statement, and he has not, he has not alleged facts showing that such a statement can be attributed to Univision. Trump relies entirely on the number of Mr. Ciurana's social-media followers, the fact that Mr. Ciurana's page identifies his job title, and the obviously false assertion (repeated no less than three times) that the Instagram post "was made through his official Univision Instagram account." Opp. 22; *see* MTD 14–15. Those hollow allegations do not plausibly satisfy the relevant legal standard, which is whether Mr. Ciurana's post was made within the "scope of his employment." *Girden v. Sandals Int'l*, 262 F.3d 195, 205 (2d Cir. 2001). Trump alleges nothing about Mr. Ciurana's duties, or whether the post somehow advanced Univision's interests. MTD 14–15. Nor does Trump demonstrate why his threadbare allegations entitle him to any actual or punitive damages. MTD 16.

## B. Trump Has Not Pleaded a Viable Claim for Tortious Interference with Contract.

Trump fails to sufficiently plead facts establishing the basic elements of tortious interference. *See* Opp. 13–14 (conceding that he must plead "*procurement* of the . . . breach . . . *without justification*, *actual breach* . . . , and *damages*," and citing case-law requiring "*but for*" causation) (citations omitted) (emphases added). Because Trump was warned that he should allege a plausible theory of tortious interference, and because nothing suggests that he would be able to plead these elements in a *third* attempt, his claim should be dismissed with prejudice.

### 1. Trump Fails to Plead An Actual Breach by NBC or any Third Party.

Trump carefully refuses to allege that NBC actually breached any contract with Miss Universe. Instead, he relies on oblique statements that NBC "terminate[d] its relationship with Plaintiffs" and "walk[ed] away from its contractual obligations," without ever alleging that NBC lacked the right to do so. *See* AC ¶ 31; Opp. 16. Trump's failure to plead a **breach**—rather than actions that NBC was legally privileged to take—renders his tortious interference claim deficient

6

as a matter of law.  MTD 17–18; *see also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006) (claim that third party "walked away" insufficient); *Inselman Co. v. FNB Fin. Co.*, 364 N.E.2d 1119, 1120 (N.Y. 1977).  Contrary to Trump's brief (Opp. 15), the Court in *Orange County Choppers, Inc. v. Olaes Enters.*, 497 F. Supp. 2d 541, 562 (S.D.N.Y. 2007), *did* dismiss similar conclusory allegations that the "agreement" was "revoked," "causing a loss of an existing relationship."  In addition, Trump's tacked-on allegation of *other*, unspecified "agreements with various third parties" (AC ¶ 57) is wholly inadequate to state a cause of action.  *See, e.g.*, *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 728–29 (S.D.N.Y. 2014) (general allegation of "lost third party contracts . . . insufficient for a tortious interference" claim).

    2. **Trump Fails to Plead "But For" Causation or Unjustified Procurement.**

    Trump's own authorities confirm that "but for" causation is an element of tortious interference, but the complaint makes no effort to plead it.  *See St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 172 (E.D.N.Y. 2010) (cited at Opp. 14).  Trump fails to allege any facts to overcome the many "alternative explanation[s]" for NBC's alleged conduct, including the most "obvious" one identified in the Motion: NBC's independent calculus that it had to publicly distance itself from Trump-branded events in the immediate aftermath of his noxious comments regarding Mexican immigrants.  MTD 18–20; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007).  Trump never addresses that obvious explanation and should not get another chance.

    As to wrongful means, the complaint's laundry list of buzzwords—"wrongful, willful, malicious, concerted and purposeful effort to coerce, collude and/or conspire" (Opp. 15)—amounts precisely to the type of formulaic recitals of the *legal* standard that, under *Twombly* and *Iqbal*, are not factual allegations at all.  Nowhere does the complaint plead any plausible *means* by which Univision strong-armed a "highly-recognized media compan[y]" like NBC, which Trump concedes is Univision's "rival" in the Spanish-language market.  *See* Opp. 2, 15.  **How** did Univision "coerce, collude and/or conspire" with NBC?  Did it offer cash?  In-kind benefits?  Future business opportunities?  The Amended Complaint offers no clue.  "Vaguely refer[ring] to an intentional course of conduct" allegedly "designed to induce" a breach of contract is

"insufficient to withstand a motion to dismiss." *Edward B. Fitzpatrick, Jr. Constr. Corp. v. Suffolk Cty.*, 525 N.Y.S.2d 863, 866 (App. Div. 2d Dep't 1988); *see also* MTD 20–21.

In the face of these obvious failings, which were squarely addressed in the Motion, *see* MTD 20–21, the Opposition posits only that Univision "went further" than persuasion, "inducing and prevailing upon NBC" using "improper" tactics, Opp. 16. But additional synonyms cannot cure the lack of substance in the complaint. And, contrary to Trump's suggestion, the Second Circuit has no rule permitting Trump to get away with alleging only that Univision "prevailed upon a third party to breach a contract." *See* Opp. 16 (citing *Highland Mgmt. LP v. Schneider*, 198 F. App'x 41, 46 (2d Cir. 2006)). *Highland Management* affirmed summary judgment on a particular factual record; it did not bless an otherwise-insufficient pleading.

The Opposition lays bare what has been true all along: the sole "basis of this claim" is the "allegation" that "upon information and belief" "executives at Univision . . . colluded with" or "coerc[ed]" "their former colleagues at NBC." Opp. 14. Trump offers no facts explaining how "former longtime" television executives could have exerted decision-making control over their prior employer years after they left and while working for the competition. *Id*. In any event, "vague and conclusory" allegations of "conversations" or "remarks" that "caused" a "breach" are "insufficient to state a cause of action." *Wash. Ave. Assocs., Inc. v. Euclid Equip., Inc.*, 645 N.Y.S.2d 511, 512 (App. Div. 2d Dep't 1996); *see also* MTD 19.[1] And, as the Supreme Court held in *Twombly*, a plaintiff's claim that "discovery" is needed to demonstrate the viability of his case—a claim Trump repeatedly echoes here (Opp. 16)—cannot save an implausible or otherwise legally deficient complaint from dismissal. *Twombly*, 550 U.S. at 567–68.

Finally, even assuming, for purposes of this Motion, that Univision and NBC spoke— which is not an "admission" by any stretch (*contra* Opp. 16)—Trump does not dispute that lobbying others to disassociate themselves from him would constitute "justified" speech,

---

[1] Trump's reliance on *St. John's* (Opp. 14), is misplaced because, unlike here, the breach alleged there was a "necessary consequence of [plaintiff's] actions." 757 F. Supp. 2d at 173.

8

immune as a matter of law.  Urging others to boycott a business based on political or social disagreement with its conduct or position is fully protected by the First Amendment.  MTD 21–22; *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 915 (1982) (holding that "emotional and persuasive appeals" for the "boycott" of businesses perceived to be racist are "constitutionally protected").  To be actionable, "interference" cannot be "incidental to some other, lawful, purpose."  *Alvord & Swift v. Stewart M. Muller Constr. Co.*, 385 N.E.2d 1238, 1241 (N.Y. 1978).

>    **3.    Trump Fails to Plead Damages.**

Trump makes no attempt to address—and thus concedes—that Miss Universe has no damages left to recover for NBC's alleged breaches, since settling those very claims.  MTD 21.

**C.    Trump Frustrated the Purpose of the Contract, and Miss Universe Breached First.**

Rather than contest the circumstances that frustrated the purpose of the Agreement, Trump seeks refuge in the fact that discovery has not commenced.  Opp. 11–12.  But this Court need not wait to confirm what is already clear from the pleadings, the public record, and Trump's failure to dispute any of the basic facts: Trump's presidential platform destroyed the market for his brands among Hispanic Americans in June 2015.  MTD 22–25.

Trump makes a feeble effort to distinguish this case from those where the relevant "facts . . . appear on the face of the complaint" and in the public record, "such that no discovery is necessary."  Opp. 11–12 (internal quotation omitted).  But here, the relevant facts *are* readily available to the Court from the complaint, Trump's own Opposition, and judicially noticeable sources.  Despite being on notice of Univision's defense since June 2015, Trump does not dispute that he fomented an unprecedented national furor that cost him business deals with more than 20 separate companies—most of which he has not sued.  Trump also does not dispute that: he announced his surprise candidacy with a broadside attack on Hispanics; his business interests suffered immediate and widespread backlash; neither he nor Miss Universe did anything to rectify the damage; performers, sponsors, and audience members alike all withdrew from the Spanish-language pageant broadcast; and NBC dropped the English-language events, rendering the upcoming productions an unacceptable substitute for the "first-class network-quality

9

production[s]" promised to Univision in the Agreement.  *See* MTD 22–23.

Trump insists that anyone could have predicted the *content* of his speech (Opp. 7–8), but is silent on how Univision could have foreseen his firebrand campaign platform or the universal condemnation his political remarks generated.  Trump's attacks against Mexican Americans (and immigrants in general) were fundamentally different from anything that had come before.  The idle ramblings of a self-proclaimed billionaire celebrity on *The O'Reilly Factor* are a far cry from the vitriolic invective of a presidential candidate during "a nationally televised event" announcing his campaign (AC ¶ 18).  Besides, Trump's message to Bill O'Reilly and his narrowly targeted audience—that immigrants to America are "some total disasters" mixed in with "some great, productive people" (Opp. 9)—is poles apart from his (now months-long) presidential campaign message to the nation: that most Mexican immigrants are criminals and rapists, with only, Trump "assume[s]," "some" "good people" sprinkled among them.

Given these matters of public record, which go unrefuted, this Court has everything it needs to determine as a matter of law that Univision could not have reasonably foreseen the events rendering the Agreement worthless, thereby excusing non-performance.[2]

Trump also offers no explanation for why Miss Universe's manifest public failures to remedy these harms, distance itself from Trump's damaging rhetoric, and protect the "first-class network quality" of the pageants are not plain violations of the Agreement.  MTD 24–25.  Instead he insists, without basis, that the Court must ignore the public record and order discovery on the matter.  *See* Opp. 12–13.  But Miss Universe's breaches made the Agreement a nullity.

### III.   CONCLUSION

Defendants respectfully request that the Court dismiss all counts with prejudice.

---

[2]   Trump's cases are inapposite.  In *Profile Publ'g & Mgmt. Corp. v. Musicmaker.com., Inc.*, 242 F. Supp. 2d 363, 365 (S.D.N.Y. 2003), the defendant admitted it was aware of the unfor--eseen facts.  In *Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 649 (E.D.N.Y. 2012), there were no *public facts* against which performance could be measured.

Dated:  January 22, 2016

GIBSON, DUNN & CRUTCHER LLP

By:  /s/ *Randy M. Mastro*
 Randy M. Mastro
 Amer S. Ahmed

 200 Park Avenue
 New York, New York 10166-0193
 Tel.:  (212) 351-4000
 Fax:  (212) 351-4035

 Miguel A. Estrada
 1050 Connecticut Avenue, N.W.
 Washington, DC  20036
 Tel.:  (202) 955-8500
 Fax:  (202) 530-9616

 *Attorneys for Defendants Univision Networks*
 *& Studios, Inc. and Alberto Ciurana*